**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>United States Department of Justice<br>Antitrust Division<br>1401 H Street, N.W., Suite 8000<br>Washington, D.C. 20530<br><br>        Plaintiff,<br><br>    v.<br><br>VERIZON COMMUNICATIONS INC.<br>1095 Avenue of the Americas<br>New York, NY 10036<br><br>    and<br><br>MCI, INC.<br>22001 Loudoun County Parkway<br>Ashburn, VA 20147<br><br>        Defendants. | Civil Action No. _____ |

**COMPLAINT**

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action to enjoin the merger of two of the largest providers of telecommunications services in the United States, Verizon Communications, Inc. ("Verizon") and MCI, Inc. ("MCI"), and alleges as follows:

1. On February 14, 2005, Verizon entered into an agreement to acquire MCI. If approved, the transaction would create one of the nation's largest providers of telecommunications services. Plaintiff seeks to enjoin this transaction because it will substantially lessen competition for (a) Local Private Lines that connect hundreds of commercial buildings in Verizon's franchised territory to a carrier's network or other local destination, and (b) other telecommunications services that rely on Local Private Lines.

2. Verizon and MCI compete in the sale of wireline telecommunications services to retail and wholesale customers in the United States.

3. For hundreds of commercial buildings in the metropolitan areas of Baltimore-Washington, D.C.; Boston, Massachusetts; New York, New York; Richmond, Virginia; Providence, Rhode Island; Tampa, Florida; Philadelphia, Pennsylvania; and Portland, Maine, Verizon and MCI are the only two firms that own or control a direct wireline connection to the building. These building connections are used to supply voice and data telecommunications services to business customers. As described in this Complaint, the proposed merger is likely to substantially reduce competition for Local Private Lines and telecommunications services that rely on Local Private Lines to those buildings.

## I. JURISDICTION AND VENUE

4. This action is filed by the United States under Section 15 of the Clayton Act, 15 U.S.C. § 25, to prevent and restrain the Defendants from violating Section 7 of the Clayton Act, 15 U.S.C. § 18.

5.      Verizon and MCI are engaged in interstate commerce and in activities substantially affecting interstate commerce. The Court has jurisdiction over this action pursuant to Sections 15 and 16 of the Clayton Act, 15 U.S.C. §§ 25, 26, and 28 U.S.C. §§ 1331, 1337.

6.      Verizon and MCI transact business and are found in the District of Columbia. Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(c).

## II. THE DEFENDANTS AND THE TRANSACTION

7.      Verizon is a corporation organized and existing under the laws of the State of Delaware, with its headquarters in New York, New York. Verizon, formerly Bell Atlantic Corporation ("Bell Atlantic"), is the nation's largest regional Bell operating company ("RBOC"). Bell Atlantic was one of the seven regional holding companies to result from the breakup of AT&T's local telephone business in 1984. In 1996 Bell Atlantic acquired another of the seven original holding companies, NYNEX Corporation. In 2000 Bell Atlantic acquired GTE Corporation, an incumbent local exchange carrier ("ILEC") that provided local exchange and other services in 28 states, and formed Verizon. Today, Verizon's wireline telecommunications operations serve about 51 million total switched access lines, including 32.4 million residential and 17.8 million business lines, in 29 states plus the District of Columbia. In 2004, Verizon earned approximately $38.6 billion in revenues from its domestic wireline services, including at least $8.8 billion in revenue from business customers. Verizon has fiber optic or copper connections to virtually all of the commercial buildings in its franchised territory.

8.      MCI is a corporation organized and existing under the laws of the State of Delaware, with its headquarters in Ashburn, Virginia. MCI is one of the nation's largest

interexchange carriers ("IXC"), offering traditional long distance telephone service, as well as one of the largest competitive local exchange carriers ("CLEC"), offering local network exchange and access for voice and data services. MCI serves consumers and businesses across the United States and around the globe, and owns significant local network assets within Verizon's 29-state operating territory including direct fiber optic connections to numerous commercial buildings. In 2004, MCI earned approximately $20.7 billion in revenues, including almost $4 billion from domestic business customers.

9. Pursuant to an Agreement and Plan of Merger dated February 14, 2005, as amended on March 4, March 29, and May 2, 2005, Verizon agreed to acquire MCI for approximately $8.54 billion.

### III.  TRADE AND COMMERCE

A. <u>Nature of Trade and Commerce</u>

10. Verizon owns and operates local telecommunications networks throughout its territory and provides local and long distance voice and data services to, *inter alia,* business customers and other telecommunications carriers.

11. MCI owns and operates local networks in dozens of metropolitan areas in the United States, a substantial number of which are in Verizon territory. Like Verizon, MCI also provides local and long distance voice and data services to business customers and other telecommunications carriers. Significant numbers of MCI's customers have locations in Verizon's franchised territory, and the two firms compete to serve those wholesale and retail customers.

12. One element of the parties' local networks are local loops, sometimes referred to as "last-mile" connections, which are typically either copper or fiber-optic transmission facilities that connect commercial buildings to a carrier's network. These last-mile connections are a critically important asset for providing service to business customers.

13. A Local Private Line is a dedicated, point-to-point circuit offered over copper and/or fiber-optic transmission facilities that originates and terminates within a single metropolitan area and typically includes at least one local loop. Local Private Lines are sold at both retail (to business customers) and wholesale (to other carriers). Verizon refers to Local Private Line circuits as "special access," and MCI refers to its own such circuits as "metro private lines."

14. Depending on how they are configured, Local Private Lines can be used to carry voice traffic, data, or a combination of the two. Local Private Lines may be purchased as stand-alone products but are also an important input to value-added voice and data telecommunications services that are offered to business customers.

15. For the vast majority of commercial buildings in its territory, Verizon is the only carrier that owns a last-mile connection to the building. Thus, in order to provide voice or data telecommunications services to customers in those Verizon-only buildings, competing carriers typically must lease the connection from Verizon as Local Private Line service (special access).

16. For a small percentage of commercial buildings (though one that accounts for a substantial percentage of customer demand and revenue), Verizon's CLEC competitors have built or acquired their own last-mile fiber-optic connections, separate from Verizon's, to connect their networks to the buildings. The CLECs typically refer to buildings with these connections

as their "lit buildings" or "on-net buildings."  Once a CLEC has incurred the high fixed cost to construct a last-mile connection to a building, the CLEC can usually provide service to business customers in the building at a lower marginal cost than it would otherwise be able to do if it had to lease the connection from the RBOC.  It can also provide alternative access to other CLECs seeking to serve business customers in the building.

17. MCI is among the leading CLECs in Verizon's territory in the number of buildings it has connected with its own last-mile fiber facilities.  For hundreds of buildings in Verizon's territory, the only two carriers that own or control the direct building connection are MCI and Verizon.

18. In the hundreds of buildings where MCI is the only CLEC with a last-mile connection, the merger of MCI and Verizon would reduce the number of carriers with an owned or controlled last-mile connection from two to one.

B. <u>Relevant Product Markets</u>

19. The relevant product markets affected by this transaction are the markets for:  (a) Local Private Lines, and (b) voice and data telecommunications services that rely on Local Private Lines.

20. Verizon is the dominant provider of Local Private Lines (special access) in its franchised territory with $3.5 billion in special access sales in 2004.  MCI is one of Verizon's largest competitors with $532 million in metro private line sales in 2004, of which more than $198 million were in Verizon territory.

21. Local Private Lines are a recognized service category among telecommunications

6

carriers and end-user business customers. Customers typically purchase Local Private Lines in standard bandwidth increments such as DS1 ("T1," 1.54 megabits per second), DS3 (44.74 megabits per second), OC3 (155.52 megabits per second), and higher. Local Private Lines can interconnect with industry-standard data networking and telephone equipment, and can be "channelized" to carry various amounts of voice and/or data traffic.

22. Local Private Lines are distinct from switched local exchange telephone services. Switched local exchange lines route calls through a voice switch in the local carrier's central office and do not necessarily use a dedicated circuit. These switched circuits do not offer the guaranteed bandwidth, high service levels, and security that Local Private Lines provide.

23. Competing carriers often rely on Local Private Line (special access) circuits to connect an end-user customer's location to their networks, enabling the competitor to supply value-added data networking, Internet access, local voice and long distance services to the customer. Although carriers can provide some types of voice and data services over switched local exchange lines (*e.g.,* when an access line is pre-subscribed to a long distance carrier), most large business customers do not find those services to be a viable or cost-effective substitute for voice and data telecommunications services provided via Local Private Lines. In the event of a small, but significant, nontransitory increase in price for either Local Private Lines or voice and data telecommunications services provided via Local Private Lines, insufficient customers would switch to switched circuits to render the increase unprofitable.

C. Relevant Geographic Markets

24. The relevant geographic markets for both Local Private Lines, as well as voice

and data telecommunications services that rely on Local Private Lines, are no broader than each metropolitan area and no more narrow than each individual building.

### IV.  ANTICOMPETITIVE EFFECTS

25.  Verizon and MCI are the only two carriers that own or control a Local Private Line connection to many buildings in each region.  The merger would, therefore, effectively eliminate competition for facilities-based Local Private Line service to those buildings, and many retail and wholesale customers would no longer have MCI as a competitive alternative to Verizon.  Although other competitors might resell Local Private Lines from Verizon, those competitors would not be as effective a competitive constraint because Verizon would control the price of the resold circuits.  The merged firm would, therefore, have the ability to raise price to retail and wholesale customers of Local Private Lines.

26.  In addition, because the cost of dedicated local access via Local Private Line represents an important cost component of many value-added voice and data telecommunications services provided over such access, by (a) eliminating MCI as the only competitive alternative to Verizon for such services with its own Local Private Line connection to hundreds of buildings, and (b) depriving other carriers seeking to provide such value-added services of the only fully-facilities based wholesale competitive alternative to Verizon in those buildings, the merger would tend to lessen competition for retail voice and data telecommunications services provided over dedicated access.

## V. ENTRY

27.     Although other CLECs can, theoretically, build their own fiber connection to each building in response to a price increase by the merged firm, such entry is a difficult, time-consuming, and expensive process. Whether a CLEC builds a last mile connection to a given building depends upon many factors, including:

   a.   the proximity of the building to the CLEC's existing network interconnection points;

   b.   the capacity required at the customer's location (and thus the revenue opportunity);

   c.   the availability of capital;

   d.   the existence of physical barriers, such as rivers and railbeds, between the CLEC's network and the customer's location; and

   e.   the ease or difficulty of securing the necessary consent from building owners and municipal officials.

28.     The costs of building a last-mile connection vary substantially for each location. Even if all the above criteria favor the construction of a last-mile connection in a particular case, a single such connection typically costs tens, sometimes hundreds, of thousands of dollars to build and activate. Thus, CLECs will typically only build in to a particular building after they have secured a customer contract of sufficient size to justify the anticipated construction costs for that building.

29.     Although entry may occur in response to a post-merger price increase in some of

the buildings where MCI is the only connected CLEC, the conditions for entry are unlikely to be met in hundreds of those buildings. Thus, entry is unlikely to eliminate the competitive harm that would likely result from the proposed merger.

## VI.  VIOLATION ALLEGED

30. The United States hereby incorporates paragraphs 1 through 29.

31. Pursuant to an Agreement and Plan of Merger dated February 14, 2005, as amended on March 4, March 29, and May 2, 2005 Verizon and MCI intend to merge their businesses.

32. The effect of the proposed acquisition of MCI by Verizon would be to lessen competition substantially in interstate trade and commerce in numerous geographic markets for (a) Local Private Lines and (b) voice and data telecommunications services that rely on Local Private Lines, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

33. The transaction would likely have the following effects, among others:

   a.  competition in the provision and sale of Local Private Lines in numerous geographic markets would be eliminated or substantially lessened;

   b.  competition in the provision and sale of voice and data telecommunications services that rely on Local Private Lines in numerous geographic markets would be substantially lessened; and

   c.  prices for Local Private Lines, as well as voice and data telecommunications services provided via Local Private Lines, would likely increase to levels above those that would prevail absent the merger.

## VII.  PRAYER FOR RELIEF

The United States requests:

34. that Verizon's proposed acquisition of MCI be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

35. that Defendants be permanently enjoined and restrained from carrying out the Agreement and Plan of Merger, dated February 14, 2005, as amended on March 4, March 29, and May 2, 2005 or from entering into or carrying out any agreement, understanding, or plan by which Verizon would merge with or acquire MCI, its capital stock or any of its assets;

36. that the United States be awarded costs of this action; and

37. that the United States have such other relief as the Court may deem just and proper.

DATED: October 27, 2005

                                    Respectfully submitted,

FOR PLAINTIFF UNITED STATES:

| /s/ | /s/ |
|---|---|
| THOMAS O. BARNETT<br>Acting Assistant Attorney General | LAURY E. BOBBISH<br>Assistant Chief<br>Telecommunications and Media<br>   Enforcement Section |

| /s/ | /s/ |
|---|---|
| J. BRUCE McDONALD<br>Deputy Assistant Attorney General | LAWRENCE M. FRANKEL<br>(D.C. Bar No. 441532) |

CLAUDE F. SCOTT, JR. (D.C. Bar No. 414906)
MARY N. STRIMEL (D.C. Bar No. 455303)
MATTHEW C. HAMMOND
LAUREN J. FISHBEIN (D.C. Bar No. 451889)
CONRAD J. SMUCKER (D.C. Bar No. 434590)
JEREMIAH M. LUONGO
JARED A. HUGHES
DAVID T. BLONDER
WILLIAM LINDSEY WILSON
WILLIAM B. MICHAEL

/s/
J. ROBERT KRAMER II
Director of Operations

Trial Attorneys
U.S. Department of Justice
Antitrust Division
Telecommunications and Media
   Enforcement Section
1401 H Street, N.W., Suite 8000
Washington, DC 20530
Telephone: (202) 514-5621
Facsimile: (202) 514-6381

/s/
NANCY M. GOODMAN, Chief
Telecommunications and Media
   Enforcement Section
   (D.C. Bar No. 251694)