**MEMORANDUM OF THE UNITED STATES IN OPPOSITION
TO COMPTEL'S MOTION FOR LEAVE TO INTERVENE,
OR IN THE ALTERNATIVE TO PARTICIPATE AS AMICUS CURIAE**

**EXHIBIT 1**

filed in

United States v. SBC Communications, Inc. and AT&T Corp.,
Civ. Action No. 1:05CV02102 (EGS) and
United States v. Verizon Communications and MCI, Inc.,
Civ. Action No. 1:05CV02103 (EGS)

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>3D SYSTEMS CORPORATION and )<br>DTM CORPORATION, )<br><br>Defendants. ) | Civil No: 1:01CV01237 (GK)<br><br>**FILED**<br><br>APR 1 6 2002<br><br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

**ORDER**

WHEREAS, on March 13, 2002, EOS GmbH Electro Optical Systems ("EOS") filed a

Motion to Intervene as of right in this proceeding; and

WHEREAS, Plaintiff United States of America and the defendants opposed EOS's

motion;

Therefore, upon consideration of the motion and the opposition thereto, ~~and the reply~~ it is this 15th day

of _April_, 2002,

ORDERED, that the Motion of EOS GmbH Electro Optical Systems to Intervene is

hereby denied.

_Gladys Kessler_
Gladys Kessler
United States District Judge

(M)

17

Copies to:

Patricia G. Chick
U.S. Department of Justice
Antitrust Division
1401 H Street NW, Suite 3000
Washington, DC 20530

Charles E. Biggio, Esq.
Akin, Gump, Strauss, Hauer & Feld LLP
590 Madison Avenue
New York, NY 10022

David Donohoe, Esq. (#3426)
Akin, Gump, Strauss, Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036

John A. Herfort, Esq.
Gibson Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166

David J. Laing, Esq.
Baker & McKenzie
815 Connecticut Avenue, NW
Washington, D.C. 20006

**MEMORANDUM OF THE UNITED STATES IN OPPOSITION
TO COMPTEL'S MOTION FOR LEAVE TO INTERVENE,
OR IN THE ALTERNATIVE TO PARTICIPATE AS AMICUS CURIAE**

**EXHIBIT 2**

filed in

United States v. SBC Communications, Inc. and AT&T Corp.,
Civ. Action No. 1:05CV02102 (EGS) and
United States v. Verizon Communications and MCI, Inc.,
Civ. Action No. 1:05CV02103 (EGS)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,          :

      Plaintiff,          :

          v.          :     Civil Action
                                   :     No. 99-1018 (GK)
IMETAL,                            :
DBK MINERALS, INC.,               :
ENGLISH CHINA CLAYS, PLC, and     :
ENGLISH CHINA CLAYS, INC.,        :
                                   :
      Defendants.          :

                                   :
PAPER, ALLIED-INDUSTRIAL,         :
  CHEMICAL AND ENERGY WORKERS     :
  INTERNATIONAL UNION,            :
                                   :
      Movants.          :

---

**FILED**

**MAY 2 6 2000**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM-OPINION

Upon consideration of the Motion of Heritage Plastics, Inc. to Intervene Or, In The Alternative, to Appear as Amicus Curiae, the Opposition of the United States, the Response of the Defendants, the Reply of Heritage Plastics, Inc., the applicable case law and the entire record herein, the Court concludes that the motion is **denied** for the following reasons:

Heritage Plastics Inc., ("Heritage" or "HPI"), seeks to intervene in the pending civil antitrust case in order to gain access to the Antitrust Division's determinative documents relating

56

to the market for Ground Calcium Carbonate ("GCC")[1], and to fully contest (and appeal if necessary) the proposed consent decree which Plaintiff and Defendants have negotiated.

In seeking to intervene, Heritage relies heavily on the following facts: that the combined Imetal/ECC entity has a market share of approximately 98% of the high grade GCC product that Heritage purchases and a market share of approximately 65% of the low grade GCC product that Heritage purchases; that since the announcement of the merger, Imetal/ECC has increased the price for its high grade GCC product by 56%; that Imetal/ECC has initiated a very costly "return policy" for any of its product that is discovered to be defective or unsuitable for use; and that a far greater percentage of that product is proving to be defective or unsuitable than had previously been the case.

In response the government and the Defendants offer several main arguments: that Heritage's purchases do not fall within the scope of the Complaint, that Heritage has suffered and will suffer no competitive injury from the Imetal/ECC merger, and that its filing is untimely, and would unduly delay the proceedings and prejudice the rights of the original parties.

---

[1] Ground Calcium Carbonate is calcium carbonate that has been crushed in a dry grinding process and then further ground in a wet process. When Ground Calcium Carbonate is left in a slurry form, its main purchaser is the paper industry. When the slurry form of Ground Calcium Carbonate is further dried and surface treated, it is purchased by HPI and other users which manufacture certain types of plastic films. One of the types of plastic films which HPI manufactures is used in the backsheet of disposable diapers for infants and children. HPI and its competitors purchase less than one tenth the amount of GCC that the paper industry purchases.

The Court does not find the last argument persuasive.  In its pleadings, Heritage makes it very clear that it was not until Imetal/ECC imposed the latest price increase (amounting to a total price increase of 56% versus 7% in the preceding 4 ½ years) and the costly "return policy", that it decided to challenge the merger and the proposed Consent Decree.  Thus, Heritage did not delay in filing its Motion to Intervene, nor would litigation of that Motion unduly prejudice the rights of the parties in light of the fact that two of the four divestitures required by the decree have already been completed, one has been presented to the government and is being reviewed, and only one remains to be negotiated.

As to the first two arguments, the Court does find them convincing.

I.  Scope of the Complaint

In Paragraph 1 of its Complaint, the government defined the four separate markets in which competition was likely to be substantially lessened because of the proposed acquisition of ECC by Imetal.  One of those four markets was Ground Calcium Carbonate, or GCC, sold in slurry form for the paper industry; it is also referred to as paper-grade GCC and fused silica.

Heritage does not deny that it does not buy paper-grade GCC; rather, it buys a different type of ground calcium carbonate product referred to as "plastic GCC".  (see Memorandum in Support of Motion of Heritage, p.2).  The government did not allege in its Complaint that the proposed merger between Imetal and ECC would substantially lessen competition in the market for extra-fine

3

plastic GCC products, such as Film-Link, that are sold for use in the compounds Heritage purchases.    Heritage does not deny that plastic GCC goes through additional processing steps that paper-grade GCC does not undergo (id), nor that a buyer of plastic GCC cannot use paper-grade GCC.

Heritage argues that it buys from the same "upstream" GCC product source and product line as the paper industry with the exception that its plastic GCC "has simply undergone additional or slightly different `kneading' steps" (id.).    That "exception", which Heritage would like to minimize, however, alters the entire picture.    As the government points out in its Opposition, Heritage does not buy the paper-grade GCC which is the subject matter of the Complaint; rather, it buys a different ground calcium carbonate product, the plastic GCC, which is not the subject matter of the Complaint.    Whether the product Heritage buys is labelled    as merely a "downstream" by-product or, more accurately, as a "tributary" by-product, either of which is derived from the "upstream" GCC product source sold by Imetal/ECC, the fact of the matter is that paper-grade GCC and plastic GCC are different products.[2]

The government has made the discretionary prosecutorial decision to single out only the former, and not the latter, as the

---

[2]    As Defendants have explained in their Response, "While it is true that both types of products might have their origins at the same quarry site and pass through similar initial crushing, washing and milling stages, their subsequent manufacturing diverges at a relatively early stage in the processing circuit".    (Defendants' Response to Motion of Heritage Plastics, p. 2.)

4

market area in which the merger of Imetal and ECC would lessen competition.  Consequently, as our Court of Appeals made clear in Microsoft, the  district court cannot "reach beyond the complaint to evaluate claims that the government did not make and to inquire as to why they were not made."  United States v. Microsoft, 56 F.3d 1448, 1459 (D.C. Cir. 1995).

II. Absence of Merger-Related Competitive Harm

Heritage cannot demonstrate that the harm it claims to have suffered--the very sharp price increase and imposition of a very unfavorable "return policy"--is the result of the Imetal/ECC merger.  Prior to the merger, Imetal and ECC did not compete in the manufacture or sale of plastic GCC because Imetal did not produce such a product, or any reasonable equivalent.  Consequently, Imetal's acquisition of ECC could not have increased the market concentration in the manufacture or sale of plastic GCC because Imetal was not a participant in the market for that product before the merger.  Whatever the reason for the price increase in plastic GCC and imposition of the "return policy", it could not be because the merger lessened competition and increased market power with respect to that product.

For all the foregoing reasons, Heritage has failed to establish that it is entitled to intervene pursuant to the Tunney Act, 15 U.S.C. § 16(b)-(h), or Fed. R. Civ. P. 24 (a) or (b), and the Motion to Intervene must be denied.

Wherefore, it is this 25th day of May 2000, hereby

**ORDERED**, that the Motion of Heritage Plastics, Inc. to Intervene or, In the Alternative, to Appear as Amicus Curiae is **denied**.


Gladys Kessler
United States District Judge

**Copies to:**

Patricia G. Chick
U.S. Department of Justice
Antitrust Division
1401 H Street N.W., Suite 3000
Washington, D.C. 20530

George M. Chester, Jr.
Covington & Burling
1201 Pennsylvania Ave. N.W.
Washington, D.C. 20044-7566

Jonathan W. Cuneo
The Cuneo Law Group
317 Massachusetts Ave., N.E.
Suite 3000
Washington, D.C. 20002

**MEMORANDUM OF THE UNITED STATES IN OPPOSITION
TO COMPTEL'S MOTION FOR LEAVE TO INTERVENE,
OR IN THE ALTERNATIVE TO PARTICIPATE AS AMICUS CURIAE**

**EXHIBIT 3**

filed in

United States v. SBC Communications, Inc. and AT&T Corp.,
Civ. Action No. 1:05CV02102 (EGS) and
United States v. Verizon Communications and MCI, Inc.,
Civ. Action No. 1:05CV02103 (EGS)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

United States of America,                    )
                                             )
        Plaintiff,                           )
                                             )
    v.                                       ) Civ. No. 94-2331 (TFH)
                                             )
Motorola, Inc. and                           )
Nextel Communications, Inc.,                 )
                                             )
        Defendant.                           )

**FILED**

OCT 0 4 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## <u>ORDER</u>

Upon consideration of Alliance for Radio Competition's Motion for Leave to Intervene

or, in the alternative, for leave to participate as *amicus curiae*, and Plaintiff United States'

Memorandum in Opposition to that motion, it is hereby

**ORDERED** that Alliance for Radio Competition's motion for leave to intervene or, in

the alternative, for leave to participate as *amicus curiae* is denied.

October ____, 1999

Thomas F. Hogan
United States District Judge

AO 72A
(Rev.8/82)

**MEMORANDUM OF THE UNITED STATES IN OPPOSITION
TO COMPTEL'S MOTION FOR LEAVE TO INTERVENE,
OR IN THE ALTERNATIVE TO PARTICIPATE AS AMICUS CURIAE**

**EXHIBIT 4**

filed in

United States v. SBC Communications, Inc. and AT&T Corp.,
Civ. Action No. 1:05CV02102 (EGS) and
United States v. Verizon Communications and MCI, Inc.,
Civ. Action No. 1:05CV02103 (EGS)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

SEP 2 2 1999

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| United States of America, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | ) **Civ. No. 94-2331 (TFH)** |
| | ) |
| Motorola, Inc. and | ) |
| Nextel Communications, Inc., | ) |
| | ) |
|     **Defendant.** | ) |

## ORDER

Pending before the Court is the Motion to Intervene or In the Alternative For Leave To

Participate as *Amici Curiae* pursuant to 15 U.S.C. §16 and Federal Rule of Civil Procedure 24,

filed jointly by the Wilmington Trust Company and Hughes Network Systems (collectively, the

"Geotek creditors"). Upon consideration of this motion and the accompanying memorandum in

support of the motion, as well as the Plaintiff United States' memorandum in opposition to this

motion, it is hereby

**ORDERED** that the motion to intervene is denied because the Geotek creditors' private

financial interests do not outweigh the public interest in competition, the creditors do not assert a

legally recognized individual injury, and the interests of the public are not identical to the

interests of the Geotek creditors. It is further

**ORDERED** that the unopposed motion for leave to participate as *amici curiae* is granted.

September **21st**, 1999





AO 72A
(Rev.8/82)

Thomas F. Hogan
United States District Judge

2

**MEMORANDUM OF THE UNITED STATES IN OPPOSITION
TO COMPTEL'S MOTION FOR LEAVE TO INTERVENE,
OR IN THE ALTERNATIVE TO PARTICIPATE AS AMICUS CURIAE**

**EXHIBIT 5**

filed in

United States v. SBC Communications, Inc. and AT&T Corp.,
Civ. Action No. 1:05CV02102 (EGS) and
United States v. Verizon Communications and MCI, Inc.,
Civ. Action No. 1:05CV02103 (EGS)

FROM MERGER TASK FORCE       (FRI) 04. 25' 97 14:26/ST. 14:23/NO. 3561005183 P  2/8

04/25/97    09:57    ☎          HRO DENVER NT084                    @002



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 23 1997

JAMES R. MANSPEAKER
CLERK
BY_____
DEP, CLK

Civil Action No. 97-B-10

UNITED STATES OF AMERICA and THE STATE OF COLORADO,

    Plaintiffs,

v.

VAIL RESORTS, INC., RALSTON RESORTS, INC., AND RALSTON FOODS, INC.,

    Defendants.

---

## ORDER

---

    Jeffrey Bork, a resident of Summit County, Colorado, seeks to intervene. All plaintiffs and defendants oppose his intervention. For the following reasons, I will deny Bork's motion to intervene.

I.

    Plaintiffs filed a complaint on January 3, 1997, challenging Vail's acquisition of Ralston Resorts' three Colorado ski areas—Breckenridge, Keystone, and Arapahoe Basin. All three areas are located within Summit County, Colorado. Along with their complaint, plaintiffs filed a stipulation and a proposed final judgment (Consent Decree) containing the settlement agreed to among the parties. The Consent Decree provides, in part, for the divestiture of one of the three Ralston ski areas—Arapahoe Basin.

    The complaint alleges that Vail's acquisition of the three areas had the potential to substantially lessen competition in the "Front Range Colorado Skier" market in violation of

FROM MERGER TASK FORCE                (FRI) 04. 25' 97 14:26/ST. 14:23/NO. 3561005183 P  3/8

04/25/97   09:57   ☎               HRO DENVER N7084                        ☺003

section 7 of the Clayton Act, 15 U.S.C. § 18. Front Range Colorado Skiers are defined in the complaint to be persons living east of the Rocky Mountains in or around Fort Collins, Boulder, Denver, Colorado Springs, and Pueblo. The complaint does not allege a violation of the Clayton Act in any other market because "The [Antitrust] Division's investigation did not reveal any likely anti-competitive effect from the proposed merger in the destination skier market or in other relevant markets such as the local skier market." Competitive Impact Statement ("CIS"), p. 6, n.2. Rather, the CIS states that since Breckenridge, Keystone, and Arapahoe Basin (three of the four Summit County ski areas) were jointly owned prior to their acquisition by Vail, they were not competing against each other for customers. Vail's divestiture of Arapahoe Basin will, according to plaintiffs, therefore increase competition within Summit County. CIS at 15.

## II.

The Tunney Act, 15 U.S.C. §16(b)-(h), sets forth the procedures that the Antitrust Division, the Defendants, interested persons, and the court must follow before a proposed Consent Decree may become final. The Antitrust Division is required to (1) file the proposed Consent Decree and a Competitive Impact Statement with the court; (2) publish them in the Federal Register and in a newspaper of general circulation; (3) consider any public comments on the proposed Decree it receives; (4) respond to the public comments; and (5) file the public comments and its responses to them with the court. 15 U.S.C. § 16(b) and (d).

Once this process has been completed, I must determine whether the entry of the Consent Decree "is in the public interest." 15 U.S.C. § 16(e)-(f). In doing so, I may consider the competitive impact of the relief provided by the proposed Decree, and alternative

2

Case 1:05-cv-02103-EGS    Document 17-2    Filed 02/22/2006    Page 19 of 23
FROM MERGER TASK FORCE                    (FRI) 04. 25' 97 14:26/ST. 14:23/NO. 3561005183 P  4/8

04/25/97   08:58   ☎                    H2O DENVER N7084                    🖷 004

forms of relief on "the public generally, and individuals alleging specific injury from the violations set forth in the complaint." 15 U.S.C. § 16(e). I have the discretion to allow intervention of interested parties pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. § 16(f)(3). However, Congress has directed that the public interest inquiry be conducted in the "least complicated and least time-consuming means possible." S.Rep. No. 296, 93d Cong., 1st Sess. 6 (1973). In addition, Fed.R.Civ.P. 24(b) provides that "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Bork cites three reasons for his motion to intervene: (1) to enable him to submit to the court his comment on the CIS; (2) to submit to the court the Antitrust Division's response to his comment; and (3) to permit him to reply to the Antitrust Division's response to his comment. Bork's first two reasons are meritless. As discussed, the Antitrust Division is already required by the Tunney Act to submit to the court all public comments on the CIS, including Bork's, and its responses to them. Further, for the following reasons, I conclude that Bork's third proffered reason is insufficient to warrant intervention.

First, Bork's motion is technically inadequate. Rule 24(c) requires a prospective intervenor to file a "pleading setting forth the claim or defense for which intervention is sought." Bork has not done so. Given that Bork is attempting to intervene pro se, however, I will address the other reasons his intervention will not be permitted.

"[T]he usual rule . . . has been that private parties will not be allowed to intervene in government antitrust litigation." Wright, Miller and Kane, *Federal Practice & Procedure 2d*, § 1908 at 266 (1986). The Tunney Act provides the simplest and most comprehensive means

3

for a court to gather the relevant information on a proposed consent decree in order to make a public interest determination. It establishes procedures whereby the public can comment and the government can respond to public concerns. Allowing private citizens to intervene and become parties to proceedings so that they can individually extend the comment period beyond what is provided in the Tunney Act would be contrary to the streamlined procedure envisioned by Congress.

Clearly, Congress envisioned some circumstances where intervention by private parties would be appropriate. See 15 U.S.C. § 16(f)(3). This is not one of those situations, however. Generally, courts will not authorize permissive intervention under Rule 24(b) unless the intervenor can show bad faith or malfeasance on the part of the government in negotiating or accepting the Consent Decree. *United States v. Associated Milk Producers*, 394 F. Supp. 29, 41 (W.D. Mo. 1975), *aff'd*, 534 F.2d 113, 117 (8th Cir.), *cert. denied*, 429 U.S. 940 (1976). Bork has neither alleged nor presented any evidence that the United States or Colorado acted in bad faith or engaged in malfeasance here, and intervention under Rule 24(b) would be inappropriate.

Nor is Bork entitled to intervention as a matter of right under Rule 24(a). Rule 24(a) requires a prospective intervenor to show that his interests are inadequately represented by the present parties. Given that he has not alleged any malfeasance by the plaintiffs and he is empowered by the Tunney Act to submit his own comment on the Consent Decree, I cannot conclude that plaintiff's interests are inadequately represented by the plaintiffs.

Further, the interests that Bork apparently seeks to protect are not at issue in this case. Bork's sole concern about the Consent Decree is that it fails to account for the interests of

local Summit County skiers. The complaint filed by plaintiffs, however, does not state a claim for antitrust violations affecting the local skier market in Summit County. Rather, the complaint asserts only that the Vail acquisitions of the Ralston ski areas will have anti-competitive effects for the "Front Range Colorado Skier" market, which is defined in the complaint not to include mountain communities such as Summit County. Therefore, Bork is not an "individual[] alleging specific injury from the violations set forth in the Complaint." 15 U.S.C. § 16(e)(2).

I am not permitted, in a Tunney Act proceeding, to "second guess" the government about a case that it elected not to pursue (e.g., alleged harm to the local Summit County skier market). *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995). The complaint and Consent Decree were specifically drafted by plaintiffs to remedy the potential harm from the proposed merger to Front Range skiers. To the extent that Bork's interests coincide with those of Front Range skiers, they are adequately represented by plaintiffs. To the extent that Bork is asserting a harm peculiar to local Summit County skiers, his allegations are outside the scope of the complaint and beyond the scope of my review under the Tunney Act.

The government's decision not to bring a particular case on the facts and law before it at a particular time, like any other decision not to prosecute, "involves a complicated balancing of a number of factors which are peculiarly within [the government's ] expertise." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). I will not invade the province of the government's discretion by permitting Bork to intervene here and assert claims beyond the scope of the original complaint.

Accordingly, it is ORDERED that:

1. Bork's motion to intervene is DENIED.

Dated: April *2 3*, 1997 in Denver, Colorado.

BY THE COURT:

LEWIS T. BABCOCK, JUDGE

6

Case 1:05-cv-02103-EGS    Document 17-2    Filed 02/22/2006    Page 23 of 23

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### CERTIFICATE OF SERVICE

Civil Case No. 97-B-10

The undersigned certifies that a copy of the foregoing

_____ *Order* _____ was served on *April 24*, 1997, by:

(X) delivery to:

Jan Michael Zavislan, Esq.
Maria E. Berkenkotter, Esq.
Attorney General's Office
Civil Litigation Section
Antitrust Unit
D.C. Box No. 20

Bruce F. Black, Esq.
Holme Roberts & Owen LLP
D.C. Box No. 7

Paul C. Daw, Esq.
Sherman & Howard
D.C. Box No. 12

(X) depositing the same in the United States Mail, postage prepaid,

addressed to:

Ann M. Purcell, Esq.
U. S. Department of Justice
Antitrust Division
Merger Task Force
1401 H Street, NW, Suite 4000
Washington, DC 20530

Robert S. Schlossberg, Esq.
Peter E. Halle, Esq.
Jonathan M. Rich, Esq.
Robert B. Wiggers, Esq.
Harry T. Robins, Esq.
Anthony E. Bell, Esq.
Morgan, Lewis & Bockius LLP
1800 M Street, N.W.
Washington, D.C. 20036

E. Perry Johnson, Esq.
Rebecca A. Nelson, Esq.
Bryan Cave LLP
One Metropolitan Square
211 No. Broadway, #3600
St. Louis, MO 63102

J. Michael Cooper, Esq.
Daniel C. Schwartz, Esq.
Bryan Cave, LLP
700 13th Street, NW
Washington, DC 20005

Jeffrey S. Bork
P.O. Box 23169
Silverthorne, CO 80498-3169

*N. Hatchu*

Deputy Clerk