IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  <br><br>Plaintiff,  <br><br>v.  <br><br>SBC Communications, Inc. and AT&T Corp.,  <br><br>Defendants. | Civil Action No. 1:05CV02102 (EGS) |
| UNITED STATES OF AMERICA,  <br><br>Plaintiffs,  <br><br>v.  <br><br>Verizon Communications, Inc. and MCI, Inc.,  <br><br>Defendants. | Civil Action No. 1:05CV02103 (EGS) |

**AT&T INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COMPTEL'S MOTION FOR LEAVE TO INTERVENE, OR IN THE ALTERNATIVE, TO PARTICIPATE AS *AMICUS CURIAE***

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 4

I. COMPTEL HAS NOT MET THE LEGAL STANDARD FOR PERMISSIVE INTERVENTION. .............................................................................. 4

    A. Courts Have Imposed a High Standard for Intervention in Tunney Act Proceedings. ............................................................................................ 4

    B. COMPTEL Has Failed to Meet the High Standard Consistently Adopted by the Courts for Permissive Intervention. ......................................... 6

    C. COMPTEL Has Failed to Satisfy the Basic Prerequisites for Permissive Intervention Under Rule 24. .......................................................... 10

II. COMPTEL'S REQUEST TO BE AN *AMICUS* ALSO SHOULD BE DENIED. ................................................................................................................ 11

CONCLUSION .................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

\* *Commonwealth of Massachusetts v. Microsoft Corp.*, 373 F.3d 1199
   (D.C. Cir. 2004) .................................................................................... 5, 10, 11

\* *Massachusetts School of Law v. United States*, 118 F.3d 776 (D.C. Cir. 1997) ............. 1, 4, 10, 11

*United States v. 3D Systems/DTM*, Civil No. 1:01CV01237, (GK) (D.D.C. Aug.
   16, 2001) .................................................................................................... 9

*United States v. Associated Milk Producers, Inc.*, 534 F.2d 113 (8th Cir. 1976) ....................... 1, 5

*United States v. AT&T*, 1982 WL 1820 (D.D.C. 1982), *aff'd, United States v.
   AT&T*, C.A. No. 82-1321, Order and Memorandum (D.C. Cir. June 1, 1982) ...................... 5

*United States v. AT&T*, 552 F. Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland
   v. United States*, 460 U.S. 1001 (1983) ................................................................... 4, 9

*United States v. Blue Chip Stamp Co.*, 272 F. Supp. 432 (C.D. Cal. 1967) ................................. 5

*United States v. Carrols Development Corp.*, 454 F. Supp. 1215 (N.D.N.Y. 1978) ............. 3, 5, 12

*United States v. Cingular Wireless Corp.*, Civil No. 1:04CV01850 (RBW)
   (D.D.C. Nov. 3, 2004) ................................................................................... 8

*United States v. G. Heileman Brewing Co.*, 563 F. Supp. 642 (D. Del. 1983) .......................... 4, 5

*United States v. General Electric Co.*, Civil No. 1:98CV01744 (RCL) (D.D.C.
   July 14, 1998) .............................................................................................. 9

*United States v. Hartford-Empire Co.*, 573 F.2d 1 (6th Cir. 1978) ............................................ 1

*United States v. IBM*, No. Civ.A. 72-344, 1995 WL 366383 (S.D.N.Y. June 19,
   1995) ........................................................................................................... 4

*United States v. LTV Corp.*, 746 F.2d 51 (D.C. Cir. 1984) ....................................................... 1

*United States v. Microsoft Corp.*, 56 F.3d 1448 (D.C. Cir. 1995) ............................................. 9

\* *United States v. Microsoft Corp.*, No. Civ. A. 98-1232 (CKK), 2002 WL 318954
   (D.D.C. Feb. 28, 2002) ............................................................................... 3, 12

*United States v. Microsoft Corp.*, No. Civ.A.98-1232, 2002 WL 319139 (D.D.C.
   Feb. 28, 2002) ............................................................................................ 4, 12

*United States v. SBC Communications, Inc.*, 339 F. Supp. 2d 116 (D.D.C. 2004) ...................... 9

*United States v. Stroh Brewery Co.*, Civil Action No. 82-1059, 1982 WL 1861
 (D.D.C. June 4, 1982) .................................................................................................. 4, 10

\* *United States v. Thomson Corp.*, No. Civ.A.96-1415, 1996 WL 554557 (D.D.C.
 Sept. 25, 1996) ...................................................................................................... 1, 4, 6, 10

**Statutes**

15 U.S.C. § 16(e)(2) .............................................................................................................. 6

**Other Authorities**

150 Cong. Rec. S3610 ........................................................................................................... 5

Department of Justice, "Justice Department Requires Divestitures in Verizon's
 Acquisition of MCI and SBC's Acquisition of AT&T" (Oct. 27, 2005) ............................ 6, 8

H.R. Rep. No. 1463, 93d Cong., 2d Sess (1974) ................................................................... 5

Memorandum Opinion and Order, *In the Matter of SBC Communications Inc. and
 AT&T Corp. Applications for Approval of Transfer of Control*, WC Docket No.
 05-65 (Nov. 17, 2005) ......................................................................................................... 7

S. Rep. 298, 93d Cong., 1st Sess. (1973) ............................................................................... 5

U.S. Code Cong. & Admin News 1974 ................................................................................. 5

**Rules**

Fed. R. Civ. P. 24(b) ................................................................................................... 1, 10, 11

## INTRODUCTION

Motions to intervene pursuant to Rule 24(b) of the Federal Rules of Civil Procedure are routinely denied in cases brought under the Antitrust Procedures and Penalties Act ("Tunney Act"). It is well established in this Circuit that "discretionary intervention under the Tunney Act is usually denied in the absence of a showing that the government is not vigorously and faithfully representing the public interest, that it was unduly influenced or that it exercised bad faith or malfeasance in reaching the proposed final judgment." *United States v. Thomson Corp.*, No. Civ.A.96-1415, 1996 WL 554557, at *2 (D.D.C. Sept. 25, 1996); *see also United States v. LTV Corp.*, 746 F.2d 51, 54 n.7 (D.C. Cir. 1984) (quoting *United States v. Hartford-Empire Co.*, 573 F.2d 1, 2 (6th Cir. 1978)); *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 118 (8th Cir. 1976). Moreover, the movant bears the burden of showing that intervention will not "unduly delay or prejudice" the proceeding. Fed. R. Civ. P. 24(b)(2); *see, e.g., Massachusetts School of Law v. United States* ("MSL"), 118 F.3d 776, 782-83 (D.C. Cir. 1997); *Thomson*, 1996 WL 554557, at *2-3 (denying competitor intervention due to delay). COMPTEL has fallen far short of meeting the legal standard for permissive intervention. Accordingly, defendant AT&T Inc. opposes COMPTEL's motion.[1]

First, COMPTEL has made no showing that the government is failing to "vigorously and faithfully represent[] the public interest." *Thomson*, 1996 WL 554557, at *2. Nor is there any suggestion of undue influence, bad faith or malfeasance by the government in reaching the final judgment. *Id.* To the contrary, the record reflects that a full and comprehensive review of this matter was conducted by the government – including multiple opportunities for input by

---

[1] Upon closing of the acquisition, defendant SBC Communications Inc. renamed itself AT&T Inc. AT&T Corp., the acquired entity, is a first-tier, wholly-owned subsidiary of AT&T Inc.

interested parties, of which COMPTEL members generously availed themselves. Specifically, the Department of Justice ("DOJ" or "the Department") conducted a lengthy investigation of the relevant markets and overlapping facilities, during which it collected large amounts of data and information from the parties and third parties, including COMPTEL members. Further, the Federal Communications Commission ("FCC") simultaneously conducted a public record proceeding, in which COMPTEL itself filed *fourteen* submissions on a full range of issues including relief. In addition, the transaction was subject to review with state public utilities commissions in 36 states and the District of Columbia. Most recently, COMPTEL has availed itself of the Tunney Act procedure to provide comments regarding the proposed final judgment, which will be filed with the Court in this proceeding.

Thus, as a result of the comprehensive nature of the government's review, together with the opportunities for third-party input embodied in Tunney Act procedures, COMPTEL has had ample opportunity to incorporate into the record its views regarding the alleged "inadequacy of the remedies" in the Proposed Amended Final Judgment ("PAFJ"). Nonetheless, it is this same subject that COMPTEL now proposes to "assist[] the Court in understanding" by means of intervention in these proceedings. *See* Motion and Memorandum in Support of COMPTEL's Motion for Leave to Intervene, or in the Alternative to Participate as *Amicus Curiae* (COMPTEL's Mem.) at 1. However, COMPTEL has failed to establish, and the record is devoid of any evidence of, the underlying predicate necessary for such intervention – namely, that the government is failing to vigorously and faithfully execute its responsibilities to represent the public interest.

Second, COMPTEL's intervention would unduly delay these proceedings and be prejudicial not only to the parties, but also to the public interest. While COMPTEL suggests its

intervention would be "limited," its ominous references to "discovery" and "hearings" portend significant delay at a critical time. *See* COMPTEL's Mem. at 1, 6-7. Contrary to COMPTEL's assertion, the relief requested by DOJ will create a competitive benefit and address any potential competitive harm arising from the transaction. Moreover, COMPTEL's argument that the divested assets are of no value is fundamentally undermined by the fact that AT&T has completed agreements to divest the required assets to well-established Local Private Line companies – some of which are significant COMPTEL members. Those agreements have been submitted to DOJ for its review pursuant to the terms of the PAFJ. Not only does this imminent divestiture undermine COMPTEL's assertion that the assets are not "viable," but any delay will postpone the time when the acquiring parties can use these assets to compete – the very purpose for which the divestiture was required in the first place.

In short, because COMPTEL has failed to meet the legal standard necessary to warrant permissive intervention in this proceeding, its motion to intervene should be denied. For the same reasons, the Court also should deny COMPTEL's request to participate as an *amicus curiae*, at least at this time. Unless and until this Court determines – after COMPTEL's comments have been filed and responded to by DOJ under standard Tunney Act procedures – that, notwithstanding the existing record, additional argument by COMPTEL would assist the Court in resolving this matter, there is no need for *amicus* participation by COMPTEL. *See, e.g., United States v. Microsoft Corp.*, No. Civ. A. 98-1232 (CKK), 2002 WL 318954, at *2 (D.D.C. Feb. 28, 2002) (denying leave to file amicus brief where duplicative arguments would delay proceedings); *United States v. Carrols Development Corp.*, 454 F. Supp. 1215, 1221-22 (N.D.N.Y. 1978) (denying leave to file amicus brief where additional papers would not serve a "useful purpose" because issues had been fully briefed).

# ARGUMENT

I. **COMPTEL HAS NOT MET THE LEGAL STANDARD FOR PERMISSIVE INTERVENTION.**

    A. **Courts Have Imposed a High Standard for Intervention in Tunney Act Proceedings.**

The legal standard for permitting intervention in Tunney Act cases is very high. COMPTEL fails to cite a *single* Tunney Act case in this jurisdiction – or for that matter, from any other jurisdiction – in which intervention has been permitted prior to entry of final judgment. This is not surprising. Given the high burden of establishing that the government is not vigorously and faithfully representing the public interest, the ample opportunity afforded by the Tunney Act for public comment on a proposed final judgment, and the inherent delay and disruption associated with intervention, "courts have consistently exercised their discretion to deny motions for permissive intervention in antitrust consent proceedings."[2] A contrary decision here would thus be nothing short of extraordinary.

---

[2] *United States v. IBM*, No. Civ.A. 72-344, 1995 WL 366383, at *5 (S.D.N.Y. June 19, 1995). *See, e.g.*, *MSL*, 118 F.3d at 782-84 (denying intervention and noting the effects of intervention include delay, issue proliferation, confusion, cost, and increased risk of error); *United States v. Microsoft Corp.*, No. Civ.A.98-1232, 2002 WL 319139, at *2-3 (D.D.C. Feb. 28, 2002) (denying trade association the right to intervene before final judgment); *Thomson Corp.*, 1996 WL 554557, at *2 (denying motion where "discretionary intervention under the Tunney Act is usually denied in the absence of a showing that the government is not vigorously and faithfully representing the public interest" and where Act's procedures provided opportunity to comment); *United States v. Stroh Brewery Co.*, Civil Action No. 82-1059, 1982 WL 1861, at *2-3 (D.D.C. June 4, 1982) (denying competitor right to intervene where it was "fully able to express its concerns utilizing the comment procedures of the Tunney Act"); *United States v. G. Heileman Brewing Co.*, 563 F. Supp. 642, 652 (D. Del. 1983) ("courts have rejected requests for third-party participation in the absence of a showing that the statute's comment procedure is inadequate for evaluation of a complainant's views"); *United States v. AT&T*, 552 F. Supp. 131, 146 n.61 & 219 (D.D.C. 1982) (denying motions to intervene before judgment as "premature" and granting intervention only after consent decree had been approved), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983); *United States v. AT&T*, 1982 WL 1820, at *1 (D.D.C. 1982) ("no purpose would be served by allowing intervention in the Court's discretion at this

(continued...)

The courts' uniform denial of intervention motions is entirely consistent with the legislative history of the Tunney Act. Congress expected that the district court "would adduce the necessary information through the least complicated and least time-consuming means possible." S. Rep. 298, 93d Cong., 1st Sess. 6-7 (1973); H.R. Rep. No. 1463, 93d Cong., 2d Sess 8 (1974); U.S. Code Cong. & Admin News 1974, p. 6535. As one court observed:

> [T]he legislative history reveals that the main purpose of the bill was "to encourage additional comments and response by more adequate notice to the public," and not to invite intervention with all of the attendant problems, complexities and delays that such participation would inevitably involve.

*G. Heileman Brewing*, 563 F. Supp. at 652-53 (citing S. Rep. No. 298 at 5).

This interpretation of the law regarding intervention in Tunney Act proceedings was reinforced in the 2004 amendments to the Tunney Act. *See* 150 Cong. Rec. S3610 at 3615 (statement of Sen. Leahy) ("[T]he legislation makes clear that this amendment to the Tunney Act will not change the law regarding whether a court may be required, in a particular instance, to permit intervention or to hold a hearing in a Tunney Act proceeding."). Far from encouraging greater intervention, Congress made clear that the 2004 amendments were not intended to change the existing interpretation of the law regarding intervention. *See* 150 Cong. Rec. S3610 at 3618

---

(...continued)
stage"), *aff'd*, *United States v. AT&T*, C.A. No. 82-1321, Order and Memorandum (D.C. Cir. June 1, 1982); *Carrols Development*, 454 F. Supp. at 1221 ("courts have consistently denied permissive intervention to private parties in Government antitrust litigation"); *United States v. Associated Milk Producers, Inc.*, 394 F. Supp. 29, 43 (W.D. Mo. 1975), *aff'd*, 534 F.2d 113 (8th Cir. 1976) (affirming denial of intervention where delay would ensue and no efficiencies would be gained); *United States v. Blue Chip Stamp Co.*, 272 F. Supp. 432, 439 (C.D. Cal. 1967) (noting that "the right to intervene to defeat entry of a consent decree in any government antitrust action has been consistently denied" and citing cases), *aff'd sub nom*, 389 U.S. 580 (1968) (per curiam). *Cf. Commonwealth of Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 (D.C. Cir. 2004) (permitting intervention post-judgment where there would be no delay because the "consent decree is currently in force").

(statement of Sen. Kohl) ("Our amendments to section five of the Clayton Act add language stating that nothing in that section will be 'construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to intervene.' This language is not intended to make any changes to existing law, but merely to restate the current interpretation of the law."). Thus, the amendments plainly state that "nothing in this section shall be construed . . . to require the court to permit anyone to intervene." 15 U.S.C. § 16(e)(2). Accordingly, COMPTEL's extensive citation to the 2004 amendments to the Tunney Act and its underlying legislative history (*see* COMPTEL's Mem. at 7-10) has no bearing on, and does not affect, the high standard that the courts have consistently adopted in ruling on motions to intervene in Tunney Act proceedings.

> **B.    COMPTEL Has Failed to Meet the High Standard Consistently Adopted by the Courts for Permissive Intervention.**

The very first – and indeed, insurmountable – hurdle that COMPTEL faces in its quest for intervention is to establish that the government "is not vigorously and faithfully representing the public interest, that it was unduly influenced or that it exercised bad faith or malfeasance in reaching the proposed final judgment." *Thomson*, 1996 WL 554557, at *2-3. COMPTEL has not – and cannot – make such a showing.

The PAFJ at issue was the product of a ten-month investigation by DOJ in which the government amassed and analyzed a large quantity of data and information from the parties and third parties, including members of COMPTEL.[3] Most recently, in accordance with the Tunney Act's procedures, DOJ received comments from interested parties, including COMPTEL,

---

[3] *See* Department of Justice, "Justice Department Requires Divestitures in Verizon's Acquisition of MCI and SBC's Acquisition of AT&T" (Oct. 27, 2005), *available at* http://www.usdoj.gov/atr/public/press_releases/2005/212407.htm.

6

regarding the PAFJ. These comments, together with DOJ's response, will be filed with the Court in this proceeding.

At the same time as the DOJ investigation, the FCC was conducting its own independent public record inquiry into whether the transaction at issue was in the public interest, convenience, and necessity. This examination, which consumed several months, involved a similar collection and analysis of industry data, the production of nearly a million pages of documents by SBC alone, and an extensive comment and reply period that resulted in the filing by third parties of 110 comments and 121 additional written submissions. *See* FCC Website Page for SBC/AT&T Merger, *available at* http://www.fcc.gov/transaction/sbc-att.html. During the course of this proceeding, COMPTEL itself filed *fourteen* submissions on a wide range of issues, including relief.[4] Thus, the record reveals that the government was engaged in precisely the type of vigorous and faithful representation of the public interest with which it is charged.

Facing the very high standard for intervention established by the courts, COMPTEL's attempt to show "inadequate representation by the United States" (COMPTEL's Mem. at 11) not only omits relevant information regarding the Justice Department and FCC investigations, but relies on misleading points, ultimately falling well short of what would be required to establish an abdication by the government of its responsibility to represent the public interest.

Ultimately, COMPTEL's contention that the proposed remedy is inadequate is belied by the conduct of its own members. AT&T has completed agreements to divest the assets, and two

---

[4] The FCC ultimately approved the merger, determining that it would produce "significant public interest benefits" and specifically found that due to the remedies provided in the DOJ's proposed final judgment "the transaction is not likely to have anticompetitive effects in the relevant markets." *See* Memorandum Opinion and Order, *In the Matter of SBC Communications Inc. and AT&T Corp. Applications for Approval of Transfer of Control*, WC Docket No. 05-65, at ¶ 2 (Nov. 17, 2005), *available at* http://hrauunfoss.fcc.gov/edocs_public/attachmatch/FCC-05-183A1.pdf.

of the purchasers are members of COMPTEL. If the divested assets were as competitively worthless as COMPTEL asserts, these Competitive Local Exchange Carriers ("CLECs") would not have agreed to purchase them.

Contrary to COMPTEL's assertions *(id.* at 13-18), DOJ's conclusion is entirely consistent with precedent and its past practices. COMPTEL repeatedly cites the DOJ "Guide to Merger Remedies" ("DOJ Guide") for the proposition that divestiture of assets without customers can never be a sufficient remedy. COMPTEL's Mem. at 13-17. But that document says nothing of the sort. Rather, it starts with the common sense proposition that a merger remedy should be the most narrowly tailored solution that cures the specific antitrust harm the Department believes the merger creates. DOJ Guide at 3. The goal is "not to enhance premerger competition but to restore it" and remedies are fashioned in order to promote competition, not competitors. *Id* at 4, 5. Thus, the adequacy of a proposed remedy cannot be determined without focusing on the competitive concern the remedy is designed to address. Here, the Justice Department concluded that the competitive harm was the loss of a source of competitive access into certain buildings – a conclusion that COMPTEL does not challenge. Accordingly, as DOJ properly found, the tailored remedy should be to require the defendants to provide facilities that can be used to access those buildings.[5]

DOJ's conclusion also conforms with prior cases, including one upon which COMPTEL itself relies. In *United States v. Cingular Wireless Corp.,* Civil No. 1:04CV01850 (RBW) (Final Judgment, filed Nov. 3, 2004, *available at* COMPTEL's Mem., Ex. A), DOJ required divestiture

---

[5] Contrary to COMPTEL's suggestion (COMPTEL's Mem. at 2 n.2), there is nothing unusual about permitting a merger to proceed after obtaining agreement on a proposed remedy. *See, e.g., United States v. UnitedHealth Group Inc. et al*, Civil No. 1:05CV02436 (RMU) (Dec. 20, 2005) (permitting consummation of merger following the filing of the Stipulation with the court), *available at* http://www.usdoj.gov/atr/cases/f213800/213839.htm.

of entire business units in certain areas to remedy broader competitive harm. However, in other areas where the concern was access to a scarce resource, DOJ required only the divestiture of bare wireless spectrum, a remedy directly analogous to the remedy in this case. DOJ concluded that this limited divestiture without customers was adequate because other wireless service providers could compete effectively if they had access to the necessary assets. *Id.*, CIS at 12-13, 15 (filed Oct. 29, 2004, *available at* http://www.usdoj.gov/atr/cases/f206000/206049.htm). DOJ has used similar narrowly tailored remedies in other cases.[6]

The decision in *United States v. AT&T*, 552 F. Supp. 131 (D.D.C. 1982), a case on which COMPTEL repeatedly relies (COMPTEL Mem. at 6-7, 15), does not change the high standard required to permit pre-judgment intervention. In fact, Judge Greene repeatedly denied requests to intervene, stating that "the public comment procedures provided ample protection for all legitimate interests at that stage of the proceeding." *Id.* at 146 n.61. Only *after* the Court had entered a final judgment in the proceedings did he grant intervention, for purposes of appeal and other post-judgment proceedings. *Id.* at 219 & n.365. The concerns with delay in post-judgment

---

[6] *See also, e.g., United States v. 3D Systems/DTM*, Civil No. 1:01CV01237, (GK) (Proposed Final Judgment, filed Aug. 16, 2001, *available at* http://www.usdoj.gov/atr/cases/f8900/8926.htm) (requiring licenses of certain patents to permit entry into U.S.); *United States v. General Electric Co.*, Civil No. 1:98CV01744 (RCL) (Competitive Impact Statement, filed July 14, 1998, at 6, *available at* http://www.usdoj.gov/atr/cases/f1800/1843.htm) (requiring divestiture of certain software and related equipment so that third parties could use them to better compete, but not requiring divestiture of customers because a base of customers was not the obstacle to effective competition).

COMPTEL's alternative argument regarding AT&T and Verizon (COMPTEL's Mem. at 18-19) is without basis. The Court's public interest review "'may not reach beyond the complaint to evaluate claims that the government did *not* make.'" *See, e.g., United States v. SBC Communications, Inc.*, 339 F. Supp. 2d 116, 117 (D.D.C. 2004) (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995)). In any event, to the extent there is any relevance to the Court's review of this decree, the comment mechanism is more than adequate.

proceedings may not be as great as those pre-judgment. *See Microsoft*, 373 F.3d at 1236 (allowing intervention for the limited purpose of appealing the district court's public-interest determination). Here, of course, COMPTEL seeks pre-judgment intervention, which carries with it all the attendant risks of delay and prejudice. Such intervention should not be allowed.

      **C.    COMPTEL Has Failed to Satisfy the Basic Prerequisites for Permissive Intervention Under Rule 24.**

Not only has COMPTEL failed to meet the very high burden of proof that courts have consistently required to grant discretionary intervention in Tunney Act cases, but COMPTEL has also failed to satisfy the minimum prerequisites of Federal Rule of Civil Procedure 24. First, COMPTEL has failed to demonstrate that intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). Courts in this Circuit have long recognized the inherent harm that would result from delay if pre-judgment intervention is permitted, and have therefore denied motions to intervene. *See, e.g., Thomson Corp.*, 1996 WL 554557, at *2-3; *Stroh Brewery Co.*, 1982 WL 1861, at *3. As the Court of Appeals for the D.C. Circuit has observed:

> The "delay or prejudice" standard presumably captures all the possible drawbacks of piling on parties; the concomitant issue proliferation and confusion will result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error. . . . The downside of intervention might therefore outweigh the hoped-for advantages . . . .

*MSL*, 118 F.3d at 782. COMPTEL's expressed intent to seek a hearing as well as discovery "relevant to DOJ's market definition, competitive effect on the relevant market, and any information DOJ considered in determining the proposed remedy," makes abundantly clear that disruption and delay is exactly what is in the offing. That delay will be counterproductive and prejudicial, as it will adversely affect the on-going process whereby AT&T is on the verge of

implementing the required divestiture. That divestiture, of course, will allow the acquirers to use the assets to compete with AT&T, exactly as DOJ intended.

Further, COMPTEL does not even possess the Rule 24(b)(2) requirement of a "claim or defense" that has "a question of law or fact in common" with "the main action" because none of COMPTEL's members has filed a private lawsuit complaining about antitrust injury arising from the merger. COMPTEL offers only a hypothetical, *i.e.*, that it *could* bring a private action seeking an injunction complaining about antitrust injury arising from the merger. COMPTEL's Mem. at 13 n.6. However, the Court of Appeals for the D.C. Circuit has not gone so far as holding that, in Tunney Act proceedings, theoretical claims justify intervention. In finding satisfaction of the "common question" prong of the Rule 24 standard in Tunney Act proceedings, the D.C. Circuit has focused on the "overlap of legal and factual issues" between *actual* antitrust litigations of the Government and a private party and the possibility that a single proceeding of two *actual* litigations "might produce efficiency gains." *See MSL*, 118 F.3d at 782; *see also Microsoft*, 373 F.3d at 1235. Here, there is no private litigation to create the circumstances under which intervention would promote efficiency.

It is thus clear that COMPTEL has failed to satisfy the prerequisites necessary for intervention in this proceeding. COMPTEL's motion to intervene should, therefore, be denied.

## II.     COMPTEL'S REQUEST TO BE AN *AMICUS* ALSO SHOULD BE DENIED

The Court should also deny COMPTEL's request to file an *amicus* brief. Having already contributed extensively to the record in these merger proceedings by submitting comments to the DOJ and FCC, COMPTEL has not demonstrated a need to submit supplemental information at this juncture. Once DOJ has filed the public comments and its response, COMPTEL is free to renew its *amicus* motion if it deems such a course of action appropriate. However, unless and until this Court – based on its review of the record – determines that additional input from

COMPTEL is warranted, COMPTEL's request to file an *amicus* brief should be denied. *See, e.g., Microsoft Corp.*, 2002 WL 318954, at *2; *Carrols Development*, 454 F. Supp. at 1221-22. Moreover, should the Court decide to permit COMPTEL to appear as *amicus* at some point, the Court should accept COMPTEL's invitation to "follow the same course of action" as in *United States v. Microsoft Corp.*, 2002 WL 319139, at *3, by imposing page limits and a strict prohibition against repetitive argumentation.

## CONCLUSION

For the foregoing reasons, the Court should deny COMPTEL's Motion for Leave to Intervene, or in the Alternative, to Participate as *Amicus Curiae*.

Respectfully submitted,

Wm. Randolph Smith /s/
Wilma A. Lewis (D.C. Bar No. 358637)
Wm. Randolph Smith (D.C. Bar No. 356402)
Michael Lazarus (D.C. Bar No. 482526)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116

Counsel for Defendant AT&T Inc.

Dated:  February 22, 2006