**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>       **Plaintiff,**<br>v.<br><br>**SBC Communications, Inc. and<br>AT&T Corp.,**<br><br>       **Defendants.** | Civil Action No. 1:05CV02102 (EGS) |
| **UNITED STATES OF AMERICA,**<br><br>       **Plaintiff,**<br>v.<br><br>**Verizon Communications Inc. and<br>MCI, Inc.,**<br><br>       **Defendants.** | Civil Action No. 1:05CV02103 (EGS) |

**MEMORANDUM OF VERIZON COMMUNICATIONS INC. IN OPPOSITION TO
COMPTEL'S MOTION FOR LEAVE TO INTERVENE, OR IN THE ALTERNATIVE
TO PARTICIPATE AS AMICUS CURIAE**

CompTel, a trade association, seeks to intervene – or, in the alternative, to participate as amicus – "for the limited purpose of assisting the Court in understanding the inadequacy of the remedies" in the proposed Final Judgment. Motion at 1 (filed Feb. 8, 2006). Among other things, CompTel wants discovery. But CompTel has had ample opportunity to argue that the government should have imposed more stringent conditions on Verizon's merger with MCI, including in comments on the proposed Final Judgment that will be before this Court. The Department of Justice ("Department") and the Federal Communications Commission ("FCC") have considered CompTel's arguments and rejected them, and CompTel's motion provides no

1

basis for allowing a third party to interfere with the settlement that the parties propose. CompTel cannot satisfy the governing standard, which allows intervention only upon a "'strong showing that the government is not vigorously and faithfully representing the public interest.'" *Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 783 (D.C. Cir. 1997) (quoting *United States v. LTV Corp.*, 746 F.2d 51, 54 n.7 (D.C. Cir. 1984)).

CompTel's arguments provide no basis for intervention under the Federal Rules. First, CompTel does not have a "claim" for purposes of Rule 24(b) or even constitutional standing. Second, its arguments do not justify any "delay" in "adjudication," Fed. R. Civ. P. 24(b), much less its unprecedented demand for discovery, particularly when it has already had access to confidential information filed with the Department and the FCC. Furthermore, under settled law – unaffected by recent amendment of the Tunney Act – the public-interest standard is more than satisfied here because, "as measured by the Department's *complaint*, the decree . . . represents a material accomplishment." *Massachusetts School of Law*, 118 F.3d at 783.

## BACKGROUND

The merger of Verizon and MCI was subjected to searching regulatory review by both the Department and the FCC. CompTel was an active participant in both proceedings. CompTel had an opportunity to meet with Department officials and to submit its views in writing. Before the FCC, CompTel submitted a petition to deny the parties' merger application and comments in support of its petition, and it made numerous *ex parte* submissions – oral and written. CompTel also submitted its views regarding what conditions the government should impose if it allowed the merger to go forward.[1] In the course of the FCC proceeding, CompTel had access to

---

[1] *See*, *e.g.*, Ex Parte Letter from Jonathan Lee, CompTel, to Marlene H. Dortch, Secretary, FCC, WC Docket Nos. 05-65, 05-75 (filed Oct. 21, 2005).

confidential documents that the Department had compelled Verizon to provide – many of which were also submitted in the FCC proceeding – under the terms of the FCC's protective order.

CompTel's arguments were considered and rejected by both the Department and the FCC. After the Department filed its Complaint and proposed Final Judgment, the FCC issued its own order approving the transaction, which referred repeatedly to the arguments of CompTel and its members. *See Verizon/MCI Merger Order*.[2] The FCC specifically considered the effect of the proposed Final Judgment (as well as additional voluntary commitments that the FCC made a condition of its approval), and determined for itself that the proposed Final Judgment addresses any risk of diminished competition. *See id.* ¶ 40. CompTel has thus had a full opportunity to urge the government to take different action, and its arguments have been repeatedly rejected. Furthermore, CompTel has submitted comments on the proposed Final Judgment that will be before the Court in this proceeding.

**ARGUMENT**

CompTel should not be allowed to intervene in an attempt to take discovery or to delay the settlement reached between the government and Verizon. CompTel has had ample opportunity to advance its arguments against the merger and in favor of more stringent conditions, and its arguments have been rejected. CompTel has not attempted to make any "extraordinary showing" of bad faith on the part of the government. *United States v. IBM Corp.*, 1995-2 Trade Cas. (CCH) ¶ 71,135 (S.D.N.Y. 1995). (Point I, *infra.*) Likewise, CompTel has failed to make the required showing under Rule 24(b)(2). CompTel's argument – that the remedy at issue here is inadequate – does not constitute a "claim" for purposes of that Rule or

---

[2] Memorandum Opinion and Order, *Verizon Communications Inc. and MCI, Inc. Applications for Approval of Transfers of Control*, 20 FCC Rcd 18433 (2005) ("*Verizon/MCI Merger Order*").

establish that CompTel has standing.  (Point II.A, *infra.*)  And, in light of the limited purposes of Tunney Act review and the fact that the remedy proposed in the Judgment is meaningful, CompTel cannot justify delay in resolution of this proceeding.  (Point II.B, *infra.*)  Finally, the Court should deny CompTel's motion to participate as an amicus, because it has already had ample opportunity to provide arguments to the Court in its comments.  (Point III, *infra.*)

I.   **INTERVENTION IN A TUNNEY ACT PROCEEDING OVER THE GOVERNMENT'S OBJECTION SHOULD BE DENIED ABSENT A SHOWING THAT THE GOVERNMENT HAS FAILED TO ACT IN GOOD FAITH**

To justify intervention in this government antitrust case, CompTel must "'make some strong showing that the government is not vigorously and faithfully representing the public interest.'"  *Massachusetts School of Law*, 118 F.3d at 783 (quoting *LTV Corp.*, 746 F.2d at 54 n.7.  "[W]here there is no claim of bad faith or malfeasance tainting the process leading to the proposed final judgment, the potential for unwarranted delay and substantial prejudice to the original parties implicit in the proposed intervention clearly outweighs any benefit that may accrue therefrom."  *United States v. Stroh Brewery Co.*, 1982-2 Trade Cas. (CCH) ¶ 64,804 (D.D.C. 1982).

CompTel does not argue "that [the government's] resolution suggests malfeasance" or that there is "reason to infer a sell-out by the Department [of Justice]."  *Massachusetts School of Law*, 118 F.3d at 784.  CompTel was given a full opportunity to participate in the Department's merger review, and even had access to Verizon's confidential business information produced initially to the Department and then made available, in large part, to counsel to participants in the parallel FCC proceeding.  CompTel made its arguments to the Department and the FCC, and they were rejected.  And CompTel has had the opportunity to make its arguments regarding the merits of the proposed Final Judgment in comments that will be before the Court.  Courts have consistently rejected arguments like CompTel's as a basis for intervention.  *See*, *e.g.*,

4

*Massachusetts School of Law*, 118 F.3d at 783-84; *United States v. Hartford-Empire Co.*, 573 F.2d 1, 2 (6th Cir. 1978); *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113 (8th Cir. 1976); *United States v. Thomson Corp.*, 1996-2 Trade Cas. (CCH) ¶ 71,620 (D.D.C. Sept. 25, 1996); *IBM*, 1995-2 Trade Cas. (CCH) ¶ 71,135; *United States v. G. Heileman Brewing Co.*, 563 F. Supp. 642, 647 (D. Del. 1983); *Stroh Brewery Co.*, 1982-2 Trade Cas. (CCH) ¶ 64,804.[3]

CompTel also implies that recent amendments in the Tunney Act favor its motion for intervention, but that is incorrect. While modifying the language describing the standard of review the *Court* should apply, Congress added a new provision to avoid any inference that Congress was liberalizing the standards governing intervention. *See* 15 U.S.C. § 16(e)(2) ("Nothing in this section shall be construed to require the court to conduct an evidentiary hearing *or to require the court to permit anyone to intervene*.") (emphasis added). As Senator Kohl stated, "[t]his language is not intended to make any changes to existing law, but merely to restate *the current interpretation of the law*." 150 Cong. Rec. S3610, S3618 (Apr. 2, 2004) (remarks of Sen. Kohl) (emphasis added).

## II.   COMPTEL FAILS TO SATISFY THE REQUIREMENTS OF RULE 24(B)(2)

To justify intervention under Rule 24(b)(2), CompTel must show that (a) it has a claim or defense that presents a question of fact or law in common with the main action, and (b) intervention will not cause undue delay. *See Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1234 (D.C. Cir. 2004). CompTel cannot make either showing.

---

[3] CompTel cites but a single antitrust case in which intervention was permitted – the case approving the break-up of the Bell System in 1982. *See United States v. AT&T Co.*, 552 F. Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983). But in that case, the parties *acquiesced* to intervention. *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1458 (D.C. Cir. 1995) ("both the government and AT&T acquiesced"). Even in that case, third parties were not permitted to engage in discovery prior to entry of judgment, as CompTel seeks to do here. *See United States v. AT&T Co.*, 1982-2 Trade Cas. (CCH) ¶ 64,726 (D.D.C. 1982).

### A.	CompTel Has Identified No "Claim or Defense" Justifying Intervention and Has Failed To Establish Standing

CompTel has raised no claim that would justify intervention. "The words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit." *Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring). CompTel fails to identify any such claim. CompTel does not aver that it, or any of its members, has filed an antitrust case against Verizon or MCI that would "'overlap with the Government's case.'" *Cf. Massachusetts v. Microsoft*, 373 F.3d at 1234 (internal quotation marks omitted). CompTel conspicuously does not raise any claim that the proposed transaction violates Section 7 of the Clayton Act. It does not even argue that it could allege a violation of the antitrust laws or what claim it might hypothetically assert in such a suit.[4]

The closest CompTel's comes to identifying a claim is to state that it "*claims* that the remedies proposed in the [proposed Final Judgment] are grossly inadequate." Motion at 13 (emphasis added). But this is not a "claim" in the sense of Rule 24(b)(2): it does not identify a *legal* claim, based on an alleged invasion of CompTel's legally protected interest, that would give rise to a basis for judicial relief. Rather, CompTel's "claim" is simply an *argument*, a statement of dissatisfaction that could be raised by any person, whether or not the person had an interest affected by the transaction. CompTel "asserts no actual, present interest that would permit [it] to sue or be sued by [the parties to this action], or anyone else, in an action sharing common questions of law or fact with those at issue in this litigation." *Diamond*, 476 U.S. at 77;

---

[4] The requirement that a would-be intervenor assert an actual claim is confirmed by Rule 24(b)'s requirement that a person desiring to intervene serve a motion . . . "accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c); *see Diamond*, 476 U.S. at 76-77. While that requirement may be relaxed when it is obvious what the claim is, *see Massachusetts v. Microsoft*, 373 F.3d at 1236 n.19, CompTel's inability to comply with the requirement here is an additional reason to deny intervention.

6

*see also IBM Corp.*, 1995-2 Trade Cas. (CCH) ¶ 71,135 (holding that would-be Tunney Act intervenor had no "claim or defense" within meaning of Rule 24(b)(2)); *Stroh Brewery Co.*, 1982-2 Trade Cas. (CCH) ¶ 64,804.[5]

Nor can CompTel establish constitutional standing. The entry of the proposed Final Judgment will not *hurt* CompTel's members; it will *help* them by requiring Verizon to provide access to fiber-optic facilities that it would otherwise not make available. And refusal to approve the settlement will leave the Department with an untested complaint, which the Department would be under no obligation to pursue. CompTel's members would obtain relief only if the Department chose to continue to pursue litigation – a matter that is within the Department's unreviewable discretion, *see Heckler v. Chaney*, 470 U.S. 821, 831 (1985) – and only if such pursuit were successful. Under such circumstances, the Court cannot provide redress for any injury that CompTel asserts. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989).

**B.     Any "Delay" Caused by CompTel's Intervention Would Be "Undue"**

**1.**     CompTel seeks "discovery relevant to DOJ's relevant market definition, competitive effect in the relevant market, and information DOJ considered in determining the proposed remedy" and to "participat[e] in hearings held by the Court (*or seeking a hearing if necessary*)." Motion at 1 (emphasis added). Such motions, which seek to expand the proceedings and to undermine the benefit to be gained from settlement, are invariably denied.

---

[5] CompTel cites no case recognizing the existence of a "claim" in circumstances like those here. *EEOC v. National Children's Center, Inc.*, 146 F.3d 1042 (D.C. Cir. 1998), involved a motion for intervention by a third-party that had sued the defendant in an independent tort action seeking access to materials that were filed under seal. The court held that "nonparties may permissively intervene for the purpose of *challenging confidentiality orders*," *id.* at 1045 (emphasis added), and CompTel makes no such claim. In *Textile Workers Union of America, CIO v. Allendale Co.*, 226 F.2d 765, 768 (D.C. Cir. 1955), the union intervened to *defend* a determination by the Secretary of Labor establishing a minimum wage; intervention by interested persons to defend beneficial regulatory action is common.

*See*, *e.g.*, *United States v. Thomson Corp.*, 1996-2 Trade Cas. (CCH) ¶ 71,620 (D.D.C. 1996); *United States v. Airline Tariff Publishing Co.*, 1993-1 Trade Cas. (CCH) ¶ 70,191 (D.D.C. 1993); *United States v. Carrols Dev. Corp.*, 454 F. Supp. 1215, 1221 (N.D.N.Y. 1978). CompTel's effort to seek discovery is all the more inappropriate here because CompTel has *already* received full access to all documents produced in the prior FCC proceedings related to this merger.

    **2.**    More fundamentally, *any* delay from intervention would be undue because CompTel has not proposed any colorable basis for upsetting the proposed Final Judgment. The Tunney Act requires the Court to "determine that the entry of such judgment is in the public interest," considering "the competitive impact of such judgment," "whether its terms are ambiguous," and "the impact of entry of . . . judgment upon competition[,] the public generally and individuals alleging specific injury from the violations set forth in the complaint." 15 U.S.C. § 16(e). Review is deferential, and the Court need not consider "whether the proffered decree is the best possible settlement that could have been obtained." *G. Heileman Brewing Co.*, 563 F. Supp. at 647 (internal quotation marks omitted); *see also United States v. Western Elec. Co.*, 900 F.2d 283, 309 (D.C. Cir. 1990); *United States v. Bechtel Corp.*, 648 F.2d 660, 666 (9th Cir. 1981).[6]

---

[6] Recent amendments to the Tunney Act do not alter this law. The amended statute makes consideration of certain factors mandatory ("the court shall consider") and emphasizes "competitive" considerations. *See* 15 U.S.C. § 16(e); *see also* 150 Cong. Rec. S3610, S3617 (remarks of Senator Kohl) (criticizing language in prior opinions suggesting that court should limit its review to "whether entry of the consent judgments would make a 'mockery of the judicial function.'"). But there is nothing in the amendment that suggests that a district court is permitted to "subject the government's exercise of its prosecutorial discretion to non-deferential review," particularly in light of the "constitutional questions that would be raised." *Massachusetts School of Law*, 118 F.3d at 783.

8

CompTel's motion provides no basis to doubt that the proposed Final Judgment amply satisfies the governing standard. The competitive harm alleged in the complaint is that customers may lose the benefits of facilities-based competition in buildings where MCI was the sole facilities-based competitor and where entry is unlikely because of the high capital costs associated with construction of fiber-optic facilities. The proposed Final Judgment directly addresses that issue by requiring divestiture of existing fiber-optic facilities to an acquirer that "has the intent and capability . . . of competing effectively," thereby eliminating the only significant barrier to facilities-based entry identified in the complaint. Proposed Final Judgment § IV.H.1 (filed Nov. 28, 2005); *see also* Competitive Impact Statement at 9-11 (filed Nov. 16, 2005). Those provisions ensure that an alternative competitive provider will continue to be available in the specified buildings, and Verizon will therefore be unable to "raise [the] price to retail and wholesale customers" for those lines because the competitor can come in and compete against Verizon's bid. *Cf.* Complaint ¶ 25 (filed Oct. 27, 2005).

CompTel next argues that the Department's remedy fails to address the "Increase[d] Risk of Coordination By the Post-Merger Firms." Motion at 18. But the Department simply has not alleged that the Verizon/MCI transaction will reduce competition as a result of post-merger coordination with any other firm. Whether and how the proposed Final Judgment addresses that risk is therefore outside the scope of this proceeding. For its part, the FCC considered this argument, and rejected it. *Verizon/MCI Merger Order* ¶ 52 ("We also do not believe that the merger increases the likelihood of coordinated interaction.").

### III.  CompTel Does Not Meet the Requirements To Participate as Amicus Curiae

CompTel seeks, in the alternative, leave to participate as amicus curiae. CompTel's request should be denied. The limitations that courts impose on participation by amici reflect

9

concerns that amicus filings are likely to be duplicative, adding burdens on the parties and the Court without improving the quality of the advocacy or decisionmaking.  *See*, *e.g.*, D.C. Cir. R. 29(a) (amicus brief must "avoid repetition of facts or legal arguments"); *id.* R. 29(b) (cutting off right to file motion to file amicus brief after 60 days, unless good cause for delay shown); *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (amicus brief should be allowed only "when a party is not represented competently . . . when the amicus has an interest in some other case . . . or when the amicus has unique information or perspective").

Concerns about duplication and undue burden apply here.  The United States represents the public interest in this case and there is no need for additional parties to supplement that representation absent a showing of "[b]ad faith or malfeasance on the part of the Government." *See Sam Fox Pub'g Co. v. United States*, 366 U.S. 683, 689 (1961).  Furthermore, CompTel's brief will be duplicative because CompTel itself has already had an opportunity to provide comment under 15 U.S.C. § 16(d).  That Congress provided a specific mechanism for the submission of CompTel's views argues strongly in favor of denying its motion to participate as amicus.  Any information or argument that CompTel may provide can be included in the record of this proceeding without the need for filing a separate brief.

## CONCLUSION

The Court should deny the motion.

                                          Respectfully submitted,

                                          _____

| | |
|---|---|
| John Thorne | Mark C. Hansen |
| David E. Wheeler | Aaron M. Panner |
| Verizon Communications Inc. | Joseph S. Hall |
| 1515 N. Courthouse Road | Kellogg, Huber, Hansen, Todd, |
| Arlington, Virginia 22201 |    Evans & Figel, P.L.L.C. |
| Telephone: (703) 351-3000 | 1615 M Street, N.W., Suite 400 |
| Facsimile: (703) 351-3670 | Washington, D.C. 20036-3209 |
| | Telephone (202) 326-7900 |
| | Facsimile (202) 326-7999 |

11