# EXHIBIT 14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America, ) | Civil Action No.: 1:05CV02102 (EGS) |
| Plaintiff, ) | |
| v. ) | |
| SBC Communications, Inc. and ) | |
| AT&T Corp., ) | |
| Defendants, ) | |
| The Alliance for Competition in ) | |
| Telecommunications ) | |
| and ) | |
| COMPTEL, ) | |
| Amicus-Curiae. ) | |

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Civil Action No.: 1:05CV02103 (EGS) |
| Plaintiff, ) | |
| v. ) | |
| Verizon Communications Inc. and ) | |
| MCI, Inc., ) | |
| Defendants, ) | |
| The Alliance for Competition in ) | |
| Telecommunications ) | |
| and ) | |
| COMPTEL, ) | |
| Amicus-Curiae. ) | |

## DECLARATION OF JOSEPH GILLAN

Pursuant to 28 U.S.C. § 1746, and the Rules of Civil Procedure of the United States District Court for the District of Columbia, I, Joseph Gillan, hereby declare the following:

1.    My name is Joseph Gillan.  My business address is PO Box 541038, Orlando, Florida, 32854.  I am a consulting economist, with a practice that specializes in the telecommunications industry.

2.    I am a graduate of the University of Wyoming where I received B.A. and M.A. degrees in economics.  My graduate program focused on the analysis of economic issues involving public utilities, including telecommunications.  In 1980 I was recruited to join the recently formed Policy Analysis and Research Division at the Illinois Commerce Commission, the state agency responsible for regulating public utilities in Illinois.

3.    From 1980 to 1985, I was on the staff of the Illinois Commerce Commission where I had responsibility for the policy analysis of issues created by the emergence of competition in regulated markets, in particular the telecommunications industry.  In that role, I directed the Illinois Commission's response to the divestiture of Illinois Bell by AT&T, including the design of Illinois' Local Access and Transport Areas,[1] the initiation of intrastate access charges,[2] and

---

[1]    Local Access and Transport Areas (LATAs) were the geographic areas used to guide the assignment of facilities between the post-divestiture Illinois Bell and AT&T, as well as implement the ongoing restriction in the AT&T Divestiture Agreement (the Modified Final Judgment) that prohibited Illinois Bell from offering interLATA long distance service.  This restriction on the provision of in-region long distance service was lifted once Illinois Bell (then known as SBC Illinois) satisfied Section 271 of the Telecommunications Act of 1996.

[2]    Prior to the divestiture, the compensation for the use of local network facilities to originate/terminate long distance service was achieved through a complex set of revenue/profit-sharing agreements within the pre-divesture AT&T, as well as contracts between AT&T's affiliates and other local telephone companies.

establishing the rate levels for the post-divestiture Illinois Bell and AT&T Communications of Illinois.

4.    While on the staff of the Illinois Commission, I was named to the Staff Subcommittee for the Communications Committee of the National Association of Regulatory Utility Commissioners (NARUC).  I was also appointed to the Research Advisory Council overseeing the National Regulatory Research Institute, NARUC's research arm located at Ohio State University.

5.    In 1985, I left the Commission to join U.S. Switch, a venture firm organized to develop interexchange access networks in partnership with independent local telephone companies.  At the end of 1986, I resigned my position of Vice President-Marketing/Strategic Planning to begin a consulting practice.  Over the past twenty years, I have provided testimony before more than 35 state commissions, seven state legislatures, the Commerce Committee of the United States Senate, and the Federal/State Joint Board on Separations Reform.  I have also I have also been called to provide expert testimony before federal and state civil courts by clients as diverse as the trustees of a small competitive carrier in the Southeast to Qwest Communications.  In addition, I have filed expert analysis with the Finance Ministry of the Cayman Islands and before the Canadian Radio-Telecommunications Commission.

6.    I currently serve on the Advisory Council to New Mexico State University's Center for Public Utilities (since 1985) and I am an instructor in their "Principles of Regulation" program taught twice annually in Albuquerque.  I also lecture at Michigan State University's Regulatory Studies Program and have lectured at the School of Laws at the University of London (England)

on telecommunications policy and cost analysis in the United States. A complete summary of my qualifications, testimonies and publications is provided in Attachment 1.

7.      I have been asked by attorneys representing ACTel to address whether it is reasonable to expect that the limited divestiture of certain lateral facilities required by the Proposed Amended Final Judgments (PAFJs) would plausibly replace the competition lost by the acquisition of AT&T and MCI by SBC and Verizon. As I explain below, the divestiture of these few, discreet laterals cannot replace the competition lost by the nation's largest competitors to these incumbents.

8.      As a threshold point, telecommunications networks are characterized by what are commonly called "network effects." What this means is that the more places and customers to which a network can reach -- especially on an "end to end" basis -- the more valuable that network is. The importance of network-coverage to establishing network-value is a long standing feature of the telecommunications industry. Indeed, the standard pricing practice of the Bell System over the past hundred years (certainly since the early 1900's) has been to charge higher rates in urban markets than in rural markets because the number of subscribers that could be reached in an urban exchange were greater than the number of subscribers in a rural exchange.

9.      The importance of a network footprint is particularly critical in the enterprise market, generally defined as consisting of large business customers with sophisticated communication needs and multiple locations. The larger the network footprint, the more likely that a carrier can meet an enterprise customer's needs with its own network facilities. This not only lowers the

carrier's cost, but it also enables the carrier to guarantee a particular quality-of-service, as well as offer multi-location discounts that cannot be matched by other competitors.

10.    The competitive success of a carrier in a particular city is not merely the product of its network in that metropolitan area, but is also determined by its network facilities in other cities. Indeed, one of the reasons that SBC acquired other regional local exchange carriers (in particular, the local exchange operations of Ameritech),[3] was to position it to better compete for enterprise customers by having networks in more of the nation's largest cities.  It is common for the pricing of special access/private line services (for instance) to be based on a customer's aggregate purchases across the entire region, and not simply the demand in a particular city or state.

11.    Finally, AT&T's[4] local competitive position is the consequence not only of its extensive (relative to other competitors) network, it is also a product of its customer support capabilities, name recognition and large customer base.   These "back office" functions comprise a significant cost to provide local exchange service.  For instance, in 2005, AT&T reported that nearly 1/3[rd] of the total expense incurred by its local operating companies was expended on customer operations and general administrative activities.[5]

---

[3]    Ameritech, one of the seven Regional Bell Operating Companies formed at the time of the AT&T divestiture, comprised the local exchange operations of Illinois Bell, Indiana Bell, Ohio Bell, Michigan Bell and Wisconsin Bell.

[4]    I have styled this declaration to refer to the competitive consequences resulting from the acquisition of AT&T by SBC.  Parallel issues are presented by the PAFJ that permits MCI to be acquired by Verizon.  For simplicity, I will continue to refer in the text only to the AT&T acquisition by SBC although my comments are relevant to both PAFJs.

[5]    AT&T 2005 ARMIS 43-01.  ARMIS is a set of routine financial and operating reports required by the Federal Communications Commission.

12.     The important point is that the competitive worth of AT&T (and MCI) is not defined by individual network components in a particular area, but by the sum total of its local network, its customer base and its supporting assets (billing, marketing, etc.).  By acquiring its largest (by a large margin) competitor with any semblance of a national network, SBC solidified its network dominance, rivaled only by the consolidated Verizon/MCI.  (The acquisition of BellSouth by AT&T/SBC will add the Southeast to AT&T's network footprint).  AT&T's market presence in any particular metropolitan area is defined by its collection of *all* local facilities in (at the least) that metropolitan market, including its rights-of-way and building access agreements, as well as the customers contractually locked to those facilities.

13.     The lateral IRUs being offered through the PAFJ represent only a tiny fraction of the geographic coverage of the pre-merger AT&T network and none of the customers.  From what I understand, only a portion of the buildings where only AT&T and SBC had fiber facilities are being made available for lease.  This, of course, doesn't begin to cover all of the buildings in which AT&T had built fiber, much less the thousands of local "transport" fiber miles that AT&T had deployed to provide wholesale options in the local private line market.

14.     The number of customers served by a network (more precisely, the amount of communications traffic carried by that network) not only makes the network more valuable to prospective customers, but also makes the network more profitable for the network owner.  Once a fiber network is deployed, the incremental cost associated with additional capacity on that network is quite low.  This means that the more traffic a given network carries, the more of the network's cost that can be recovered through each individual unit of traffic, and the lower the corresponding cost per unit of transporting that traffic.

15.    Finally, the divestiture assets themselves constrain any prospective purchaser's ability to step into AT&T's pre-merger role in the local private line market.  Not only are there a limited number of 2-to-1 buildings being made available (with no customers or revenue attached), but some of the buildings may house a unique tenant (such as government entity or single large user) that are unlikely to contract with a competitor lacking the footprint or corporate reputation of AT&T.

16.    Obtaining a leasehold interest in a fraction of AT&T's excess network facilities in any given city will not allow a prospective "purchaser" of the "divestiture assets" to replicate AT&T's pre-merger role in either the wholesale local private line market for the metropolitan area, or the market for high capacity retail services that rely on local private lines as inputs.  The purchasing carrier cannot achieve a scale comparable to AT&T within a city, much less achieve the regional network footprint attractive to multi-location customers.  None of the potential purchasers remotely approach AT&T's pre-merger scale or scope, while the post-merger AT&T is comparable only to Verizon (and with its proposed acquisition of BellSouth, will overshadow Verizon as well).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 15, 2006.

_____

Joseph Gillan

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

## Education

B.A. Economics, University of Wyoming, 1978.
M.A. Economics, University of Wyoming, 1979.

## Professional History

*Gillan Associates, Economic Consulting (1987-Present)*

In 1987, Mr. Gillan established a private consulting practice specializing in the economic evaluation of regulatory policies and business opportunities in the telecommunications industry. Since forming his consulting practice in 1987, Mr. Gillan has advised business clients as diverse as AT&T and TDS Telecom (a small entrant seeking the authority to compete in a rural area).

*Vice President, US Switch, Inc. (1985-1987)*

Responsible for crafting the US Switch business plan to gain political acceptance and government approval. US Switch pioneered the concept of "centralized equal access," which positioned independent local telephone companies for a competitive long distance market. While with US Switch, Mr. Gillan was responsible for contract negotiation/marketing with independent telephone companies and project management for the company's pilot project in Indiana.

*Policy Director/Market Structure - Illinois Commerce Commission (1980-1985)*

Primary staff responsibility for the policy analysis of issues created by the emergence of competition in regulated markets, in particular the telecommunications industry. Mr. Gillan served on the staff subcommittee for the NARUC Communications Committee and was appointed to the Research Advisory Council overseeing NARUC's research arm, the National Regulatory Research Institute.

*Mountain States Telephone Company - Demand Analyst (1979)*

Performed statistical analysis of the demand for access by residential subscribers.

## Professional Appointments

| | |
|---|---|
| Guest Lecturer | School of Laws, University of London, 2002 |
| Advisory Council | New Mexico State University, Center for Regulation, 1985 – Present |
| Faculty | Summer Program, Public Utility Research and Training Institute, University of Wyoming, 1989-1992 |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Professional Appointments (Continued)**

| | |
|---|---|
| Contributing Editor | <u>Telematics: The National Journal of Communications Business and Regulation</u>, 1985 - 1989 |
| Chairman | Policy Subcommittee, NARUC Staff Subcommittee on Communications, 1984-1985 |
| Advisory Committee | National Regulatory Research Institute, 1985 |
| Distinguished Alumni | University of Wyoming, 1984 |

**Selected Publications**

"The Local Exchange: Regulatory Responses to Advance Diversity", with Peter Rohrbach, <u>Public Utilities Fortnightly</u>, July 15, 1994.

"Reconcentration: A Consequence of Local Exchange Competition?", with Peter Rohrbach, <u>Public Utilities Fortnightly</u>, July 1, 1994.

"Diversity or Reconcentration?: Competition's Latent Effect", with Peter Rohrbach, <u>Public Utilities Fortnightly</u>, June 15, 1994.

"Consumer Sovereignty: An Proposed Approach to IntraLATA Competition", <u>Public Utilities Fortnightly</u>, August 16, 1990.

"Reforming State Regulation of Exchange Carriers: An Economic Framework", Third Place, University of Georgia Annual Awards Competition, 1988, <u>Telematics: The National Journal of Communications, Business and Regulation</u>, May, 1989.

"Regulating the Small Telephone Business: Lessons from a Paradox", <u>Telematics: The National Journal of Communications, Business and Regulation</u>, October, 1987.

"Market Structure Consequences of IntraLATA Compensation Plans", <u>Telematics: The National Journal of Communications, Business and Regulation</u>, June, 1986.

"Universal Telephone Service and Competition on the Rural Scene", <u>Public Utilities Fortnightly</u>, May 15, 1986.

"Strategies for Deregulation:  Federal and State Policies", with Sanford Levin, Proceedings, <u>Rutgers University Advanced Workshop in Public Utility Economics</u>, May 1985.

"Charting the Course to Competition:  A Blueprint for State Telecommunications Policy", <u>Telematics: The National Journal of Communications Business, and Regulation</u>, with David Rudd, March, 1985.

"Detariffing and Competition:  Options for State Commissions", Proceedings of the <u>Sixteenth Annual Conference of Institute of Public Utilities</u>, Michigan State University, December 1984.

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Listing of Expert Testimony – Court Proceedings**

*T & S Distributors, LLC, ACD Telecom, Inc, Telnet Worldwide, Inc et al. v. Michigan Bell Telephone Company* (Civil Action No. 04-689-CK Ingham Circuit Court, State of Michigan) (Enforcement of contract; Industry definitions of local exchange service and end user)

*Dwayne P. Smith, Trustee v. Lucent Technologies* (Civil Action No. 02-0481 Eastern District of Louisiana)(Entry and CLEC Performance)

*BellSouth Intellectual Property v. eXpeTel Communications* (Civil Action No. 3:02CV134WS Southern District of Miss.)(Service definition, industry structure and Telecom Act of 1996)

*CSX Transportation Inc. v. Qwest International, Inc.* (Case No. 99-412-Civ-J-21C Middle District of Florida) (industry structure and wholesale contract arrangements).

*Winn v. Simon* (No. 95-18101 Hennepin Cty. Dist. Ct.)(risk factors affecting small long distance companies)

*American Sharecom, Inc. v. LDB Int'l Corp.* (No. 92-17922, Hennepin County District Court) (risk factors affecting small long distance companies)

*World Com, Inc. et al. v. Automated Communications, Inc. et al.* (No. 3:93-CV-463WS, S.D. Miss.) (damages)

**International Assignments**

*Recovering Contribution: Lessons from the United States' Experience*, Report submitted to the Canadian Radio-television and Telecommunications Commission on behalf of CallNet.

*Forcing a Square Peg into a Round Hole: Applying the Universal Service Cost Model in the Cayman Islands*, Analysis Presented to the Government of the Cayman Islands on behalf of Cable and Wireless.

**Summary of Expert Testimony and Affidavits – Regulatory Proceedings**

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| Indiana | Cause No. 42986 | Wire Center Impairment List | COVAD/NuVox |
| Ohio | 05-1393-TP-UNC | Wire Center Impairment List | CLEC Coalition |
| Illinois | Docket 06-0029 | Wire Center Impairment List | CLEC Coalition |
| Illinois | Docket 06-0027 | AT&T Illinois Deregulation | Data Net Systems |
| Oklahoma | Cause PUD 20060034 | Wire Center Impairment List | CLEC Coalition |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Summary of Expert Testimony and Affidavits – Regulatory Proceedings**

| State | Docket/Case | Topic | Sponsor(s) |
|-------|-------------|-------|------------|
| Kansas | 06-SWBT-743-COM | Wire Center Impairment List | CLEC Coalition |
| Arkansas | Docket 05-140-C | Wire Center Impairment List | CLEC Coalition |
| Georgia | Docket 19341-U (II) | Establishing Section 271 Rates | CompSouth |
| Texas | Docket 31303 | Wire Center Impairment List | CLEC Coalition |
| Washington | Docket UT-050814 | Verizon-MCI Merger | Covad |
| California | Application 05-04-020 | Verizon-MCI Merger | Cox |
| California | Application 05-04-020 | Verizon-MCI Merger | Covad/CalTel |
| Oklahoma | Cause 200400695 | Supersedes Bond | Cox |
| Florida | Docket 041269-TP | TRRO Implementation | CompSouth |
| Mississippi | Docket 2005-AD-139 | TRRO Implementation | CompSouth |
| South Carolina | Docket 2004-316-C | TRRO Implementation | CompSouth |
| Kentucky | Case No. 2004-00427 | TRRO Implementation | CompSouth |
| Alabama | Docket No. 29543 | TRRO Implementation | CompSouth |
| Louisiana | Docket No. U-28356 | TRRO Implementation | CompSouth |
| North Carolina | Docket P-55, Sub 1549 | TRRO Implementation | CompSouth |
| Tennessee | Docket No. 04-00381 | TRRO Implementation | CompSouth |
| Georgia | Docket No. 19341-U | TRRO Implementation | CompSouth |
| California | Application 05-02-027 | SBC-AT&T Merger | Cox |
| California | Application 05-02-027 | SBC-AT&T Merger | CalTel |
| Oklahoma | Cause 200400695 | SBC Deregulation | Cox |
| Kansas | 05-SWBT-907-PDR | SBC Deregulation | Cox-WorldNet |
| Wisconsin | 6720-TI-196 | SBC Deregulation | CUB |
| Oklahoma | Cause 200400042 | Status of Local Competition | Cox |
| Michigan | Case U-14323 | SBC Deregulation | Talk America |
| Oklahoma | Cause RM 200400014 | Regulatory Flexibility for SBC | CLEC Coalition |
| New Mexico | Case No. 3567 | Regulation of Wireless Carriers | Wireless Coalition |
| North Carolina | Docket P-19 Sub 277 | Alternative Regulation | CompSouth |
| North Carolina | Docket P-55 Sub 1013 | Alternative Regulation | CompSouth |
| Mississippi | Docket 2003-AD-714 | Switching Impairment | CompSouth |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Summary of Expert Testimony and Affidavits – Regulatory Proceedings**

| State | Docket/Case | Topic | Sponsor(s) |
|-------|-------------|-------|------------|
| Kentucky | Case No. 2003-00379 | Switching Impairment | CompSouth |
| Texas | Docket 28607 | Switching Impairment | CLEC Coalition |
| Massachusetts | D.T.E 03-60 | Switching Impairment | CLEC Coalition |
| Louisiana | Docket U-27571 | Switching Impairment | CompSouth |
| New Jersey | Docket TO03090705 | Switching Impairment | CLEC Coalition |
| Kansas | 03-GIMT-1063-GIT | Switching Impairment | CLEC Coalition |
| South Carolina | Docket 2003-326-C | Switching Impairment | CompSouth |
| Alabama | Docket 29054 | Switching Impairment | CompSouth |
| Illinois | Docket No. 03-0595 | Switching Impairment | AT&T |
| Indiana | Cause No. 42500 | Switching Impairment | AT&T |
| Pennsylvania | Case I-00030099 | Switching Impairment | CLEC Coalition |
| Tennessee | Docket No. 03-00491 | Switching Impairment | CompSouth |
| North Carolina | P-100, Sub 133Q | Switching Impairment | CompSouth |
| Georgia | Docket No. 17749-U | Switching Impairment | CompSouth |
| Missouri | Case TW-2004-0149 | Switching Impairment | CLEC Coalition |
| Michigan | Case No. U-13796 | Switching Impairment | CLEC Coalition |
| Florida | Docket No. 030851-TP | Switching Impairment | FCCA |
| Ohio | Case 03-2040-TP-COI | Switching Impairment | AT&T/ATX |
| Wisconsin | 05-TI-908 | Switching Impairment | AT&T |
| Washington | UT–023003 | Local Switching Rate Structure | AT&T/MCI |
| Arizona | T-00000A-00-0194 | UNE Cost Proceeding | AT&T/WCOM |
| Illinois | Docket 02-0864 | UNE Cost Proceeding | AT&T |
| North Carolina | P-55, Sub 1013<br>P-7, Sub 825<br>P-19, Sub 277 | Price Cap Proceedings | CLEC Coalition |
| Kansas | 02-GIMT-555-GIT | Price Deregulation | Birch/AT&T |
| Texas | Docket No. 24542 | Cost Case | AT&T |
| North Carolina | Docket P-100, Sub 133d | UNE Cost Proceeding | CLEC Coalition |
| Georgia | Docket No. 11901-U | DSL Tying Arrangement | WorldCom |
| Tennessee | Docket No. 02-00207 | UNE Availability/Unbundling | CLEC Coalition |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Summary of Expert Testimony and Affidavits – Regulatory Proceedings**

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| Utah | Docket No. 01-049-85 | Local Switching Costs/Price | AT&T |
| Tennessee | Docket No. 97-00309 | Section 271 Compliance | CLEC Coalition |
| Illinois | Docket No. 01-0662 | Section 271 Compliance | AT&T |
| Georgia | Docket No. 14361-U | UNE Availability/Unbundling | CLEC Coalition |
| Florida | Docket 020507-TL | Unlawful DSL Bundling | CLEC Coalition |
| Tennessee | Docket No. 02-00207 | UNE Availability/Unbundling | CLEC Coalition |
| Georgia | Docket No. 14361-U | UNE Costs and Economics | AT&T/WorldCom |
| Florida | Docket 990649-TP | UNE Cost and Price Squeeze | AT&T/WorldCom |
| Minnesota | P-421/CI-01-1375 | Local Switching Costs/Price | AT&T |
| Florida | Docket 000075-TP | Intercarrier Compensation | WorldCom |
| Texas | Docket No. 24542 | Unbundling and Competition | CLEC Coalition |
| Illinois | Docket 00-0732 | Certification | Talk America |
| Indiana | Cause No. 41998 | Structural Separation | CLEC Coalition |
| Illinois | Docket 01-0614 | State Law Implementation | CLEC Coalition |
| Florida | Docket 96-0768 | Section 271 Application | SECCA |
| Kentucky | Docket 2001-105 | Section 271 Application | SECCA |
| FCC | CC Docket 01-277 | Section 271 for GA and LA | AT&T |
| Illinois | Docket 00-0700 | Shared Transport/UNE-P | CLEC Coalition |
| North Carolina | Docket P-55 Sub 1022 | Section 271 Application | SECCA |
| Georgia | Docket 6863-U | Section 271 Application | SECCA |
| Alabama | Docket 25835 | Section 271 Application | SECCA |
| Michigan | Case No. U-12622 | Shared Transport/UNEs | AT&T |
| Ohio | Case 00-942-TP-COI | Section 271 Application | AT&T |
| Alabama | Docket No. 25835 | Structural Separation | SECCA |
| Alabama | Docket No. 27821 | UNE Cost Proceeding | ITC^Deltacom |
| Louisiana | Docket U-22252 | Section 271 Application | SECCA |
| Mississippi | Docket 97-AD-321 | Section 271 Application | SECCA |
| South Carolina | Docket 2001-209-C | Section 271 Application | SECCA |
| Colorado | Docket 99A-577T | UNE Cost Proceeding | AT&T |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Summary of Expert Testimony and Affidavits – Regulatory Proceedings**

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| Arizona | Case T-00000A-00-0194 | UNE Cost Proceeding | AT&T |
| Washington | Docket UT-003013 | Line Splitting and Combinations | AT&T |
| Ohio | Case 00-1368-TP-ATA<br>Case 96-922-TP-UNE | Shared Transport | AT&T/PACE |
| North Carolina | P-100 Sub 133j | Standard Collocation Offering | CLEC Coalition |
| Florida | Docket 990649-TP | UNE Cost Proceeding | CLEC Coalition |
| Michigan | Case No. U-12320 | UNE Combinations/Section 271 | AT&T |
| Florida | Docket 00-00731 | Section 251 Arbitration | AT&T |
| Georgia | Docket 5825-U | Universal Service Fund | CLEC Coalition |
| South Carolina | 97-239-C | Universal Service Fund | CLEC Coalition |
| Texas | PUC Docket 22289/95 | ETC Designation | Western Wireless |
| Washington | Docket UT-003013 | UNE Costs and Local Competition | AT&T |
| New York | Docket 98-C-1357 | UNE Cost Proceeding | Z-Tel |
| Colorado | Docket 00K-255T | ETC Designation | Western Wireless |
| Kansas | 99-GCCZ-156-ETC | ETC Designation | Western Wireless |
| New Mexico | 98-484-TC | ETC Designation | Western Wireless |
| Illinois | Docket 99-0535 | Cost of Service Rules | AT&T/MCI |
| Colorado | Docket 00-B-103T | U S WEST Arbitration | ICG Comm. |
| North Dakota | PU-1564-98-428 | ETC Designation | Western Wireless |
| Illinois | Docket 98-0396 | Shared Transport Pricing | AT&T/Z-Tel |
| Florida | Docket 981834-TP | Collocation Reform | CLEC Coalition |
| Pennsylvania | M-00001353 | Structural Separation of Verizon | CompTel/ATX |
| Illinois | Docket 98-0860 | Competitive Classification of Ameritech's Business Services | CompTel/ AT&T |
| Georgia | Docket 6865-U | Complaint re: Combinations | MCIWorldcom |
| Virginia | Case No. PUC 990100 | GTE/Bell Atlantic Merger | AT&T |
| Florida | Docket 990649-TP | UNE Cost and Pricing | CLEC Coalition |
| Nebraska | Application C-1960/PI-25 | IP Telephony and Access Charges | ICG Communications |
| Georgia | Docket 10692-U | Pricing of UNE Combinations | CLEC Coalition |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

## Summary of Expert Testimony and Affidavits – Regulatory Proceedings

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| Colorado | Docket 99F-141T | IP Telephony and Access | Qwest |
| California | Case A. 98-12-005 | GTE/Bell Atlantic Merger | AT&T/MCI |
| Indiana | Case No. 41255 | SBC/Ameritech Merger | AT&T |
| Illinois | Docket 98-0866 | GTE/Bell Atlantic Merger | AT&T |
| Ohio | Case 98-1398-TP-AMT | GTE/Bell Atlantic Merger | AT&T |
| Tennessee | Docket 98-00879 | BellSouth BSE | SECCA |
| Missouri | Case TO-99-227 | § 271 Review: SBC | AT&T |
| Colorado | Docket 97A-540T | Stipulated Price Cap Plan/USF | CLEC Coalition |
| Illinois | ICC Docket 98-0555 | SBC/Ameritech Merger | AT&T |
| Ohio | Case 98-1082-TP-AMT | SBC/Ameritech Merger | AT&T |
| Florida | Docket 98-1121-TP | UNE Combinations | MCI WorldCom |
| Georgia | 6801-U | § 251 Arbitration: BellSouth | AT&T |
| Florida | 92-0260-TL | Rate Stabilization Plan | FIXCA |
| South Carolina | Docket 96-375 | § 251 Arbitration: BellSouth | AT&T |
| Kentucky | Docket 96-482 | § 251 Arbitration: BellSouth | AT&T |
| Wisconsin | 05-TI-172/5845-NC-101 | Rural Exemption | TDS Metro |
| Louisiana | U-22145 | § 251 Arbitration: BellSouth | AT&T |
| Mississippi | 96-AD-0559 | § 251 Arbitration: BellSouth | AT&T |
| North Carolina | P-140-S-050 | § 251 Arbitration: BellSouth | AT&T |
| Tennessee | 96-01152 | § 251 Arbitration: BellSouth | AT&T |
| Arizona | | § 251 Arbitration: US West | AT&T Wireless |
| Florida | 96-0883-TP | § 251 Arbitration: BellSouth | AT&T |
| Montana | D96.11.200 | § 251 Arbitration: US West | AT&T |
| North Dakota | PU-453-96-497 | § 251 Arbitration: US West | AT&T |
| Texas | Docket 16226 | § 251 Arbitration: SBC | AT&T/MCI |
| Alabama | Docket 25703 | § 251 Arbitration: BellSouth | AT&T |
| Alabama | Docket 25704 | § 251 Arbitration: GTE | AT&T |
| Florida | 96-0847-TP | § 251 Arbitration: GTE | AT&T |
| Kentucky | Docket 96-478 | § 251 Arbitration: GTE | AT&T |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Summary of Expert Testimony and Affidavits – Regulatory Proceedings**

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| North Carolina | P-140-S-51 | § 251 Arbitration: GTE | AT&T |
| Texas | Docket 16630 | § 251 Arbitration: SBC | LoneStar Net |
| South Carolina | Docket 96-358 | § 251 Arbitration: GTE | AT&T |
| Texas | Docket 16251 | § 271 Review: SBC | AT&T |
| Oklahoma | 97-0000560 | § 271 Review: SBC | AT&T |
| Kansas | 97-SWBT-411-GIT | § 271 Review: SBC | AT&T |
| Alabama | Docket 25835 | § 271 Review: BellSouth | AT&T |
| Florida | 96-0786-TL | § 271 Review: BellSouth | FCCA |
| Georgia | Docket 6863-U | § 271 Review: BellSouth | AT&T |
| Kentucky | Docket 96-608 | § 271 Review: BellSouth | AT&T |
| Louisiana | Docket 22252 | § 271 Review: BellSouth | AT&T |
| Texas | Docket 16226 | UNE Cost | AT&T/MCI |
| Colorado | 97K-237T | Access Charges | AT&T |
| Mississippi | 97-AD-321 | § 271 Review: BellSouth | AT&T |
| North Carolina | P-55 Sub 1022 | § 271 Review: BellSouth | AT&T |
| South Carolina | 97-101-C | § 271 Review: BellSouth | AT&T |
| Tennessee | 97-00309 | § 271 Review: BellSouth | AT&T |
| Tennessee | 96-00067 | Wholesale Discount | AT&T |
| Tennessee | 97-00888 | Universal Service | AT&T |
| Texas | Docket 15711 | GTE Certification as CLEC | AT&T |
| Kentucky | 97-147 | BellSouth BSE Certification | SECCA |
| Florida | 97-1056-TX | BellSouth BSE Certification | FCCA |
| North Carolina | P691 Sub O | BellSouth BSE Certification | SECCA |
| Florida | 98-0696-TP | Universal Service | FCCA |
| New York | 97-C-271 | § 271 Review: Bell Atlantic | CompTel |
| Montana | D97.5.87 | § 271 Review: US West | AT&T |
| New Mexico | 97-106-TC | § 271 Review: US West | AT&T/CompTel |
| Nebraska | C-1830 | § 271 Review: US West | AT&T |
| Alabama | Docket 25980 | Universal Service | AT&T |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

## Summary of Expert Testimony and Affidavits – Regulatory Proceedings

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| Kentucky | Admin 360 | Universal Service | AT&T |
| North Carolina | P100-S133B | Universal Service | AT&T |
| North Carolina | P100-S133G | Universal Service | AT&T |
| Illinois | 95-0458/0531 | Combined Network Elements | WorldCom |
| Illinois | 96-0486/0569 | Network Element Cost/Tariff | WorldCom |
| Illinois | 96-0404 | § 271 Review: Ameritech | CompTel |
| Florida | 97-1140-TP | Combining Network Elements | AT&T/MCI |
| Pennsylvania | A-310203-F0002 | Local Competition | CompTel |
| Georgia | 6415-U/6527-U | Local Competition | CompTel |
| Illinois | 98-NOI-1 | Structural Separation | CompTel/Qwest |
| New York | 98-C-690 | Combining Network Elements | CompTel |
| Texas | Docket 17579 | § 251 Arbitration: SBC (2nd) | AT&T/MCI |
| Texas | Docket 16300 | § 251 Arbitration: GTE | AT&T |
| Florida | Docket 920260-TL | Price Cap Plan | IXC Coalition |
| Louisiana | Docket U22020 | Resale Cost Study | AT&T/LDDS |
| California | Docket R.93-04-003 | Rulemaking on Open Network Architecture | LDDS/WorldCom |
| Tennessee | Docket 96-00067 | Avoidable Cost/Resale Discount | AT&T |
| Georgia | Docket 6537-U | Unbundled Loop Pricing | CompTel |
| Georgia | Docket 6352 | Rules for Network Unbundling | AT&T |
| Pennsylvania | Docket A-310203F0002 | Introducing Local Competition | CompTel |
| Florida | Docket 95-0984-TP | Interconnection Terms and Prices | AT&T |
| Kentucky | Case No. 365 | Local Competition/Universal Service | WorldCom |
| Mississippi | Docket 95-UA-358 | Introducing Local Competition | AT&T/WorldCom |
| Florida | Docket 95-0984-TP | Interconnection Terms and Prices | AT&T |
| Illinois | Docket 95-0458 | Wholesale Local Services | WorldCom |
| California | Dockets R.95-04-043/044 | Local Competition | WorldCom |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Summary of Expert Testimony and Affidavits – Regulatory Proceedings**

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| Florida | Docket 95-0696-TP | Universal Service and Carrier of Last Resort Obligations | IXC Coalition |
| Georgia | Docket 5755-U | Removing Subsidies from Access | AT&T |
| South Carolina | Docket 95-720-C | Price Regulation | ACSI |
| Michigan | Case No. U-10860 | Interconnection Agreement | WorldCom |
| Mississippi | Docket 95-US-313 | Price Regulation Plan | WorldCom/AT&T |
| Missouri | Case TR-95-241 | Expanded Local Calling | MCI |
| Washington | Docket UT-941464 | Interconnection Complaint | IXC Coalition |
| Maryland | Case No. 8584 – Phase II | Introducing Local Competition | WorldCom |
| Massachusetts | DPU 94-185 | Introducing IntraLATA and Local Competition | WorldCom |
| Wisconsin | Docket 6720-TI-111 | IntraLATA Equal Access | Schneider Com. |
| North Carolina | Docket P-100, Sub 126 | Expanded Local Calling | LDDS |
| Georgia | Docket 5319-U | IntraLATA Equal Access | MCI/LDDS |
| Mississippi | Docket 94-UA-536 | Price/Incentive Regulation | LDDS |
| Georgia | Docket 5258-U | Price Regulation Plan | LDDS |
| Florida | Docket 93-0330-TP | IntraLATA Equal Access | IXC Coalition |
| Alabama | Docket 23260 | Access Transport Rate Structure | LDDS |
| New Mexico | Docket 94-204-TC | Access Transport Rate Structure | LDDS |
| Kentucky | Docket 91-121 | Alternative Regulation Proposal | Sprint, AT&T and LDDS |
| Texas | Docket 12784 | Access Transport Rate Structure | IXC Coalition |
| Illinois | Docket 94-0096 | Customer's First Proposal | LDDS |
| Louisiana | Docket U-17949-D | Alternative Regulation | AT&T, Sprint and LDDS |
| New York | Case No. 93-C-0103 | Rochester Plan-Wholesale/Retail | LDDS |
| Illinois | Dockets 94-0043/46 | Access Transport Rate Structure | IXC Coalition |
| Florida | Docket 92-1074-TP | Expanded Interconnection | Intermedia |
| Louisiana | Docket U-20800 | Access Transport Rate Structure | LDDS |
| Tennessee | Docket 93-008865 | Access Transport Rate Structure | LDDS |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

## Summary of Expert Testimony and Affidavits – Regulatory Proceedings

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| Ohio | Docket 93-487-TP-ALT | Alternative Regulation | Allnet/LCI/LDDS |
| Mississippi | Docket 93-UN-0843 | Access Transport Rate Structure | LDDS |
| South Carolina | Docket 93-756-C | Access Transport Rate Structure | IXC Coalition |
| Georgia | Docket 4817-U | Access Transport Rate Structure | IXC Coalition |
| Louisiana | Docket U-20710 | Pricing and Imputation Standards | LDDS |
| Ohio | Case 93-230-TP-ALT | Alternative Regulation | MCI/Allnet/LCI |
| New Mexico | Docket 93-218-TC | Expanded Local Calling | LDDS |
| Illinois | Docket 92-0048 | Alternative Regulation | LDDS |
| Mississippi | Docket 93-UN-0038 | Banded Rates for Toll Service | LDDS |
| Florida | Docket 92-1074-TP | Expanded Interconnection | Florida Coalition |
| Louisiana | Docket U-20237 | Preferential Toll Pricing | LDDS, MCI and AT&T |
| South Carolina | Docket 93-176-C | Expanded Local Calling | LDDS & MCI |
| Mississippi | Case 89-UN-5453 | Rate Stabilization Plan | LDDS & ATC |
| Illinois | Docket 92-0398 | Local Interconnection | CLEC Coalition |
| Louisiana | Docket U-19993 | Payphone Compensation | MCI |
| Maryland | Docket 8525 | Payphone Compensation | MCI |
| South Carolina | Docket 92-572-C | Payphone Compensation | MCI |
| Georgia | Docket 4206-U | Payphone Compensation | MCI |
| Delaware | Docket 91-47 | Application for Rate Increase | MCI |
| Florida | Docket 88-0069-TL | Comprehensive Price Review | Florida Coalition |
| Mississippi | Case 92-UA-100 | Expanded Local Calling | LDDS & ATC |
| Florida | Docket 92-0188-TL | GTE Rate Case | MCI & FIXCA |
| Wisconsin | Docket 05-TI-119 | IntraLATA Competition | MCI & Schneider |
| Florida | Docket 92-0399-TP | Payphone Compensation | MCI & FIXCA |
| California | Docket I,87-11-033 | Alternative Regulation | Intellical |
| Florida | Docket 88-0068-TL | Rate Stabilization | Public Counsel and Large Users |
| New York | Case 28425, Phase III | Access Transport Rate Structure | Empire Altel |

Attachment A
Qualifications of Joseph Gillan
Civil Action No. 1:05CV02102 (EGS) and Civil Action No. 1:05CV02103 (EGS)

**Summary of Expert Testimony and Affidavits – Regulatory Proceedings**

| State | Docket/Case | Topic | Sponsor(s) |
|---|---|---|---|
| Wisconsin | Docket 05-TR-103 | Intrastate Access Charges | MCI & CompTel |
| Mississippi | Docket 90-UA-0280 | IntraLATA Competition | Intellicall |
| Louisiana | Docket U-17949 | IntraLATA Competition | Cable & Wireless |
| Florida | Docket 88-0069-TL | Rate Stabilization | Florida Coalition |
| Wisconsin | Docket 05-TR-103 | Intrastate Access Charges | Wisconsin IXCs |
| Florida | Docket 89-0813-TP | Alternative Access Providers | Florida Coalition |
| Alaska | Docket R-90-1 | Intrastate Toll Competition | Telephone Utilities of Alaska |
| Minnesota | Docket P-3007/NA-89-76 | Centralized Equal Access | MCI & Telecom*USA |
| Florida | Docket 88-0812-TP | IntraLATA Toll Competition | Florida Coalition |
| Wisconsin | Docket 05-TR-102 | Intrastate Access Charges | Wisconsin IXCs |
| Wisconsin | Docket 6655-NC-100 | Centralized Equal Access | Wisconsin IXCs |
| Florida | Docket 88-0069-TL | Rate Stabilization | Florida Coalition |
| Wisconsin | Docket 05-NC-100 | IntraLATA Toll Competition | Wisconsin IXCs |
| Florida | Docket 87-0347-TI | AT&T Regulatory Relief | Florida Coalition |
| Illinois | Docket 83-0142 | Intrastate Access Charges | Illinois Consolidated |
| Texas | Docket 8218 | WATS Prorate Credit | TEXALTEL |
| Iowa | Case RPU 88-2 | Centralized Equal Access | MCI & Teleconnect |
| Florida | Docket 87-1254-TL | Regulatory Flexibility for LECs | Microtel |
| Wisconsin | Docket 05-TR-5, Part B | IntraLATA Competition and Access Charges | Wisconsin State Telephone Assc. |
| Florida | Docket 86-0984, Phase II | Intrastate Loop Cost Recovery | Florida Coalition |