**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America, )<br>)<br>　　　　　　Plaintiff, )<br>　v. )<br>)<br>SBC Communications, Inc. and )<br>AT&T Corp., )<br>)<br>　　　　　　Defendants, )<br>)<br>The Alliance for Competition in )<br>　　Telecommunications )<br>)<br>　　　　　　and )<br>)<br>COMPTEL, )<br>)<br>　　　　　　*Amicus-Curiae*. )<br>_____) | Civil Action No.: 1:05CV02102 (EGS) |
| UNITED STATES OF AMERICA, )<br>)<br>　　　　　　Plaintiff, )<br>　v. )<br>)<br>Verizon Communications Inc. and )<br>MCI, Inc., )<br>)<br>　　　　　　Defendants, )<br>)<br>The Alliance for Competition in )<br>　　Telecommunications )<br>)<br>　　　　　　and )<br>)<br>COMPTEL, )<br>)<br>　　　　　　*Amicus-Curiae*. )<br>_____) | Civil Action No.: 1:05CV02103 (EGS) |

**LIMITED OBJECTION OF ACTEL
WITH RESPECT TO THE COURT'S ORDER OF JULY 14, 2006**

This filing is made in response to the Court's order of July 14, in which the Court informed parties and amici that the Court intends to review non-redacted copies of FCC opinions concerning the mergers currently before this Court. The Court's order directed amici to file objections by July 17, if they wish to do so.

As ACTel explained in oral argument on July 12, ACTel has no objection to the Court reviewing the FCC decisions, in redacted or non-redacted form, or reviewing any other material the Court deems relevant. The Court is permitted under the Tunney Act to conduct such a review.

However, ACTel wishes to make clear that its position with regard to reviewing the opinions should in no way be construed as a waiver of objections with respect to the weight to be given to the FCC analysis. ACTel believes it would be improper for the Court to defer to the FCC with respect to the determination of facts relevant to this Court's Tunney Act review, and, in the context of these particular decisions, it would be in improper to accord the determination in the FCC principal opinions any weight whatsoever with respect to the effectiveness of the Government's remedy.

The "evidence" set forth in the FCC decisions cannot serve as a substitute for facts, data and analysis DoJ should have presented to this Court. The record before this Court is devoid of any evidence – other than that presented to this Court by ACTel. The FCC decision is not a factual basis for any action by the Court; it can serve, at most, as a basis for further questioning and inquiry by the Court.[1]

---

[1] For example, although the DOJ in the July 12 hearing displayed "fiber maps" to this Court in an effort to justify its remedy, the FCC has held that "fiber maps" are of doubtful reliability, and are therefore not a sufficient basis on which to base a decision. *See* In the Matter of Verizon Communications Inc. and MCI, Inc. for Approval of Transfer of Control, Memorandum Opinion and Order, Federal Communications Commission WC Docket No. 05-75, Rel. November 17, 2006, fn. 123; In the Matter of SBC Communications Inc. and AT&T Corp.

The Court may be under the impression that the factual record before the FCC was more complete than that presented to the DoJ. This is simply not the case. To the contrary, the FCC did not issue any third party subpoenas during its investigation and therefore necessarily had an incomplete picture of how the merger would affect competition in the private line market. For example, ACTel could not present the data underlying the Wilkie studies to the FCC, nor even the detailed findings of the studies, because the underlying data was controlled by non-disclosure agreements required by AT&T, and AT&T would not waive those agreements to permit ACTel members to cooperate with the FCC staff. The FCC staff declined ACTel's offer to supply the data in response to a properly issued subpoena.

Moreover, the FCC's decisions hardly represent dispassionate analysis. The Court in the July 12 hearing repeatedly referred to the FCC as the "Federal People's Commission" apparently implying that the FCC generally responds to public concerns. While we certainly wish that were the case, unfortunately the reality is far, far from that ideal. Even conservative, pro-business commentators recognize that the FCC and its decisions are "hyper-political," reflecting "political considerations" rather than "presumed expertise."[2] Commentators on both the left and the right routinely

---

Applications for Approval of Transfer of Control, Memorandum Opinion and Order, Federal Communications Commission WC Docket No. 05-65, Rel. November 17, 2006, fn. 127.

[2] *See* Raymond Gifford, "Let the FTC Do It! Maybe it Already Can," The Progress & Freedom Foundation, April 2006 at 2, available at <http:www.pff.org/issues-pubs/ps/2006/ps2.12ftc.pdf>; Randolph J. May, "The FCC's Tumultuous Year 2003: An Essay on an Opportunity for Institutional Reform," The Progress & Freedom Foundation, February 2005 at 48, available at <http://www.pff.org/daca/050201dacaessays.pdf>.

characterize the FCC, using the term "regulatory capture" – controlled by incumbent phone companies who use the FCC to raise the cost of their competitors.[3]

This case is not an appeal of an FCC decision and for that reason alone, as ACTel explained in oral argument, deference to FCC findings would be erroneous. This Court should no more defer to the FCC findings than the trier of fact in a medical malpractice case should defer to a prior FDA decision that the device or medication at issue is safe. *See Wells v. Ortho Pharmaceutical Corp.*, 788 F.2d 741, 746 (11th Cir. 1986).

Beyond that, there is no finding by the FCC on the effectiveness of the Government's remedy to which the Court might differ, even if it were permitted to do so. As ACTel explained in oral argument, the FCC's principal opinion dealt with a large number of issues. All four Commissioners concurred in that opinion, in one respect or another. But on the issue of the effectiveness of the Government's remedy, the issue before this Court, two Commissioners agreed in the principal opinion that the remedy would be effective, and two disagreed, in pointed language we have presented to this Court. There is simply no majority FCC finding on the issue before this Court.[4]

---

[3]  *See* Susan Crawford, "The New Regulatory Capture," Nov. 17, 2005, available at <http://scrawford.blogware.com/blog/_archives/2005/11/17/1411529.html>; Testimony of Raymond L. Gifford, United States Senate Committee on the Judiciary, June 16, 2006 at 4, available at <http://www.pff.org/issues-pubs/testimony/060616gifford_com.pdf>.

[4]  Only four FCC Commissioners voted to approve the mergers. Two of the four Commissioners said in their separate statements accompanying the order that they did not believe that the divestitures included in the Department of Justice consent decrees were sufficient. For example, Commissioner Copps wrote that "a merger of this magnitude would seem to call for more significant divestiture of overlapping facilities and routes, going beyond the minimalist consent decrees that were announced last week by the Department of Justice." In his statement, Commissioner Adelstein explained that: "For American business customers, these mega-combinations may present the greatest risks….[T]he Commission concludes today that there is still a high level of concentration in the enterprise market in most areas of the country today, and the record makes clear that AT&T

Finally, even it this were the appeal of an FCC decision, under settled law, it would be error for this Court to defer to any FCC predictive judgments at issue here. On the issue of the effectiveness of the Government's remedy, the principal FCC opinion (with which only two commissioners agreed) contains no analysis nor any facts. *See* In the Matter of SBC Communications Inc. and AT&T Corp. Applications for Approval of Transfer of Control, Memorandum Opinion and Order, Federal Communications Commission WC Docket No. 05-65, Rel. November 17, 2006. It is merely the statement of a conclusion. Based on this conclusion, the principal opinion goes on to predict that prices will not rise after the merger, but we note the wide ranging authority, including

---

and MCI are … the … largest suppliers of wholesale special access services to competitive carriers. Indeed, the record suggests that even the mere presence of AT&T and MCI in the competitive bidding process results in lower wholesale prices. Based on these competitors' national positions and ability to apply competitive pressure to wholesale prices, I believe that a more substantial divestiture of overlapping facilities would have been appropriate with this merger. I am not convinced that the relatively minor number of facilities where the Applicants are required to lease high-capacity lines -- representing far less than one percent of their commercial buildings -- is sufficient by itself to remedy the significant loss of actual and potential competition. The Department of Justice's action leaves 99.9% of commercial buildings in SBC and Verizon territory wholly unprotected from the loss of competition that AT&T and MCI brought to bear." In the Matter of SBC Communications, Inc. and AT&T Corp. applications for Approval of Transfer of Control, Memorandum Opinion and Order, FCC WC Docket No. 05-65, (rel. November 17, 2005), Separate Statement of Commissioner Michael J. Copps at p. 138 [and] Separate Statement of Commissioner Jonathan S. Adelstein at pp. 142-143; In the Matter of Verizon Communications Inc. and MCI, Inc., Applications for Approval of Transfer of Control, Memorandum Opinion and Order, FCC WC Docket No. 05-75, (rel. November 17, 2005), Separate Statement of Commissioner Michael J. Copps at p. 144 [and] Separate Statement of Commissioner Jonathan S. Adelstein at pp. 148-149. Thus, while the FCC understandably did not attempt to do the Department of Justice's job for it, there was an equal split along party lines on the issue of whether the consent decree should have required more expansive facility divestitures.

statements by the AT&T CEO, to the contrary. We attach here another example of such statements, this time by Verizon, indicating the ubiquity of post-merger price increases.[5]

It is settled law that unsubstantiated predictive judgments by the FCC, particularly where, as here, those predictive judgments have been shown to be inaccurate, are accorded no weight at all and should be rejected by this Court. *See Cincinnati Bell Telephone Co. v. FCC*, 69 F.3d 752, 763, 763 n.4 (6th Cir. 1995).

In short, while we agree the Court should review the FCC decisions, we believe that their use is limited to demonstrating the paucity of evidence in this record provided by the Government to this Court.

Dated: July 17, 2006

        Respectfully submitted,

        _____/s/_____

        Gary Reback (Bar No. 218594)
        Carr & Ferrell LLP
        2200 Geng Road
        Palo Alto, CA 94303
        650-812-3489 (phone)
        650-812-3444 (facsimile)
        greback@carrferrell.com

        Thomas Cohen (Bar No. 269332)
        Kelley, Drye & Warren LLP
        3050 K Street, NW, Suite 400
        Washington, DC 20007
        (202) 342-8400 (phone)
        (202) 342-8451 (facsimile)
        tcohen@kelleydrye.com

        *Attorneys for the Alliance for Competition in Telecommunications*

---

[5] Qaisar Hasan and May Tang, "Telecom Carriers Upbeat on Non-consumer Trends," The Buckingham Research Group, July 6, 2006 (attached as Exhibit A).