Federal Communications Commission	DA 05-1538

Before the
Federal Communications Commission
Washington, D.C. 20554

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Verizon Communications Inc. and | ) |
| MCI, Inc. Applications for Approval of Transfer | )   WC Docket No. 05-75 |
| Of Control | ) |
| | ) |
| Order Adopting Second Protective Order | ) |

**ORDER**

Adopted:  May 25, 2005						Released:  May 25, 2005

By the Acting Chief, Wireline Competition Bureau:

1.   On March 10, 2005, the Wireline Competition Bureau (Bureau) issued a Protective Order ("Initial Protective Order") regarding confidential or proprietary documents submitted by Verizon Communications Inc. and MCI, Inc. (collectively, the "Applicants") and others that have or may become parties to this proceeding (individually, each a "Submitting Party").[1]  For the reasons set forth below, we hereby adopt a further Protective Order (the "Second Protective Order") attached hereto as Appendix A to ensure that certain highly confidential and competitively sensitive documents and information that may be submitted are afforded adequate protection.

2.   On May 5, 2005, the Bureau issued an initial request for information to the Applicants.[2]  On May 19, 2005, the Applicants stated that there are certain documents and information responsive to the Bureau's request which constitute some of their most sensitive business data, the release of which would have a devastating effect on Applicants' businesses and place the Applicants at a significant competitive disadvantage.  For this material, the Applicants seek additional protection beyond the Initial Protective Order.[3]

3.   The Commission will grant more limited access to those materials which, if released to competitors, will allow those competitors to gain a significant advantage in the marketplace.[4]  For example, a

---

[1]  Verizon Communications Inc. and MCI, Inc., Applications for Approval of Transfer Of Control, WC Docket No. 05-75, *Order Adopting Protective Order*, DA 05-647 (rel. March 10, 2005).

[2]  Letter from Thomas Navin, Acting Chief, Wireline Competition Bureau, to Michael Glover, Senior Vice President and Deputy General Counsel, Verizon Communications Inc., and Richard Whitt, Vice President of Federal Law and Policy, MCI, Inc., WC Docket No. 05-75 (May 5, 2005).

[3]  Letter from Curtis L. Groves, MCI, Inc., and Karen Zacharia, Verizon Communications Inc., to Thomas J. Navin, Acting Chief, Wireline Competition Bureau, WC Docket No. 05-75 (May 19, 2005).

[4]  *See, e.g.*, *Applications for Transfer Of Control of Licenses and Authorizations from Nextel Communications, Inc. and its Subsidiaries to Sprint Corporation*, WT Docket No. 05-63, *Order Adopting Second Protective Order*, DA 05-1480 (Wireless Telecommunications Bureau rel. May 20, 2005); *SBC Communications Inc. and AT&T Corp. Applications for Approval of Transfer of Control*, WC Docket No. 05-65, *Order Adopting Second Protective*, DA

company's list of specific customers, customer data aggregated to a relatively detailed level (*e.g.*, zip code, county or MSA), and specific future business, build out or marketing plans, could all allow competitors to target customers and gain an unfair competitive advantage if they were to obtain the information. Accordingly, we permit persons submitting such documents and information and those of a similarly competitively sensitive nature to designate those materials as Highly Confidential and, as provided in the Second Protective Order, we will limit access to such materials to outside counsel of record, their employees, and outside consultants and experts whom they retain to assist them in this proceeding. We find that such materials are necessary to develop a more complete record on which to base the Commission's decision in this proceeding and therefore require their production. We are mindful of their highly sensitive nature, but we must also protect the right of the public to participate in this proceeding in a meaningful way. We conclude that the protections adopted in the Second Protective Order will give appropriate access to the public while protecting a Submitting Party's competitively sensitive information, and will thereby serve the public interest. To the extent that a Submitting Party believes that its submissions should be covered by the Second Protective Order, the Submitting Party must file a letter specifically describing the information for which additional protection is sought and explaining why additional protection is necessary, and the Submitting Party may only file documents under the Second Protective Order that are specifically authorized by the Bureau.

4.      In their letter of May 19, 2005, Applicants sought additional protection for certain documents. The Second Protective Order covers only those portions of documents or data that fall into one of the categories specified below.[5] The Second Protective Order does not cover responses to written interrogatories.[6] The responses requested by the Initial Information Request in Docket No. 05-75 that are covered by the Second Protective Order are the portions of the documents or data that disclose the identity or characteristics of specific customers or of those with whom a company is negotiating (specifications 8.a(3) and 10.d); that provide revenues and numbers of customers broken down by customer type and market area (the MSA for in-region areas, the state for out-of-region areas) (specifications 3.a, 5.a, 5.c, and 17.b); that discuss in detail the Submitting Party's future plans to compete for specific groups or types of customers (*e.g.*, business or wholesale customers), including the Submitting Party's future procurement strategies, pricing strategies, product strategies, or marketing strategies (specifications 3.e, 5.b, 5.d, 17.c, 19.c (only for documents produced for this specification), 23, and 24); that provide detailed or granular engineering capacity information (specifications 6.d and 8.c); that discuss in detail the number or anticipated changes in the number of customers or amount of traffic (specification 18.b(4)); that discuss in detail plans to construct new facilities (specification 6.e); that discuss in specific detail or provide disaggregated quantification of merger integration benefits or efficiencies (specifications 20.a(2) and 20.d); and that have some of the characteristics of multiple categories.

5.      Under the Second Protective Order, two copies of each document that a Submitting Party claims is Highly Confidential pursuant to this Order (the "Confidential Filing") must be delivered in person to

---

05-1322 (Wireline Competition Bureau rel. May 9, 2005); *News Corporation, General Motors Corporation, and Hughes Electronics Corporation Order Concerning Second Protective Order*, MB Docket No. 03-124, Order, DA 03-2376 (Media Bur. rel. July 22, 2003) (order adopting second protective order); *EchoStar Communications Corporation, General Motors Corporation, and Hughes Electronics Corporation Order Concerning Second Protective Order*, CS Docket No. 01-348, Order, DA 02-964 (Media Bur. rel. Apr. 25, 2002) (order adopting second protective order).
[5]  For example, if a response includes multiple documents, only those documents that meet the specified categories are covered by the Second Protective Order. Similarly, if only certain portions of a document meet the specified categories, only those portions of the document are covered by the Second Protective Order.
[6]  Therefore, the Second Protective Order applies only to data and documents submitted along with interrogatory responses.

Gary Remondino, Wireline Competition Bureau, Federal Communications Commission, 445 12th Street, S.W., Washington, D.C. 20554.  The documents should be accompanied by a cover letter stating "HIGHLY CONFIDENTIAL INFORMATION – SUBJECT TO SECOND PROTECTIVE ORDER IN WC DOCKET NO. 05-75."  Each page of the confidential or proprietary document should be stamped "HIGHLY CONFIDENTIAL INFORMATION – SUBJECT TO SECOND PROTECTIVE ORDER IN WC DOCKET NO. 05-75 before the Federal Communications Commission."  In addition a Submitting Party must file with the Secretary's Office one copy of the Confidential Filing and two copies of the Confidential Filing in redacted form (the "Redacted Confidential Filing").  The two copies of the Redacted Confidential Filing and their accompanying cover letters should be stamped "REDACTED – FOR PUBLIC INSPECTION."  The cover letter accompanying the Redacted Confidential Filing should state that the Submitting Party is filing redacted version of such documents.

6.   Any party seeking access to confidential documents subject to the Second Protective Order shall request access pursuant to the terms of the Second Protective Order and must sign the Acknowledgement of Confidentiality (attached as Appendix B).

7.   The Submitting Party shall make the confidential or proprietary documents available for review at the offices of the Submitting Party's outside counsel or, if the Submitting Party has not retained outside counsel, at the offices of the Submitting Party's in-house counsel.  Parties reviewing these documents will be provided the following alternatives:  (1) parties will be provided adequate opportunity to inspect the documents on site; (2) parties may inspect the documents on site with the ability to request copies, at cost, of all or some of the documents, other than those marked as "Copying Prohibited"; or (3) parties may request a complete set of the documents at cost, other than those marked "Copying Prohibited," allowing two days after the request is made for receipt of the copies.  If a complete set of documents will be requested, parties are encouraged to make such requests at the time they submit the Acknowledgment of Confidentiality.  This will allow parties the opportunity to begin reviewing the documents at the end of the five-day period referred to in paragraph 7 of the Protective Order.  All copies of documents that are removed from the Submitting Party's office will be stamped as described above in paragraph 3 and must be returned in accordance with the terms of the Protective Order.

8.   *Authority*.  This Order is issued pursuant to Sections 4(i), 214(a) and 310(d) of the Communications Act of 1934, as amended, 47 U.S.C. §§ 154(i), 214(a) and 310(d), Section 2 of the Cable Landing Act, 47 U.S.C. § 35, Section 4 of the Freedom of Information Act, 5 U.S.C. § 552(b)(4), and authority delegated under Section 0.291 of the Commission's rules, 47 C.F.R. § 0.291, and is effective upon its adoption.

                    FEDERAL COMMUNICATIONS COMMISSION

                    Thomas J. Navin
                    Acting Chief, Wireline Competition Bureau

APPENDIX A

Second Protective Order

WC Docket No. 05-75

1.      *Definitions*.  As used herein, capitalized terms, not otherwise defined herein or in the accompanying Order, shall have the following meanings:

"Stamped Highly Confidential Document" means any document, or any part thereof, that bears the legend (or which otherwise shall have had the legend recorded upon it in a way that brings its attention to a reasonable examiner) "HIGHLY CONFIDENTIAL INFORMATION – SUBJECT TO SECOND PROTECTIVE ORDER IN WC DOCKET NO. 05-75 before the Federal Communications Commission," unless the Commission determines, *sua sponte* or by request pursuant to Sections 0.459 or 0.461 of its rules, that any such document is not entitled to such confidential treatment.  The term "document" means any written, recorded, electronically stored, or graphic material, whether produced or created by the Submitting Party or another person.  By designating a document a "Stamped Highly Confidential Document," a Submitting Party signifies that it contains information that the Submitting Party believes should be subject to protection under FOIA, the Commission's implementing rules, this Second Protective Order and the accompanying Order.

"Highly Confidential Information" means information contained in Stamped Highly Confidential Documents or derived therefrom that is not otherwise available from publicly available sources.

"Outside Counsel of Record" or "Outside Counsel" means the firm(s) of attorneys, or sole practitioner(s), as the case may be, representing a party in these proceedings, provided that, such persons are not involved in competitive decision-making, *i.e.*, Outside Counsel's activities, association, and relationship with a client do not involve advice about or participation in the business decisions of the client or of any competitor of a Submitting Party nor the analysis underlying the business decisions.  . Outside Counsel of Record includes any attorney representing a non-commercial party in these proceedings, provided that such a person is not involved in the competitive decision-making activities of any competitor of a Submitting Party.

"Outside Consultants" means consultants or experts retained for the purpose of assisting Counsel or a party in this proceeding, provided that, the Outside Consultants are not involved in competitive decision-making, *i.e.*, Outside Consultants' activities, association, and relationship with a client do not involve advice about or participation in the business decisions of the client or any competitor of a Submitting Party nor the analysis underlying the business decisions.  Outside Consultants include any expert employed by a non-commercial party in these proceedings, provided that such a person is not involved in the competitive decision-making activities of any competitor of a Submitting Party.

"Reviewing Party" means a person who has obtained access to Highly Confidential Information (including Stamped Highly Confidential Documents") pursuant to paragraphs 4 and 7 of this Protective Order.

2.      *Use of Highly Confidential Information*.  Persons obtaining access to Highly Confidential Information (including Stamped Highly Confidential Documents) under this Protective Order shall use the information solely for the preparation and conduct of this license transfer proceeding before the Commission as delimited in this paragraph and paragraphs 4, 9, and 10, and any subsequent judicial

proceeding arising directly from this proceeding and, except as provided herein, shall not use such documents or information for any other purpose, including without limitation business, governmental, or commercial purposes, or in other administrative, regulatory or judicial proceedings.  Should the Commission rely upon or otherwise make reference to the contents of any of the Stamped Highly Confidential Documents or Highly Confidential Information in its decision in this proceeding, it will do so by redacting any Highly Confidential Information from the public version of the decision and by making the unredacted version of the decision available only to a court and to those persons entitled to access to Highly Confidential Information under this Protective Order.

   3.     *Non-Disclosure of Stamped Highly Confidential Information*.  Except with the prior written consent of the Submitting Party, or as hereinafter provided under this Protective Order, neither a Stamped Highly Confidential Document nor any Highly Confidential Information may be disclosed by a Reviewing Party to any person other than the Commission and its staff.

   4.     *Permissible Disclosure*.  Subject to the requirements of paragraph 7, Stamped Highly Confidential Documents may be reviewed by Outside Counsel and Outside Consultants.  Subject to the requirements of paragraph 7, Outside Counsel and Outside Consultants may disclose Stamped Highly Confidential Documents and other Highly Confidential Information to: (1) paralegals or other employees of such Outside Counsel or Outside Consultants not described in clause 2 of this paragraph 4 assisting Outside Counsel or Outside Consultants in this proceeding; (2) employees of such Outside Counsel or Outside Consultants involved solely in one or more aspects of organizing, filing, coding, converting, storing, or retrieving documents or data or designing programs for handling data connected with this proceeding, or performing other clerical or ministerial functions with regard to documents connected with this proceeding; and (3) employees of third-party contractors performing one or more of the functions set forth in clause 2 of this paragraph 4.  Reviewing Parties may discuss and share the contents of the Stamped Highly Confidential Documents and Highly Confidential Information with any other Reviewing Party and with the Commission and its staff.  A Submitting Party's Stamped Highly Confidential Documents and Highly Confidential Information may also be disclosed to employees and Counsel of the Submitting Party.

   5.     *Protection of Stamped Highly Confidential Documents and Highly Confidential Information*.  Persons described in paragraph 4 shall have the obligation to ensure that access to Stamped Highly Confidential Documents and Highly Confidential Information is strictly limited as prescribed in this Protective Order.  Such persons shall further have the obligation to ensure that:  (1) Stamped Highly Confidential Documents and Highly Confidential Information are used only as provided in this Protective Order; and (2) Stamped Highly Confidential Documents are not duplicated except as necessary for filing at the Commission under seal as provided in paragraph 9 below.

   6.     *Prohibited Copying*.  If, in the judgment of the Submitting Party, a document contains information so sensitive (even given its Highly Confidential designation) that it should not be copied by anyone, it shall bear the additional legend "Copying Prohibited," and no copies of such document, in any form, shall be made.  Application for relief from this restriction against copying may be made to the Commission, with notice to Outside Counsel of Record for the Submitting Party.

   7.     *Procedures for Obtaining Access to Highly Confidential Documents*.  In all cases where access to Stamped Highly Confidential Documents and Highly Confidential Information is permitted pursuant to paragraph 4, before reviewing or having access to any Stamped Highly Confidential Documents or Highly Confidential Information, each person seeking such access shall execute the attached Acknowledgment of Confidentiality ("Acknowledgment") and file it with the Bureau, on behalf of the Commission, and serve it upon each Submitting Party through its Outside Counsel of Record so

that the Acknowledgment is received by each Submitting Party at least five business days prior to such person's reviewing or having access to such Submitting Party's Stamped Highly Confidential Documents or Highly Confidential Information, except that, where the person seeking access is one described in either clause 1, 2 or 3 of paragraph 4, the Acknowledgment shall be delivered promptly prior to the person's obtaining access.  Each Submitting Party shall have an opportunity to object to the disclosure of Stamped Highly Confidential Documents to any such persons.  Any objection must be filed at the Commission and served on Counsel representing, retaining or employing such person within three business days after receiving a copy of that person's Acknowledgment (or where the person seeking access is one described in either clause 2 or 3 of paragraph 4, such objection shall be filed and served as promptly as practicable after receipt of the relevant Acknowledgment).  Until any such objection is resolved by the Commission and, if appropriate, any court of competent jurisdiction prior to any disclosure, and unless such objection is resolved in favor of the person seeking access, persons subject to an objection from a Submitting Party shall not have access to Stamped Highly Confidential Documents or Highly Confidential Information.  The Submitting Party shall make available for review the Stamped Highly Confidential Documents of such party at the offices of such party's Outside Counsel of Record or, if the Submitting Party does not have Outside Counsel of Record, at the offices of such party's In-House Counsel.

8. *Requests for Additional Disclosure*.  If any person requests disclosure of Highly Confidential Information outside the terms of this Protective Order, such a request will be treated in accordance with Sections 0.442 and 0.461 of the Commission's rules.

9. *Filings with the Commission*.  Persons described in paragraph 4 may, in any documents that they file in this proceeding, reference Highly Confidential Information, but only if they comply with the following procedure:

a. Any portions of the pleadings that contain or disclose Highly Confidential Information must be physically segregated from the remainder of the pleadings;

b. The portions of pleadings containing or disclosing Highly Confidential Information must be covered by a separate letter to the Secretary of the Commission referencing this Protective Order;

c. Each page of any party's filing that contains or discloses Highly Confidential Information subject to this order must be clearly marked: "Highly Confidential Information included pursuant to Protective Order, WC Docket No. 05-75;" and

d. The highly confidential portion(s) of the pleading shall be served on the Secretary of the Commission, the Bureau, and each Submitting Party.  Such highly confidential portions shall be served under seal, and shall not be placed in the Commission's public file.  A party filing a pleading containing Highly Confidential Information shall also file redacted copies of the pleading containing no Highly Confidential Information, which copies shall be placed in the Commission's public files.  Parties should not provide courtesy copies of pleadings containing Highly Confidential Information to Commission Staff unless the Bureau so requests.  Any courtesy copies shall be submitted under seal.

10. *Client Consultation*.  Nothing in this order shall prevent or otherwise restrict Outside Counsel from rendering advice to their clients relating to the conduct of this proceeding and any subsequent judicial proceeding arising therefrom and, in the course thereof, relying generally on examination of Stamped Highly Confidential Documents or Highly Confidential Information; *provided, however*, that in rendering such advice and otherwise communicating with such client, outside Counsel shall not disclose Stamped Highly Confidential Documents or Highly Confidential Information.

11.     *No Waiver of Confidentiality*.  Disclosure of Highly Confidential Information as provided herein by any person shall not be deemed a waiver by any Submitting Party of any privilege or entitlement to confidential treatment of such Highly Confidential Information. Reviewing parties, by viewing this material agree:  (1) not to assert any such waiver; (2) not to use Highly Confidential Information to seek disclosure in any other proceeding; and (3) that accidental disclosure of Highly Confidential Information by a Submitting Party shall not be deemed a waiver of any privilege or entitlement as long as the Submitting Party takes prompt remedial action.

12.     *Subpoena by Courts, Departments or Agencies*.  If a court, or a federal or state department or agency issues a subpoena or orders production of Stamped Highly Confidential Documents or Highly Confidential Information that a party has obtained under terms of this Protective Order, such party shall promptly notify each Submitting Party of the pendency of such subpoena or order.  Consistent with the independent authority of any court, department or agency, such notification must be accomplished such that the Submitting Party has a full opportunity to oppose such production prior to the production or disclosure of any Stamped Highly Confidential Document or Highly Confidential Information.

13.     *Violations of Protective Order.*  Should a person that has properly obtained access to Highly Confidential Information under this Second Protective Order violate any of its terms, that person shall immediately convey that fact to the Commission and to the Submitting Party. Further, should such violation consist of improper disclosure of Highly Confidential Information, the violating person shall take all necessary steps to remedy the improper disclosure. The Commission retains its full authority to fashion appropriate sanctions for violations of this Second Protective Order, including but not limited to suspension or disbarment of Counsel from practice before the Commission, forfeitures, cease and desist orders, and denial of further access to Highly Confidential Information in this or any other Commission proceeding.  Nothing in this Second Protective Order shall limit any other rights and remedies available to the Submitting Party at law or in equity against any person using Highly Confidential Information in a manner not authorized by this Protective Order.

14.     *Termination of Proceeding*.  The provisions of this Second Protective Order shall not terminate at the conclusion of this proceeding.  Within two weeks after conclusion of this proceeding and any administrative or judicial review, persons described by paragraph 4 shall destroy or return to the Submitting Party Stamped Highly Confidential Documents and all copies of the same.  No material whatsoever derived from Stamped Highly Confidential Documents may be retained by any person having access thereto, except Counsel (as described in paragraph 4) may retain, under the continuing strictures of this Second Protective Order, two copies of pleadings (one of which may be in electronic format) containing Highly Confidential Information prepared on behalf of that party.  All Outside Counsel shall make certification of compliance herewith and shall deliver the same to Counsel for the Submitting Party not more than three weeks after conclusion of this proceeding.  The provisions of this paragraph 14 regarding retention of Stamped Highly Confidential Documents and copies of same shall not be construed to apply to the Commission or its staff.

FEDERAL COMMUNICATIONS COMMISSION


Thomas J. Navin
Acting Chief, Wireline Competition Bureau

# APPENDIX B

## Acknowledgment of Confidentiality

## WC Docket No. 05-75

I hereby acknowledge that I have received and read a copy of the foregoing Second Protective Order in the above-captioned proceeding, and I understand it.  I agree that I am bound by the Second Protective Order and that I shall not disclose or use Stamped Highly Confidential Documents or Highly Confidential Information except as allowed by the Protective Order.  I acknowledge that a violation of the Second Protective Order is a violation of an order of the Federal Communications Commission.

Without limiting the foregoing, to the extent that I have any employment, affiliation or role with any person or entity other than a conventional private law firm (such as, but not limited to, a lobbying or public interest organization), I acknowledge specifically that my access to any information obtained as a result of the Second Protective Order is due solely to my capacity as Outside Counsel of Record or consultant to a party or other person described in paragraph 4 of the foregoing Second Protective Order and that I will not use such information in any other capacity nor will I disclose such information except as specifically provided in the Second Protective Order.

I acknowledge that it is my obligation to ensure that:  (1) Stamped Highly Confidential Documents and Highly Confidential Information are used only as provided in the Protective Order; and (2) Stamped Highly Confidential Documents are not duplicated except as specifically permitted by the terms of paragraph 9 of the Protective Order, and I certify that I have verified that there are in place procedures, at my firm or office, to prevent unauthorized disclosure of Stamped Highly Confidential Documents or Highly Confidential Information.

Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Order or Protective Order.

Executed at _____ this ___ day of _____, ____.

_____
[Name]
[Position]
[Address]
[Telephone]