May 2, 2005

**BY ELECTRONIC FILING**

Thomas J. Navin
Acting Chief, Wireline Competition Bureau
Federal Communications Commission
445 Twelfth Street, S.W.
Washington, D.C. 20554

    Re:    *SBC Communications Inc. and AT&T Corp. Applications for Approval of Transfer of Control (WC Docket No. 05-65)*

Dear Mr. Navin:

    In accordance with Section 1.1206 of the Commission's rules, 47 C.F.R. § 1.1206, SBC Communications Inc. ("SBC") and AT&T Corp. ("AT&T"), applicants in the above-referenced proceeding (the "Applicants"), submit this letter to address the need for enhanced confidential treatment for certain materials called for by the Commission's request for information dated April 18, 2005 (the "Information Request"), such that only outside counsel and their consultants/employees may have access to such materials. The Applicants seek enhanced protection for certain materials related to their business and marketing plans (*e.g.*, forward-looking plans, strategy documents, details of the steps Applicants anticipate taking to achieve merger synergies, disaggregated estimates of savings and benefits associated with those synergies, competitive analyses that may reveal competitors' specific strengths, weaknesses, and strategies), granular customer data (*e.g.*, segmented revenues, customer identification), and detailed maps and network facilities inventories. These materials constitute some of the most sensitive data requested by the Commission, and contain the types of information that has been afforded heightened protection in prior proceedings.[1] For the reasons set forth below, inadvertent or intentional disclosure of these materials to the Applicants' competitors – some of

---

[1] *See, e.g., EchoStar Communications Corp., General Motors Corp., and Hughes Electronics Corp. – Order Adopting Second Protective Order*, 17 FCC Rcd. 7415 (2002) ("*EchoStar/Hughes Second Protective Order*"); *News Corporation, General Motors Corporation, and Hughes Electronics Corporation – Order Concerning Second Protective Order*, 18 FCC Rcd 15198, 15199 (2003) ("*News Corp./Hughes Second Protective Order*").

Thomas J. Navin
May 2, 2005
Page 2

whom are parties in this proceeding[2] – would have a devastating effect on Applicants' businesses and place them at a significant competitive disadvantage. Accordingly, Applicants request that the Commission create an enhanced level of confidentiality as it did in the *EchoStar/Hughes Second Protective Order* and the *News Corp./Hughes Second Protective Order*.

The Applicants seek enhanced protection for their business and marketing plans. Such planning documents and information are obviously among Applicants' most competitively sensitive information. It is critically important that such information be effectively shielded from inadvertent disclosure to competitors that would be able to react to this information in their own business and marketing strategies. The Commission previously found similar confidential information worthy of enhanced protection in the *EchoStar/Hughes Second Protective Order* and the *New Corp./Hughes Second Protective Order*.[3]

Accordingly, Applicants request enhanced protection for forward looking competitive analyses or studies that discuss their competition for business or wholesale customers; engineering capacity planning documents; analyses that discuss anticipated changes in the number of customers or the volume of associated traffic; market studies or competitive analyses that may reveal strengths, weaknesses, or strategies of Applicants or other competitors; plans to construct new facilities; and information and documents that could reveal procurement strategies, pricing strategies, competitive strategies, product strategies, merger integration strategies, and marketing strategies. *See* Information Request, ¶¶ 3(e), 6(e), 8(d), 9(c), 25, 26.

Applicants also seek enhanced protection for confidential and commercially sensitive information regarding the specific steps that the Applicants anticipate taking to achieve benefits or efficiencies from the integration of their networks and operations, the risks Applicants perceive in achieving the benefits or efficiencies, the conditions necessary for achieving the benefits or efficiencies, the time and costs required to achieve

---

[2] For example, parties to this proceeding include Qwest Communications International Inc., Cox Communications, Inc., Global Crossing North America, Inc., Vonage Holdings Corp., XO Communications, Broadwing Communications, LLC, and Savvis Communications Corporation.

[3] *See EchoStar/Hughes Second Protective Order*, 17 FCC Rcd. at 7416; *News Corp./Hughes Second Protective Order*, 18 FCC Rcd at 15,198.

Thomas J. Navin
May 2, 2005
Page 3

the benefits or efficiencies, and disaggregated quantifications of these benefits or efficiencies, as well as supporting documents and data. *See* Information Request, ¶¶ 22(a)(1), 22(a)(2), 22(d). The fact that the Applicants are even between themselves limiting the exchange of such information to their counsel and experts, notwithstanding their agreement to merge, confirms the importance of according them the special protections that the Commission has previously employed to prevent the intentional or inadvertent disclosure of highly sensitive commercial information.

The Applicants also seek enhanced protection for granular customer data. This includes: revenues and numbers of customer by customer type and the identities and characteristics of specific companies that are customers of Applicants or with whom Applicant's have (or are negotiating) commercial arrangements. *See* Information Request, ¶¶ 3(a), 5(a), 5(c), 8(b)(3), 9(c). Granular customer data is used to gauge customer demand for services, as well as to analyze the strength and weaknesses of service offerings. This information could reveal Applicants' plans and strategies, and any competitor who obtained access to this data would be able to exploit any perceived weakness at the same time or even before the Applicants were able to react and address those issues. This is the same category of materials that the Commission previously found worthy of enhanced protection in the *News Corp./Hughes Second Protective Order*.[4]

Finally, Applicants seek enhanced protection for detailed inventories and maps of their Internet backbone and other network facilities. *See* Information Request, ¶¶ 6(a), 12. These materials are deserving of enhanced protection not only because they are commercially sensitive, but because their disclosure could raise national security concerns.

---

[4] *News Corp./Hughes Second Protective Order*, 18 FCC Rcd at 15,198.

Thomas J. Navin
May 2, 2005
Page 4

      If you have any questions concerning the foregoing, please do not hesitate to contact the undersigned.

                                    Sincerely,

                                    *[signature: P.J. Grant]*

                                  Patrick J. Grant
                                  Arnold & Porter LLP
                                  *Counsel for SBC Communications Inc.*

                                  *[signature: David Lawson]*

                                  David L. Lawson
                                  Sidley Austin Brown & Wood LLP
                                  *Counsel for AT&T Corp.*

cc:     James R. Bird
          Michelle Carey
          William Dever
          Michele Ellison
          Marcus Maher
          Kent R. Nilsson



Ann D. Berkowitz
Associate Director
Federal Regulatory Advocacy

May 19, 2005

1300 I Street, NW
Suite 400 West
Washington, DC  20005
(202) 515-2539
(202) 336-7922 (fax)
aberkowitz@verizon.com

**Ex Parte**

Marlene H. Dortch - Secretary
Federal Communications Commission
445 12th Street, SW
Washington, DC 20554

      **Re:**   *<u>Applications for Consent to Transfer Control of Filed by Verizon Communications, Inc. and MCI, Inc.</u>*<u>, **WC Docket No. 05-75**</u>

Dear Ms. Dortch:

Verizon provided the attached letter to Tom Navin, Chief, Wireline Competition Bureau, and is respectfully requesting it be placed on the record.  Please let me know if you have any questions.

Sincerely,

*[signature: Ann D. Berkowitz]*

Attachment

cc:    Tom Navin
         Gail Cohen
         Bill Dever

May 19, 2005

Thomas J. Navin
Acting Chief, Wireline Competition Bureau
Federal Communications Commission
445 Twelfth Street, S.W.
Washington, D.C. 20554

      Re:    *Verizon Communications Inc. and MCI, Inc. Applications for Approval of Transfer of Control (WC Docket No. 05-75)*

Dear Mr. Navin:

      In accordance with Section 1.1206 of the Commission's rules, 47 C.F.R. § 1.1206, Verizon Communications Inc. ("Verizon") and MCI, Inc. ("MCI"), applicants in the above referenced proceeding (the "Applicants"), submit this letter to address the need for enhanced confidential treatment for certain materials called for by the Commission's request for information dated May 5, 2005 (the "Information Request"), such that only outside counsel and their consultants/employees may have access to such materials.

      Specifically, the Applicants seek enhanced protection for certain materials related to their business and marketing plans (e.g., forward-looking plans, strategy documents, details of the steps Applicants anticipate taking to achieve merger synergies, disaggregated estimates of savings and benefits associated with those synergies, competitive analyses that may reveal competitors' specific strengths, weaknesses, and strategies), granular customer data (e.g., segmented revenues, customer identification), and detailed maps and network facilities inventories. These materials constitute some of the most sensitive data requested by the Commission, and contain the types of information that has been afforded heightened protection in prior proceedings.[1] For the reasons set forth below, inadvertent or intentional disclosure of these materials to the Applicants' competitors – some of whom are parties in this proceeding[2] -- would have a devastating effect on Applicants' businesses and place them at a significant competitive disadvantage. Accordingly, Applicants request that the Commission create an enhanced level of confidentiality as it did in the *SBC/AT&T Second Protective Order*, the *EchoStar/Hughes Second Protective Order* and the *News Corp./Hughes Second Protective Order*.

---

    [1]    *See, e.g., SBC Communications Inc. and AT&T Corp. – Order Adopting Second Protective* Order, WC Docket No. 05-65, DA 05-1322 (May 9, 2005) ("*SBC/AT&T Second Protective Order*"); *EchoStar Communications Corp., General Motors Corp., and Hughes Electronics Corp. – Order Adopting Second Protective Order,* 17 FCC Rcd 7415 (2002) *("EchoStar/Hughes Second Protective Order"); News Corporation, General Motors Corporation and Hughes Electronics Corporation – Order Concerning Second Protective Order,* 18 FCC Rcd 15198 (2003) *("News Corp./Hughes Second Protective Order").*

    [2]    For example, parties to this proceeding include Qwest Communications International Inc., Cox Communications, Inc., Vonage Holdings Corp., XO Communications, Broadwing Communications, LLC, and Savvis Communications Corporation.

Thomas J. Navin
May 19, 2005
Page 2

      The Applicants seek enhanced protection for their business and marketing plans. Such planning documents and information are obviously among Applicants' most competitively sensitive information. It is critically important that such information be effectively shielded from inadvertent disclosure to competitors that would be able to react to this information in their own business and marketing strategies. The Commission previously found similar confidential information worthy of enhanced protection in the *SBC/AT&T Second Protective Order*, the *EchoStar/Hughes Second Protective Order* and the *New Corp./Hughes Second Protective Order*.[3]

      Accordingly, Applicants request enhanced protection for forward looking competitive analyses or studies that discuss their competition for specific groups or types of customers (e.g., business or wholesale customers); engineers' capacity planning documents; analyses that discuss anticipated changes in the number of customers or the volume of associated traffic; market studies or competitive analyses that may reveal strengths, weaknesses, or strategies of Applicants or other competitors; plans to construct new facilities; and information and documents that could reveal procurement strategies, bidding strategies, pricing strategies, competitive strategies, product strategies, merger integration strategies, and marketing strategies. *See* Information Request, ¶¶ 3(a), 3(d), 3(e), 4(a)-(g), 6(a)-6(c), 6(e), 8(a)(1)-(2), 8(c)-(e), 9, 10(a)-(f), 12(a)-(b), 17(b)-(e), 19(c), 23, 24(a)-(b).

      Applicants also seek enhanced protection for confidential and commercially sensitive information regarding the specific steps that the Applicants anticipate taking to achieve benefits or efficiencies from the integration of their networks and operations, the risks Applicants perceive in achieving the benefits or efficiencies, the conditions necessary for achieving the benefits or efficiencies, the time and costs required to achieve the benefits or efficiencies, and disaggregated quantifications of these benefits or efficiencies, as well as supporting documents and data. *See* Information Request, ¶¶ 20(a)(1)-(2), 20(b), 20(d), 21(a). *SBC/AT&T Second Protective Order*.[4]

      The Applicants also seek enhanced protection for granular customer data. This includes: revenues and numbers of customer by customer type and the identities and characteristics of specific companies that are customers of Applicants or with whom Applicant's have (or are negotiating) commercial arrangements. *See* Information Request, ¶¶ 1(c), 3(a)-(c), 5(a)-(d), 6(d), 8(a)(3)-(5), 14(c), 15(b)-(c), 17(b), 18(a), 18(b)(4). Granular customer data is used to gauge customer demand for services, as well as to analyze the strength and weaknesses of service offerings. This information could reveal Applicant's plans and strategies, and any competitor who obtained access to this data would be able to exploit any perceived weakness at the same time or even before the Applicants were able to react and address those issues. This is the same

---

    [3]   *See SBC/AT&T Second Protective Order* ¶¶ 3-4; *EchoStar/Hughes Second Protective Order*, 17 FCC Rcd at 7416; *News Corp./Hughes Second Protective Order*, 18 FCC Rcd at 15,198-15,199.

    [4]   *SBC/AT&T Second Protective Order* ¶ 4.

Thomas J. Navin
May 19, 2005
Page 3


category of materials that the Commission previously found worthy of enhanced protection in the *SBC/AT&T Second Protective Order*, and the *News Corp./Hughes Second Protective Order*.[5]

 Finally, Applicants seek enhanced protection for detailed inventories and maps of their Internet backbone and other network facilities. *See* Information Request, ¶¶ 6(a), 8(a)(6), 13, 15(d). These materials are deserving of enhanced protection not only because they are commercially sensitive, but because their disclosure could raise national security concerns.

 If you have any questions concerning the foregoing, please do not hesitate to contact the undersigned.

       Respectfully submitted,

MCI, Inc.            Verizon

*[signature: Curtis Groves]*      *[signature: Karen Zacharia]*

Curtis L. Groves        Karen Zacharia
MCI, Inc.           VERIZON
1133 19th Street, NW      1515 North Court House Road
Washington, DC 20036      Arlington, VA 22201-2909
Tel: (202) 736-6160       Tel: (703) 351-3193
Fax: (202) 736-6460       Fax: (703) 351-3663

---

[5] *SBC/AT&T Second Protective Order* ¶ 4; *News Corp./Hughes Second Protective Order*, 18 FCC Rcd at 15,199.