

October 4, 2005

Marlene H. Dortch, Secretary
Federal Communications Commission
The Portals
445 12th Street, SW
Washington, D.C. 20554

        Re:    SBC/AT&T Merger Application – WC Docket No. 05-65 and
                  Verizon/MCI Merger Application – WC Docket No. 05-75

Dear Ms. Dortch:

        The National Association of State Utility Consumer Advocates ("NASUCA") files this ex parte to draw the Commission's attention to the filings in these dockets which show that the two proposed mergers, singly and especially jointly, do not serve the public interest, convenience and necessity. Thus, the Commission should reject these proposed mergers. In its comments, NASUCA showed that the proposed mergers have a greater potential for harm, and fewer real benefits, than the SBC/Ameritech and Bell Atlantic/GTE mergers.[1] As noted in a recent ex parte filing, such a determination by the Commission is the norm for proposed mergers by Regional Bell Operating Companies ("RBOC").[2]

        Since passage of the 1996 Act, the Commission has not been able to find any proposed acquisition by a RBOC of another major carrier to be in the public interest, due to likely anti-competitive effects, without the adoption of numerous conditions.[3] The

---

[1] *In the Matter of AT&T Corp. and SBC Communications Inc. Application Pursuant to Section 214 of the Communications Act of 1934 and Section 63.04 of the Commission's Rules for Consent to the Transfer of Control of AT&T Corp. to SBC Communications Inc*., NASUCA Comments (April 25, 2005) at 21-30; *In the Matter of Application for Consent to Transfer of Control filed by Verizon Communications, Inc. and MCI Inc*., NASUCA Comments (May 9, 2005) at 18-27.

[2] Ex parte letter of BridgeCom International, Broadview Networks, Conversent Communications, Eshelon Telecom, NuVox Communications, TDS Metrocom, XO Communications and Xspedius Communications (September 22, 2005) at 2.

[3] Id., citing *GTE/Bell Atlantic Merger Order*, 15 FCC Rcd 14032 (2000); *SBC/Ameritech Merger Order*, 14 FCC Rcd 14712 (1999); *NYNEX/Bell Atlantic Merger Order*, 12 FCC Rcd 19985 (1997); *Cingular/AT&T Wireless Merger Order*, 19 FCC Rcd 21522 (2004).

proposed mergers currently before the Commission involve RBOC acquisition of *actual* competitors in the mass market, not merely *potential* market participants. These proposed mergers can serve the public interest only if the Commission adopts appropriate conditions.

NASUCA believes that the conditions outlined below must be attached to any approval of the proposed mergers. NASUCA recommends that the conditions remain in place for five years and survive changes in law. In general, the conditions imposed on the SBC/Ameritech merger were allowed to sunset 36 months after the merger closing date. Despite the rapid changes occurring in telecommunications, the sheer mass of these mergers requires that the conditions imposed have more endurance. The general term for these conditions should, therefore, be five years rather than three. Endurance would also come with a condition that would require the conditions to persist in the face of changes in federal law. Massive changes in federal law are anticipated; conditions that would make the mergers be in the public interest should not be allowed to evaporate.

The conditions that the Commission should adopt fall into four broad categories: 1) conditions to encourage and enable the currently badly damaged prospects for competition for residential and small business customers; 2) conditions aimed at limiting the harm to competition and consumers from the mergers; 3) conditions to ensure that residential and small business customers benefit from the mergers; and 4) conditions to realign the regulatory regime to recognize the new market conditions arising from the mergers.

1. *Conditions to promote competition*

    a. The merged companies should continue to make the UNE-P and the HFPL available to competitors at TELRIC rates.

This condition will stimulate competition within the SBC and Verizon service territories. As the telecommunications industry stands today, by April 2006 incumbent local providers will no longer have to provide unbundled local switching ("ULS") and thus the unbundled network element platform ("UNE-P") will also disappear. Unfortunately the UNE-P has been the basis for the majority of residential competition to date. Another key element for residential competition for broadband-based services is the high frequency portion of the loop ("HFPL") through which competitors can provide broadband without having to provide basic service. The availability of these UNEs at TELRIC-based prices is crucial to further progress on residential and small business competition.

    b. Further, SBC and Verizon should be required to end any restrictions that tie DSL to voice service. In other words, SBC and Verizon should be required to offer "naked" DSL service to all of their customers.

  c. The merged companies should be required to compete outside of their traditional service territories on today's terms.

Such a condition was a part of both the SBC/Ameritech and Bell Atlantic/GTE mergers. It is obvious, however, that these entry conditions were not successful in forcing SBC or Verizon to be an active enduring CLEC. Nor has the retaliatory competitive entry into SBC or Verizon territory that the Commission hoped for actually occurred. Surely, however, with the additional force of AT&T and MCI behind them, SBC and Verizon will be able to handle sustained entry into other ILECs' markets.

  d. SBC/AT&T and Verizon/MCI should be required to divest themselves of duplicative long-distance and Internet backbone capacity.

A standard anti-trust and regulatory response to anti-competitive combinations like the proposed mergers is to open duplicative facilities to competition. Thus, as a condition of merger, SBC, AT&T, Verizon and MCI should be required to divest themselves of duplicative long-distance and Internet backbone capacity.

 2. *Conditions to limit harm to competition and to consumers*

NASUCA is concerned that the merged entities' commitment to service quality and network reliability, particularly for the local network, may decline as a result of the merger. That was the case with the SBC/Ameritech merger. The Commission must adopt conditions to ensure retail service quality. NASUCA recommends that the following conditions be attached to any merger approval.

  a. The merged firms should be subject to the terms of the originally-adopted California Bill of Rights, for all of their operations and services -- wireline, wireless and broadband.

  b. Wholesale service quality conditions (such as those ordered in the SBC/Ameritech and Bell Atlantic/GTE mergers) should be reinvigorated.

  c. The merged companies should be required to commit not to participate in efforts to restrict municipalities and other governmental entities from investing in broadband networks that will be made available to consumers.

 3. *Conditions to ensure consumer benefits*

Due to the significant harm that the mergers may inflict on consumers, positive benefits must be ordered so that this harm may be mitigated.

  a. The merged companies must provide broadband capabilities ubiquitously throughout their territories within five years.

    b. The benefits of merger synergies and cost-savings should be flowed back to consumers. The merged companies should be required to quantify such synergies and cost-savings, show that the merger produced the projected amount of savings per year and demonstrate that these benefits have been flowed-back to consumers.

    c. A Lifeline program with increased benefits should be adopted throughout the merged companies' service territories.[4]

4. *Conditions to realign the regulatory regime*

The impact of these mergers on the competitive landscape will be such that reinstatement of many regulations to control market dominance must be considered. Among these are de novo reviews of deregulation/detariffing/flexible pricing on "competitive" services; reinitialization of rates at "authorized" rates of return; and imputation of earnings that benefit from joint BOC/affiliate activities (e.g., local/long distance).

5. *Enforcement*

In the SBC/Ameritech merger case the Commission determined that it would "utilize[d] every available enforcement mechanism" to ensure that the benefits of the SBC/Ameritech merger conditions were realized. The Commission will have to make that determination again in the pending merger cases.

Neither SBC nor Verizon have encouraging track records from their prior mergers. The Commission must adopt specific and effective enforcement mechanisms here. The enforcement mechanisms must be substantial enough that SBC or Verizon will not make the calculation that it is cheaper -- or more desirable -- to pay the fine than comply with the condition.

The mergers as proposed will harm competition. The combined entities will be able to raise substantial obstacles to other competitors by wielding their dominant market power in much of the nation. The merger of SBC and AT&T will combine the second largest and the third largest firms in terms of total revenues. The proposed merger of Verizon and MCI will combine the largest and the fourth largest firms in terms of total revenues. Thus, if both mergers are approved the competitive market will go from four providers to two providers.

The public interest harms of these mergers far outweigh the speculative benefits alleged by the applicants. If the Commission adopts substantial enforceable conditions such as those outlined above, the public interest harm will be sufficiently limited and the

---

[4] A similar condition was imposed in the SBC/Ameritech merger.

public interest benefits will be adequately increased so as to make approval of the mergers proper under the law.

    Please do not hesitate to contact us if there are any questions regarding this filing.

    Sincerely,

/s/ David C. Bergmann
Janine L. Migden-Ostrander
Ohio Consumers' Counsel
David C. Bergmann
Assistant Consumers' Counsel
Chair, NASUCA Telecommunications Committee
Office of the Ohio Consumers' Counsel
10 West Broad Street, Suite 1800
Columbus, OH  43215-3485
Telephone: 614-466-8574
Facsimile:  614-466-9475

NASUCA
8380 Colesville Road, Suite 101
Silver Spring, MD  20910
Telephone: 301-589-6313
Facsimile: 301-589-6380

cc:    Chairman Kevin Martin
       Commissioner Kathleen Abernathy
       Commissioner Michael Copps
       Commissioner Jonathan Adelstein
       Daniel Gonzalez
       Michelle Cary
       Russ Hanser
       Jessica Rosenworcel
       Scott Bergmann
       Sam Feder
       Thomas Navin
       Jonathan Levy
       Julie Veach
       Terri Natoli
       William Dever
       Marcus Maher