IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:05CV02102 (EGS) |
| **SBC Communications, Inc. and AT&T Corp.,** | ) | |
| Defendants. | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 1:05CV02103 (EGS) |
| **Verizon Communications, Inc. and MCI, Inc.,** | ) | |
| Defendants. | ) | |

**AT&T INC.'S OPPOSITION TO MOTION OF AMICI
FOR MODIFICATION OF MINUTE ORDER AND RESPONSE
TO THE AUGUST 10, 2006 MOTION OF THE UNITED STATES**

Having asked to participate in this proceeding, and – consistent with the requirements of such participation – having assured the Court their participation would not cause undue delay, Comptel, the National Association of State Utility Consumer Advocates and the Office of the Attorney General of the State of New York (collectively "Movants") now seek an extension of almost one month to

accommodate "vacation plans" and "first week of school" activities.[1]  Their Motion acknowledges that the Government has proposed a four-day extension to address the Protective Order's timing provisions,[2] yet they seek weeks of further delay to avoid "personal sacrifices."  *See* Motion of Amici at 4.  Given the clear Congressional intent that Tunney Act proceedings be resolved as expeditiously as possible, the public interest in restoring competition obviously overrides the personal preferences of counsel.  Thus, the amici's request to completely revamp the briefing schedule by extending it almost to the end of September should be summarily denied.

### 1.   No additional extension is warranted by the Protective Order.

The Movants claim first that additional time is necessary because of the Protective Order's notice provisions.  They correctly point out that all counsel are required to wait three business days after filing a confidentiality agreement to obtain access to the DOJ submission, and that consultants require an additional two <u>calendar</u> day notice to certain "Protected Parties."  But the Movants' suggestion that the timing provisions of the Protective Order warrant the kind of wholesale revision of the briefing schedule that they seek is a red-herring, because the brief delay occasioned by the timing provisions is fully addressed by the Government's

---

[1]   The Movants seek until September 15 to file their responses to DOJ's submission, with the DOJ filing its reply on September 25.

[2]   As discussed further below, the Movants acknowledge that executed Agreements Concerning Confidentiality for Outside Consultants could have been filed on August 7, 2006, and that consultants could have had access to DOJ's unredacted submission on August 10, 2006.  *See* Motion of Amici at 3.  Since DOJ's submission was filed on August 7, the three-day delay in access to the submission was appropriately addressed by DOJ's proposed extension of time for amici's responses from August 17 to August 21.

motion, with AT&T's consent, for a four-day extension. This short extension restores the original 10-calendar day time period granted by the Court for amici to respond and thereby fully remedies the gap created by the Protective Order.

Beyond that, all of the Protective Order issues cited by Movants are of their own doing, as they plainly could have been avoided by the normal diligence expected of counsel. The Court issued the Protective Order at about 9:00 a.m. on August 4, and the Government sent out the list of "Protected Persons" to be notified that afternoon. If amici had prepared to send out consultant notices that same day to satisfy the two day notice period, they then could have filed the confidentiality agreements on August 7 and obtained full access by counsel and consultants on August 10.[3] The three days lost are more than covered by the Government's proposed four-day extension.[4]

Comptel claims it could not start this clock because when the list of persons to be notified of consultants was sent by DOJ to Comptel's outside counsel – who is listed on the docket as its "Lead Counsel" – he was out of the country. But, like most "my dog ate my homework" stories, this one is as inexcusable as it is incredible. First, counsel for Comptel were aware of the timing provisions in the Protective Order from the time the Government filed it on July 27, over a week

---

[3]    The Movants acknowledge that "any party could have filed the executed Agreements of Confidentiality for Outside Consultants [on] August 7, 2006." Motion of Amici at 3.

[4]    Because the third day is a Sunday, the Movants would receive the benefit of an extra day, to Monday, August 21.

before the Court entered it.  It had more than adequate time to prepare and to pay attention.

Moreover, if its "Lead Counsel" is away, it is incumbent upon Comptel to have someone – including one of Comptel's other lawyers involved in this matter – check his email, check the docket sheet (which reflected the Government's "Notice of Filing"), call the Government, or otherwise take steps to inform itself of events that Comptel was fully aware would trigger the notice period.  Having failed to take any of these reasonable steps, Comptel has only itself to blame for any further delay beyond August 10 in getting the confidential information to its consultants.  Any such additional delay is plainly not a legitimate justification for an extension.

### 2. "Vacation plans" and "first week of school" should be disregarded.

Obviously recognizing that the Protective Order issues do not come close to supporting further delay, Movants resort to pleas of personal inconvenience.  They assert "vacation plans of counsel, consultants and their families" in August, as well as "the first week of school" in September, as proffered justifications for a delay of almost one month (August 17th to September 15th).[5]  This request not only violates

---

[5]  The amici's cavalier attitude toward delaying these proceedings unnecessarily is demonstrated not only by their unjustified request for a month-long extension of time, but also by their own admission that accommodation of their vacation plans as well as their back-to-school activities would take them only to September 8.  *See* Motion of Amici at 4-5 ("However, because a filing deadline that allows Movants a fair opportunity to use their Outside Consultants to the Court's full advantage, but that requires Movants to respond prior to September 8, 2006, will require counsel, and/or consultants, for Movants to cancel travel plans, …") (emphasis added).  Yet, Movants seek an additional week to September 15.  As discussed above, AT&T opposes the motion in its entirety.

amici's pledges not to cause "undue delay" and to respond in a "timely" fashion[6], but it is an affront to this Court's explicit recognition that Congress intended for Tunney Act proceedings to be as expeditious as possible.[7]

This matter has been pending before the Court for almost ten months, and the Government's Motion for Entry of Final Judgment has been pending for five months. Amici, whether they filed early like Comptel or late like the New York Attorney General and NASCUA, must come prepared to adjust their counsel's and consultants' schedules or utilize other counsel and consultants to meet this Court's deadlines. It would be prejudicial not only to the parties,[8] but to the public interest the Tunney Act protects, to allow counsel for amici to further delay this proceeding.[9]

---

[6]   Motion and Memorandum in Support of Comptel's Motion for Leave to Intervene, or in the Alternative to Participate as Amicus Curiae (Feb. 8, 2006), at 12 ("COMPTEL's intervention will not result in undue delay") (emphasis added); Transcript of July 25 Hearing at 16:23-17:3 (Jonathan Lee, speaking on behalf of all amici, asserts that "we are committed to reviewing the government's submission in a timely manner").

[7]   Transcript of July 25 Hearing at 15:6-7 ("THE COURT:. . . Congress did intend that these proceedings not be unduly lengthy"). The legislative history of the original Tunney Act makes clear Congress' intent that these proceedings involve the "least time-consuming means possible." S. Rep. 298, 93d Cong., 1st Sess. 6-7 (1973); H.R. Rep. No. 1463, 93d Cong., 2d Sess. 9 (1974); U.S. Code Cong & Admin News 1974, p. 6536.

[8]   AT&T continues to note that the divestiture agreements that it has negotiated under the proposed consent decree contain provisions that allow the purchasers to walk away from the agreement after July 31. The fact that this date has now passed does not render the "walk-away" provisions irrelevant to the issue of continued delay. Indeed, each day that passes without resolution of this proceeding increases the risk that one of the purchasers may choose to exercise its rights under the provision. Such a result would not be good for the public, in whose interest and for whose benefit the divestitures were intended.

[9]   In other contexts courts have also rejected delays caused by the convenience of counsel. *See, e.g.*, *Gibbons v. United States*, 317 F.3d 852, 854-55 (8th Cir. 2003) (affirming rejection of delay caused by counsel's vacation and illness); *Spears v. City of Indianapolis*, 74 F.3d 153, 157 (7th Cir. 1996) ("We live in a world of deadlines. If we're late for the start

(continued…)

**Conclusion**

For the foregoing reasons, the amici's motion for extension of time should be denied so that briefing will be completed in August and any further proceedings will be held in early September.

Respectfully submitted,

/s/
Wilma A. Lewis (D.C. Bar No. 358637)
Wm. Randolph Smith (D.C. Bar No. 356402)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004
Telephone:  (202) 624-2500
Facsimile:  (202) 628-5116

Counsel for Defendant AT&T Inc.

Dated:  August 14, 2006

---

(continued)

of the game or the movie, or late for the departure of the plane or the train, things go forward without us.  The practice of law is no exception.  A good judge sets deadlines, and the judge has a right to assume that deadlines will be honored.  The flow of cases through a busy district court is aided, not hindered, by adherence to deadlines.").