**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>   Plaintiff,  )<br>   v.  )   Civil Action No. 05CV2102 (EGS)<br>  )<br> SBC Communications, Inc. and  )<br> AT&T Corp.,  )<br>  )<br>   Defendants.  )<br> _____ )<br>  )<br> UNITED STATES OF AMERICA,  )<br>  )   Civil Action No. 05CV2103 (EGS)<br>   v.  )<br>  )<br> Verizon Communications, Inc. and  )<br> MCI, Inc.,  )<br>  )<br>   Defendants.  )<br> _____ ) | |

**MEMORANDUM OF ELIOT SPITZER,
ATTORNEY GENERAL OF THE STATE OF NEW YORK,
IN RESPONSE TO THE AUGUST 7, 2006 SUBMISSION OF THE UNITED STATES**

Eliot Spitzer, Attorney General of the State of New York, as *amicus curiae,* submits this memorandum, as well as the accompanying Declaration of Nicholas S. Economides, Ph.D., dated September 5, 2006 (the "Economides Decl."), to aid the Court in determining whether the proposed consent decrees in these two cases are in the public interest. The State of New York urges the Court to hold that the United States Department of Justice ("DOJ") has failed to meet its burden of proof under the Tunney Act, 15 U.S.C. § 16(a) - (I). The DOJ has not shown, and cannot show, that the proposed final judgments ("PFJs") are in the public interest.

**PRELIMINARY STATEMENT**

Approval of the PFJs would turn the clock back twenty years on competition in the telecommunications industry. The DOJ has crafted particularly narrow complaints with particularly narrow remedies in order to fit the square pegs of the consent decrees through the round hole of the Tunney Act. As more fully set forth in Professor Nicholas Economides' accompanying declaration, the remedies proposed by DOJ are wholly inadequate. Briefly:

- DOJ's single building market theory ignores the network features of the Local Private Lines telecommunications service, and is inconsistent with the way that Verizon and MCI view their own businesses.

- Economic models used to predict impact where the number of competitors declines do not limit price increase scenarios to reductions in competitors from 2 to 1, as DOJ does here. Thus, DOJ's conclusion to confine its remedy to only some 2 to 1 buildings is not grounded in sound economic analysis. Moreover, DOJ has presented no evidentiary basis for its decision to exclude most 2 to 1 buildings.

- By removing AT&T and MCI from the retail and wholesale Local Private Lines markets, the mergers are likely to substantially reduce competition. The DOJ offers no remedy at all to restore the lost competition in the wholesale market.

- The PFJs call for divestiture of assets that have limited value to remaining competitors, and that cannot replace the competition lost by AT&T and MCI exiting the market. Moreover, entry barriers, such as those arising from the extended contracts of AT&T and MCI's existing customers, further constrain even the limited remedial effect of the PFJs.

In addition to the analysis presented by Professor Economides, the PFJs suffer from irremediable legal flaws. First, DOJ urges the Court to apply the wrong standard of review. As

2

set forth in Point I below, DOJ clings to a standard of review that Congress specifically jettisoned in its 2004 Tunney Act amendments.

Second, the complaints and the remedies in the PFJs are based on a conclusory definition of the geographic market that is insufficient as a matter of law. The Supreme Court has held that the geographic market in a merger case can be "as small as a single metropolitan area." *Brown Shoe Co. v. United States*, 370 U.S. 294, 337 (1962). DOJ, however, has shrunk the geographic market in these cases to an area "no more narrow than each individual building." Verizon-MCI Complaint ¶ 24; SBC-AT&T Complaint ¶ 24. This geographic mini-market does not "correspond to the commercial realities of the industry," and thus is not "economically significant." *Brown Shoe Co.,* 370 U.S. at 336-37 (quoting *American Crystal Sugar Co. v. Cuban-American Sugar Co.,* 152 F. Supp. 387, 398 (S.D.N.Y. 1957)). Accordingly, the proposed geographic market is too small as a matter of law. Moreover, DOJ's geographic market definition is entirely conclusory, lacking any articulated factual basis. This defect, too, warrants rejecting the PFJs. *See* Point II.

Third, the remedies in the PFJs do not adequately address the violations alleged in the complaint with respect to: (1) the geographic market (to the extent that, for argument's sake, a plausible market is alleged); (2) the Local Private Lines *wholesale* market, as opposed to the *retail* market; and (3) buildings in which competition is reduced from 3 to 2 or 4 to 3. *See* Point III.

Finally, the PFJs should be rejected because the parties have failed to meet their burden to provide sufficient facts and analysis for the Court to exercise its statutory responsibility under the Tunney Act. *See* Point IV. More specifically, DOJ has given the Court very few facts. Most glaringly, DOJ has provided virtually no facts regarding the Verizon/MCI merger. DOJ has

3

failed to present sufficient facts or econometric analysis to sustain its unorthodox, conclusory geographic market definition.  It has even failed to provide the Court with a traditional Herfindahl-Hirschman Index ("HHI") market concentration analysis.  DOJ's silence speaks loudly nonetheless.

## ARGUMENT

### I

### CONGRESS REJECTED THE STANDARD OF REVIEW URGED BY THE DOJ

Under the Tunney Act, the Court must determine that the proposed consent decree is "in the public interest."  15 U.S.C. § 16(e).  The legislative history of the Act makes clear that Congress intended the courts to play an independent role in assessing any antitrust consent decrees presented to it.  Thus, Senator Tunney stated, in introducing the Act in 1973, "[t]he Court is not to operate as a rubber stamp, placing an imprimatur upon whatever is placed before it by the parties.  Rather, it has an independent duty to assure itself that entry of the decree will serve the interests of the public generally."  The Antitrust Procedures and Penalties Act: Hearings on S. 782 and S.1088 before the Subcomm. on Antitrust and Monopoly of the Senate Comm. on the Judiciary, 93rd Cong., at 452 (1973).

DOJ, however, fundamentally misconstrues the scope of the Court's review.  In its competitive impact statement ("CIS"), DOJ asserts that "the court should approve the PFJs so long as the settlements are 'within the reaches of the public interest.'"  CIS at 17 (quoting *United States v. Bechtel Corp.*, 648 F.2d 666 (9th Cir. 1981)).[1]  But this is not the correct standard.

---

[1] DOJ's August 7, 2006 Memorandum has only a cursory discussion of the standard of review.  Significantly, it does not correct the CIS's mistaken assertions.  *See* DOJ Mem. at 3-4 and n.7.

4

Rather, it is an approach that had developed in the case law over the years of applying the Tunney Act. Recently, Congress expressly rejected this approach in amending the Tunney Act in 2004. The PFJs cannot withstand scrutiny under the appropriate statutory standard of review.[2]

The 2004 amendments provide that, in making its public interest determination, the Court "shall" consider various enumerated factors. 15 U.S.C. § 16(e). Prior to the amendments, the statute made such consideration discretionary by using the word "may." The 2004 amendments also revised and added to the enumerated factors now required to be considered. As the legislative history of the 2004 amendments reflects, the changes "reject[] the 'notion that courts must give deference to the DOJ when determining if a consent decree is in the public interest.'" 149 Cong. Rec. S3617 (Oct. 29, 2003) (statement of Senator Kohl) (*quoting* Flynn and Bush, The Misuse and Abuse of the Tunney Act: The Adverse Consequences of the "Microsoft Fallacies," 34 Loyola U. Chicago L.J. 749, 758 (2003)).

Senator Kohl explained that "[r]equiring, rather than permitting, the court to examine these factors will strengthen the review that courts must undertake of consent decrees and will ensure that the court examines each of the factors listed therein. Requiring an examination of these factors is intended to preclude a court from engaging in 'rubber stamping' of antitrust consent decrees, but instead to seriously and deliberately consider these factors in the course of determining whether the proposed decree is in the public interest." 149 Cong. Rec. S3618 (Oct. 29, 2003) (statement of Senator Kohl). Senator Kohl emphasized that the rejected "within-the-reaches-of-the-public-interest" standard, urged here by DOJ, was "contrary to the intent of the

---

[2] While courts construing the Tunney Act had routinely indicated that they were not going to be a "rubber stamp," they had generally gone on to apply a loose standard of review. See remarks of Sen. Kohl on 2004 Tunney Act Amendments, 149 Cong. Rec. S3615 *et seq.*

Tunney Act as found in the legislative history." *Id.* at S3617. The 2004 amendments, he added, will "correct the mistaken precedents." *Id.*

Senators Hatch and DeWine, along with Congressmen Scott and Conyers, similarly noted that the Tunney Act and 2004 amendments were designed specifically to end the problem of courts simply "rubber-stamping" antitrust settlements. 149 Cong. Rec. S3613, S3619, H3659-60 (Oct. 29, 2003) (statements of Senators Hatch, DeWine, and Congressmen Scott and Conyers). In sum, the 2004 amendments were "intended to assure that courts undertake meaningful review of antitrust consent decrees to assure that they are in the public interest and [are] analytically sound." *Id.,* at S3618 (statement of Senator Kohl).

Accordingly, in conducting its Tunney Act review to determine whether the PFJs are in the public interest, this Court need not defer to the DOJ. Indeed, DOJ's espousal of a discredited standard of review severely undercuts the Department's advocacy in favor of the PFJs.

## II.

### DOJ's PROPOSED GEOGRAPHIC MARKET DEFINITION IS FLAWED

The Supreme Court has held that the relevant geographic market in an antitrust case must (1) "'correspond to the commercial realities' of the industry" and (2) "be economically significant." *Brown Shoe Co.*, 370 U.S. at 336-37 (quoting *American Crystal Sugar Co. v. Cuban-American Sugar Co.,* 152 F. Supp. at 398). *See also Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.,* 300 F.3d 620, 626 & n.4 (5th Cir. 2002) (noting applicability of *Brown Shoe* to Section 7 cases).

A pleading that fails adequately to allege the relevant geographic market is insufficient as a matter of law. Dismissal is thus appropriate where "the definition of the proposed market [is]

6

too narrow." *Apani*, 300 F.3d at 628.  Moreover, the allegations of market definition may not be conclusory, but should instead be supported by facts and econometric analysis.  *TV Communications Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1024 (10th Cir. 1992).  For example, "[w]here the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient . . . ."  *Id.* (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 436 (3d Cir. 1997)).  Certainly, DOJ may properly be expected to offer traditional factual and analytic support for a market that it pleads.

DOJ has not met its burden of adequately defining and factually supporting the relevant geographic market.  Instead, DOJ has asserted a geographic market that is much too narrow – contrary to essential real-world telecommunications industry.

According to DOJ, "[t]he relevant geographic markets for both Local Private Lines, as well as voice and data telecommunications services that rely on Local Private Lines, are no broader than each metropolitan area and no more narrow than each individual building."  Verizon-MCI Complaint ¶ 24; SBC-AT&T Complaint ¶ 24.  Competitive Impact Statement ("CIS") at 6.  This geographic definition is profoundly flawed for several reasons.

First, the proposed geographic market definition is entirely conclusory.  There are no supporting facts or econometric analyses for the Court to review.  *See TV Communications,* 964 F.2d at 1024.  DOJ has not, in proposing its geographic market, provided any economic analysis such as interchangeability and cross-elasticity of demand.  Nor has it discussed any of the factors detailed in its own Horizontal Merger Guidelines, or discussed any alternative analysis.  *See* DOJ Horizontal Merger Guidelines §1.2; *Apani*, 300 F.3d at 628.  Indeed, the market definition

7

is simply assumed.  *See* Majure Decl. (no discussion of geographic market at all); *see also* Economides Decl. ¶¶ 7, 25.

Second, the DOJ's proposed geographic market is too narrow.  Economides Decl. ¶¶ 26 - 27.  The PFJs' remedy is based on the lower limit of the proposed market definition, *i.e.,* "each individual building."  *See* Verizon-MCI Complaint ¶ 24; SBC-AT&T Complaint ¶ 24.  But the real-world economics of the telecommunications industry categorically disqualify a one-building market definition.  Private lines network customers require providers to be able to link multiple buildings at different locations, both within and beyond a single metropolitan area.  Economides Decl., ¶ 21.  As a matter of law, therefore, the proposed market is untenable.  *See, e.g., Brown Shoe,* 370 U.S. at 337; *Apani,* 300 F.3d at 626 (antitrust claim is subject to dismissal if "the definition of the proposed market [is] too narrow").

While DOJ's "upper limit" alternative definition – "each metropolitan area" – is at least *theoretically* plausible, there is no factual support for such a definition.[3]  Moreover, even if, for argument's sake, one were to presume this unsupported definition, the Court still should reject the PFJs because the proposed remedy fails to address the violations alleged under this possible broader market definition.  The decrees afford no metropolitan area-wide relief, such as divestiture on a metropolitan area basis.  To the contrary, the limited proposed remedies are directed to a trivial number of individual buildings scattered across large geographic areas.  A mere handful of buildings in all of New York City are identified.  Economides Decl. ¶ 79.

---

[3]   The NY Attorney General does not concede the propriety of this nominal "upper limit" definition.  A proper factual inquiry and economic analysis could well reveal that the appropriate relevant geographic market comprises regions much larger than "each metropolitan area."  *See* Economides Decl. ¶¶ 24, 77.

The Court should not ignore the commercial reality of the networked telecommunications services that Local Private Lines customers need. Dominant incumbents, such as SBC and Verizon, possess "loops" to virtually every commercial building where customers conduct business. Economides Decl. ¶ 46. Private lines businesses need telecommunications services to link multiple buildings, and they solicit competing suppliers to satisfy *that* need. Suppliers competing for private lines business must themselves have a substantial number of loops serving commercial buildings in each metropolitan area. Economides Decl. ¶¶ 38, 42. Thus, the PFJs remedy, which divests only access to a tiny number of individual buildings scattered about the country, cannot realistically enable the remaining post-merger competitors to come anywhere close to replacing the pre-merger competition that AT&T and MCI offered. *Id.* Because the PFJs remedy does not "correspond to the commercial realities of the industry," they are not "economically significant" and must be rejected. *Brown Shoe,* 370 U.S. at 336-37.

### III.

### THE PROPOSED REMEDIES DO NOT ADEQUATELY ADDRESS THE VIOLATIONS IN THE COMPLAINTS

The proposed remedies do not adequately address the violations in the complaint. For example, as discussed above, the remedy fails to address the smallest plausible geographic market definition, *i.e.,* "each metropolitan area." Economides Decl. ¶¶ 24. Similarly, although the complaints allege violations across a product market that includes the Local Private Lines *wholesale* market, the remedy addresses only the *retail* market. Economides Decl. ¶ 63; *see* Verizon-MCI Complaint ¶ 23; SBC-AT&T Complaint ¶ 23.

The PFJs are also deficient because they apply only to buildings where competing suppliers will be reduced from 2 to 1, and then address only *some* of these buildings. But as the

complaints' allegations make clear, there are also many buildings where suppliers are being reduced from 3 to 2 or 4 to 3. *See* Verizon-MCI Complaint ¶¶ 16-18; SBC-AT&T Complaint ¶¶ 16-18. The remedy fails to address diminished competition that will result from these reductions. Economides Decl. ¶¶ 61 - 62.

## IV.

### DOJ HAS FAILED TO DISCHARGE ITS BURDEN UNDER THE TUNNEY ACT

The Tunney Act requires the Court to determine that the proposed consent decree is in the public interest. At the July 25 conference, the Court correctly observed that the parties to the consent decrees had not yet submitted sufficient facts for the Court to conduct its inquiry under the Tunney Act. Specifically, the Court stated:

> There must be facts that support what's asserted in the proposed consent decree.
>
> [A]ll I'm asking the parties to do, in an effort to enable them to make their case with the Court, . . . is to provide me with the materials. And I've chosen that word purposefully, because, as we know, materials means the substance of which a thing is made. I couldn't be any clearer than that. . . . Give me the materials that will enable me to discharge my judicial and statutory responsibilities in a manner that Congress intended.

July 25 Transcript at 21:13-24. DOJ and the merging parties have still failed to provide a basis for approving the PFJs.

Virtually all of the materials in DOJ's submission relate to the SBC/AT&T merger. There is almost nothing about the proposed Verizon/MCI merger, and no customer statements at all. Although DOJ attributes this glaring omission "to confidentiality requests by the retail customers that provided the statements," DOJ Mem., at 3 n. 4, that explanation rings hollow. DOJ cannot credibly assert that Verizon and MCI customers will offer support for the transaction only in secret. Nor is there much other information regarding the Verizon/MCI

10

merger for the Court to review.  At the very least, this defect requires rejecting the Verizon/MCI PFJ.

The customer statements submitted in connection with the SBC/AT&T merger are themselves insufficient.  They are nothing more than conclusory statements by isolated customers.  DOJ does not even pretend that these customers are a representative sample of market participants.

By contrast, in a scientifically conducted July 2005 random sampling of 100 telecommunications managers of Fortune 1,000 companies, *two-thirds* stated they expected the mergers to produce higher rates, less product and service innovation, and worse overall response to their companies' needs.  Importantly, 85% of the survey respondents said that increased competition over the past several years had "benefitted their compan[ies]."[4]  Accordingly, the parties' self-serving customer statements should be regarded with a high degree of skepticism.

In addition, DOJ has not provided any of the traditional economic analyses used in merger reviews; nor has it offered a reason for not doing so.  DOJ's conclusory and atomized geographic market definition, discussed  above, is unexplained by any traditional antitrust tools.

Indeed, DOJ offers no explanation for its failure to provide the Court with an HHI analysis.  HHI analysis is a basic tool for any genuine antitrust inquiry.  *See* DOJ Horizontal Merger Guidelines § 1.5 (DOJ Antitrust Division "will use" HHI in its analysis). "The HHI is calculated by summing the squares of the individual market shares of all the participants." *Id.*

---

[4] Center for Survey Research & Analysis at the University of Connecticut, *Views of the Proposed AT&T/SBC and MCI/Verizon Mergers: From the Perspective of Fortune 1000 AT&T and MCI Customers*, September 2005, filed by the Alliance for Competition in Telecommunications with the FCC during its review of the mergers, *available at* http://gullfoss2. fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6518157590.

This method allows the reviewing court or agency to assess the degree of industry concentration pre- and post-merger. *Id.*

According to the DOJ Horizontal Merger Guidelines, "[w]here the post-merger HHI exceeds 1800, it will be presumed that mergers producing an increase in the HHI of more than 100 points are likely to create or enhance market power or facilitate its exercise." *Id.* § 1.51. Under such circumstances, the merging parties are normally called on to explain why the HHI presumption should not, under the particular facts of the merger, result in rejecting the proposed transaction.

Although DOJ avoids any HHI discussion, the staff of the New York Public Service Commission ("NY PSC") conducted an HHI analysis of the Verizon/MCI merger to assess its impact on the State of New York. Dept. of Public Service Staff White Paper at 26-33.[5] The results are staggering. For the "wireline voice" market for "large business, institutional and government market," which roughly corresponds to the voice component of the Local Private Lines at issue here, the NY PSC staff found pre- and post-merger HHIs in excess of 4,000, with an HHI increase of 398. *Id.,* at 28. For the "data service" component of the same access lines, the results were even worse: a post-merger HHI of 6,353, with an HHI increase of 1,689. These figures far exceed the presumptive threshold for rejecting the mergers under the DOJ's own Guidelines. The reason that DOJ ignores traditional HHI analysis is plain enough.

---

[5] Case 05-C-0237 - Joint Petition of Verizon New York, Inc. and MCI, Inc. for a Declaratory Ruling Disclaiming Jurisdiction over or in the Alternative for Approval of Agreement and Plan of Merger and Case 05-C-0242 - Joint Petition of SBC Communications, Inc., AT&T Corporation, together with its Certificated New York Subsidiaries, for Approval of Merger, *Department of Public Service Staff White Paper,* July 6, 2005, *available at* http://www3.dps.state.ny.us/pscweb/webfileroom.nsf/Web/086FC6C29DB258D2852570360078F0B1/$File/05-c-0237.pdf?OpenElement.

The conclusory geographic market definition, the failure to conduct an HHI analysis, and the unexplained dearth of factual materials concerning the Verizon/MCI merger compel the conclusion that the two merger settlements simply do not pass muster under the antitrust laws.

## CONCLUSION

For these reasons, and for those set forth in Professor Economides' accompanying declaration, the Court should find that DOJ and the merging parties have failed to meet their burden under the Tunney Act. They have not shown that the proposed mergers are in the public interest, and they cannot do so. Accordingly, this Court should reject the two proposed consent decrees.

Dated: New York, New York
       September 5, 2006

                                        Respectfully Submitted,


                                        ELIOT SPITZER
                                        Attorney General of the State of New York



                                        By:   / s /   Jay L. Himes

                                        Jay L. Himes
                                        Chief, Antitrust Bureau
Mary Ellen Burns                        120 Broadway
Special Counsel                         Suite 26C
Public Advocacy Division                New York, NY 10271
                                        212-416-8282
Jeremy R. Kasha
Margaret A. Ross
Assistant Attorneys General, Antitrust Bureau

Keith H. Gordon
Assistant Attorney General, Consumer Frauds and Protection Bureau