# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>SBC Communications, Inc. and )<br>AT&T Corp., )<br>)<br>   Defendants. )<br>_____) | Civil Action No. 1:05CV02102 (EGS) |
| UNITED STATES OF AMERICA, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>Verizon Communications, Inc. and )<br>MCI, Inc., )<br>)<br>   Defendants. )<br>_____) | Civil Action No. 1:05CV02103 (EGS) |

## REPLY OF AMICUS
## THE NATIONAL ASSOCIATION OF STATE UTILITY CONSUMER ADVOCATES
## REGARDING THE PUBLIC INTEREST

The National Association of State Utility Consumer Advocates ("NASUCA")[1] hereby files its Reply to the Submission filed by the United States ("Department of Justice" or "Department") in Response to the Court's Minute Order of July 25, 2006. In response to that

---

[1] As noted in NASUCA's "Motion to Intervene For the Limited Purpose of Providing Consumer Views on the Public Interest" ("Motion to Intervene") filed on July 20, 2005, NASUCA is a voluntary association of 44 advocate offices in 41 states and the District of Columbia, incorporated in Florida as a non-profit corporation. NASUCA's members are designated by laws of their respective jurisdictions to represent the interests of utility consumers before state and federal regulators and in the courts. See, e.g., Ohio Rev. Code Chapter 4911; 71 Pa. Cons. Stat. Ann. § 309-4(a); Md. Pub. Util. Code Ann. § 2-205(b); Minn. Stat. § 8.33; D.C. Code Ann. § 34-804(d). Members operate independently from state utility commissions as advocates primarily for residential ratepayers. Some NASUCA member offices are separately established advocate agencies while others are divisions of larger state agencies (e.g., the state Attorney General's office). NASUCA's associate and affiliate members also serve utility consumers but are not created by state law or do not have statewide authority. The Court granted NASUCA leave to participate as amicus in a Minute Order issued July 25, 2006.

filing, NASUCA submits that the record shows that absent far more aggressive remedial measures than those to which the Department has agreed in its settlements with AT&T and Verizon, the two mergers will "substantially lessen competition" across a broad spectrum of relevant telecommunications markets nationwide. Accordingly, the *Proposed Final Judgments* ("PFJs") are decidedly not in the public interest, and a consent order entering those judgments should not be signed by the Court.

NASUCA appreciates the additional time for review the Court granted in its Minute Order of August 15, 2006, which recognizes the importance of this ground-breaking case. This Court is reviewing here transactions that if approved would respectively create the nation's largest and one of the largest providers of telecommunications services.[2] At stake are harms in the relevant markets that here produce a level of market concentration and vertical integration not seen since prior to the 1984 break-up of the "old" AT&T. The additional time afforded by the Court has allowed NASUCA and its outside consultant, Dr. Lee Selwyn, to review the Department's Supplemental Submission and to provide a detailed and careful economic analysis. That analysis is submitted to assist the Court in making its independent determination of whether the PFJs are in the public interest, as required by the Tunney Act,[3] including the 2004 Amendments which here are being applied for the first time.

Central to that review is consideration of whether the proposed remedy restores competition or the competitive conditions that the mergers would remove.[4] That entails a fact-intensive application of sound economic theory appropriate to the nature of telecommunications and the facts in this case.

---

[2] *Complaints* at paras. 1

[3] 15 U.S.C. § 16(e).

[4] United States Department of Justice, Antitrust Division, *Policy Guide to Merger Remedies*, October 2004 at 4.

Dr. Selwyn's credentials and experience make his analysis particularly helpful in that regard. As described in the Introduction and Attachment 1 of his Declaration, Dr. Selwyn has extensive academic and practical experience in telecommunications and regulatory policy, including mergers. Of equal or perhaps greater significance is the fact that because of this expertise his analysis has been variously solicited by regulators, organizations that represent large business customers, those that represent residential consumers, carriers that compete with one or more of the merging partners here, and even one of the merging partners.

This pleading is brief, serving principally as an introduction to and submission of Dr. Selwyn's economic analysis, contained in his Declaration and its Attachments (and as Appendix, a Glossary of acronyms as well as definitions). Dr. Selwyn, having reviewed the materials filed by the United States Department of Justice ("Department"), in the above-captioned proceedings, including the Complaints and the PFJs, offers his expert opinion as follows:

1) The PFJs are inadequate to protect the public against even the harms alleged by the Department's Complaints.

2) The PFJs are inadequate to protect the public against additional harms of the mergers, even in the limited market for special access/private line service on which the PFJs are focused. Those harms reach to the residential and small business classes that NASUCA's members represent.[5]

3) The PFJs seriously underestimate the harms of the mergers in relevant markets other than the special access/private line market, and thus fail to protect the public against such harms.

---

[5] Some NASUCA members represent the interests of all utility consumers, residential and business alike.

Dr. Selwyn's Executive Summary crystallizes these points, which are supported in detail in the body of his Declaration.[6]

The remainder of this submission addresses the law at issue here and then concludes with specific references to Dr. Selwyn's Declaration.[7] The Declaration makes clear that entry of the PFJs will harm the public interest, particularly by lessening competition in multiple relevant markets. The PFJs fail to include remedies that adequately and effectively address those harms. The PFJs include *no* remedy for one of the two relevant product markets identified in the allegations; namely, voice and data telecommunications services that *rely* on Local Private Lines. Accordingly, the Court should not sign the consent decree that would enter the PFJs.

**I.    THE LAW; STANDARD OF REVIEW.**

The Tunney Act, as amended in 2004, requires the Court to

(1) Before entering any consent judgment proposed by the United States under this section, the court **shall** determine that the entry of such judgment is in the public interest. For the purpose of such determination, the court **shall** consider--
    (A) **the competitive impact of such judgment**, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, **and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest**; and
    (B) the impact of entry of such judgment **upon competition in the relevant market or markets**, **upon the public generally** and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.[8]

---

[6] One of the attachments to the declaration is a *White Paper* prepared by Dr. Selwyn's firm for NASUCA that was previously submitted to the Court with NASUCA's motion to intervene in these proceedings.

[7] The declaration points out fundamental errors in the declaration of W. Robert Majure submitted by the Department. See, for example, Selwyn Declaration, ¶¶ 17-23, 25-27, 33-37, 42-52.

[8] *Id*. (emphasis added).

The Department's submission asserts in a footnote that the "Court's role under the Tunney Act is limited to reviewing the remedy in relationship that the United States has alleged in its complaint," citing a 1995 Microsoft antitrust case.[9]  This claim ignores the fact that Congress amended this portion of the Tunney Act, in response to *Microsoft* and its progeny. NASUCA submits that the amended Tunney Act's **requirement** that the Court review "the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally"[10] directs the Court to look beyond the four corners of the Complaint.  In addition, the requirement that the Court review "any other competitive considerations bearing upon the adequacy of such judgment that the Court deems necessary to a determination of whether the consent judgment is in the public interest" requires the Court to go beyond the "alleged violations" in the Complaints.[11]   Further, as discussed below, even in the limited market described in the Complaints (for "Local Private Lines" and "voice and data telecommunications services that rely on Local Private Lines"[12]) the PFJs do not adequately or effectively remedy the harms that would result from the mergers; the PFJs fall woefully short of meeting the public interest standard.

---

[9] Department Submission (August 9, 2006) at 4, n. 7, citing *United States v. Microsoft Corp.*, 56 F.3d 1448, 1459 (D.C. Cir. 1995).

[10] 15 U.S.C. § 16(e)(1)(B).

[11] See Department Submission at 4.

[12] See Complaints, ¶ 33.

II. **THE PUBLIC INTEREST HERE LIES IN RESTRAINING THE HARMS OF THESE MERGERS; INCLUSION OF REMEDIES THAT REPLACE PRE-MERGER COMPETION OR COMPETITIVE CONDITIONS.**

The Department asserts that "its analysis was informed by a lengthy investigation during which Antitrust Division attorneys and economists immersed themselves in the facts of the industry -- reviewing millions of pages of documents, conducting hundreds of interviews, and evaluating large volumes of electronic data."[13] Nonetheless, the PFJs do not eliminate the harms from the merger transactions.

As shown by Dr. Selwyn's Declaration and its supporting materials, even within the constricted market for special access/local private line service identified in the Complaints,[14] the remedies within the PFJs do not come close to addressing the anticompetitive impacts of these mergers. The Department, in proposing the PFJs, narrows the special access/private line market almost out of existence.[15] The analysis submitted to support the PFJs unreasonably ignores or lacks comprehension of facts -- significant both in number and nature -- that are highly relevant to the telecommunications market and these mergers. For example, the analysis totally ignores the existence of network externalities even in the special access/private line market.[16] The Department's witness also unreasonably overestimates the level of competition for these services and grossly exaggerates the competitive importance of the "divestiture assets" – a limited portion of the spare, non-revenue-producing fiber strands in the least competitively desirable "2-to-1 buildings" where, by the Department's own admission, CLEC entry is least likely to occur.[17]

---

[13] Department Submission at 2-3.

[14] These services are explained in Dr. Selwyn's Declaration at ¶¶ 4-8.

[15] Id., ¶¶ 9-15.

[16] Id., ¶¶ 16-22.

[17] Id., ¶¶ 24-26.

The free market has in fact *already* weighed in as evidenced by what Dr. Selwyn describes as the "below-bargain-basement prices" that AT&T will receive from sale of these assets – confirmation that this "remedy" can not be characterized as having competitive value. Based on these misconceptions, the remedies in the PFJs are inadequate.[18]

But the remedies are even more inadequate -- and not in the public interest -- when it is considered that AT&T and MCI were important as sources for wholesale competition for special access/private lines -- on top of the retail competition involving the few large enterprises that buy local private lines at retail for their own use:

- Competitive local exchange carriers ("CLECs") provide service to their residential and small business customers using special access;
- Wireless carriers use special access to interconnect their cell sites;
- Internet service providers use special access to provide connectivity to residential and commercial customers for high-speed Internet access; and
- Interexchange (long distance) carriers ("IXCs") not affiliated with the BOCs use special access to connect with their customers.[19]

The special access/private line market is one part of the larger telecommunications market in which harms will result from the merger transactions. The *Complaints* take an unreasonably narrow view of the anticompetitive impacts of these mergers, which in fact have broad negative impacts for residential, small business and enterprise customers.[20] In the context of the SBC/AT&T merger, at par. 61 of his Declaration, Dr. Selwyn discusses the significance of

---

[18] Id., ¶¶ 23, 27-31, 34-40, 41-53. Likewise inadequate to remediate the competitive harms were the FCC's merger conditions. Id., ¶¶ 61-65.

[19] Id., ¶ 33.

[20] Id., ¶¶ 54-60..

7

the SBC response to item 4 of the FCC Staff's April 18, 2005 Initial Information and Document Request which is subject to the Protective Order issued by the FCC in that case. This critical document is available to this Court but not to NASUCA or Dr. Selwyn.[21] NASUCA urges the Court to review that confidential response for its assumed relevance in demonstrating additional anticompetitive harms resulting from the mergers.

### III.  CONCLUSION

For the reasons set forth here and in Dr. Selwyn's Declaration, NASUCA submits that the Court should not sign a consent decree entering the PFJs because they do not eliminate or adequately protect against the wide range of harms to the public that result from these mergers. The PFJs are not in the public interest.

Indeed, the Tunney Act as amended gives the Court the power to find the Complaint itself insufficient to ensure that the public interest is met. The Department's "prosecutorial authority" cannot, in this context, override the Court's independent and serious duty to protect the public interest.

---

[21] The non-confidential response is annexed to Dr. Selwyn's Declaration as Attachment 17.

Respectfully submitted,

　　/s/ Kathleen F. O'Reilly___

Kathleen F. O'Reilly
Attorney at Law
414 "A" Street SE
Washington, DC 20003
(W) 202-543-5068
(C) 202-246-1982
kforeilly@igc.org
D.C. Bar # 056390


David C. Bergmann
Chair, NASUCA Telecommunications Committee
Assistant Consumers' Counsel
Office of the Ohio Consumers' Counsel
10 West Broad Street, Suite 1800
Columbus, Ohio 43215-3485
(614) 466-8574 Telephone
(614)466-9475 Facsimile
bergmann@occ.state.oh.us
(Admission pro haec vice)


Counsel for Amicus NASUCA


NASUCA
8380 Colesville Road, Suite 101
Silver Spring, MD 20910
Phone (301) 589-6313
Fax (301) 589-6380

September 5, 2006