**Attachment 3**

**SBC Aug 18, 2004 *ex parte* submission
in FCC WC Docket No. 01-338
containing maps of CLEC fiber routes
in principal MSAs within SBC region**



*REDACTED – FOR PUBLIC INSPECTION*

differentiate between "special access" and "private line" services and/or revenues of

competing providers.  The most recent third-party report of competitor activity in this

general area of services is a Yankee Group survey on special access services conducted in

November 2004.  This study is attached at Exhibit 5(b)(5).  SBC cannot confirm the

reliability of the estimates of other suppliers' revenue or shares.  Indeed, the Yankee

Group data for AT&T appear to considerably overstate its position in the wholesale

business as reflected in actual data filed in this proceeding by AT&T.  The data in this

report also are inconsistent with SBC's data in the spreadsheet referred to as ADVAN

that SBC has used since Winter 2004 to track the outcome of over 200 Price Flex and

Individual Case Basis ("ICB") special access competitive opportunities.  This spreadsheet

is provided herein at Exhibit 5(b)(6), and AT&T only appears twice as a competitor of

SBC.  The best source for SBC and AT&T special access and other revenue and circuit

data will be their own data submissions.

**6.    According to page 105 n.347 of the Public Interest Statement, AT&T
owns only limited local facilities within SBC's region, which AT&T
"uses primarily in connection with its own provision of retail business
services."  In addition, the Public Interest Statement states that
competitors have deployed "comparable" facilities.**

**a.    Separately for each MSA within SBC's franchised territory in
which AT&T owns facilities used to provide telephone
exchange or exchange access service, provide in the form of
lists and network maps of sufficiently precise detail a
description of AT&T's facilities, including the capacity of lit
and number of strands of unlit fiber and the geographic area
that practically can be reached by the network, via either
(1) direct fiber connection or (2) special access loops or EELs.**
Request directed to AT&T only.

**b.    Describe the retail and wholesale services that AT&T provides
using the facilities identified in response to Specification 6.a.**
Request directed to AT&T only.

c.    **Separately for each MSA identified in response to Specification 6.a and separately for each service identified in response to Specification 6.b, identify the types of customers to which AT&T offers any of the services described in response to Specification 6.b separately for each class of business and wholesale customers as defined in response to Specifications 1.a and 1.b.**
Request directed to AT&T only.

d.    **With respect to AT&T, for each MSA identified in response to Specification 6.a, and with respect to SBC, for each MSA within SBC's franchise area where AT&T is collocated, identify and describe the facilities deployed by carriers that compete with SBC and/or AT&T. Describe the retail and wholesale services that each competing carrier provides using those facilities, and identify the types of customers to which each service is provided separately for each class of business and wholesale customers as defined in response to Specifications 1.a and 1.b.**

**RESPONSE:**

Attached at Exhibits 6(d)(1)-(d)(2) are maps for a cross section of MSAs which show competitive fiber offerings as compared to those of AT&T. SBC does not maintain such maps in the ordinary course of business. In an effort to be responsive, however, SBC has undertaken to have a third-party research firm develop responsive maps based on available data. Exhibit 6(d)(1) contains maps prepared by GeoTel, a telecommunications research and geographic systems mapping firm, which were submitted by SBC to the Commission in August 2004. These maps depict competitive fiber networks in 22 MSAs in SBC's operating territory which are responsible for 70% of SBC's special access revenue. During the course of updating those maps for this proceeding, we discovered that GeoTel's data regarding AT&T fiber was incomplete or non-existent in several MSAs. Since AT&T was preparing data for submission that is

accurate, GeoTel deleted the AT&T information from its updated maps, and they are presented in Exhibit 6(d)(2) alongside the current AT&T maps.

Information indicating the presence of "lit" buildings was provided by GeoResults, a database marketing and consulting firm.  Data regarding CLEC fiber was obtained from GeoTel, which uses several sources to compile and verify fiber deployment data.  First, GeoTel acquires information from fiber owners themselves.  Some fiber owners provide the information to GeoTel on their own so that GeoTel can help them locate buyers; others provide the information at GeoTel's request.  Second, GeoTel traces fiber routes in large metropolitan areas by identifying fiber access manholes and using Global Positioning Systems to map the location of fiber facilities.  Third, GeoTel searches public records, such as construction permits and information from companies that lay trenches for fiber to identify where fiber has been deployed.  GeoTel uses each of these multiple sources not only to gather data, but also to serve as a cross-check on the other sources.  GeoTel repeats the foregoing methodology approximately every six months to ensure that its information is accurate and up-to-date.

These maps provide a conservative representation of facilities deployed by carriers other than AT&T within SBC's region.  No third party can be expected to identify all competitively deployed fiber.  Moreover, high capacity transport and loop services and facilities provided by alternative technologies, such as fixed wireless and cable, are not depicted.

Additional information regarding competitive facilities and services offered is provided at Exhibit 6(d)(3).

*Christopher M. Heimann*
General Attorney

SBC Telecommunications, Inc.
1401 Eye Street, NW,
 Suite 400
Washington, D.C. 20005
Phone: 202-326-8909
 Fax: 202-408-8745



August 18, 2004

VIA ELECTRONIC SUBMISSION

Ms. Marlene H. Dortch
Secretary
Federal Communications Commission
445 12th Street, SW – Lobby Level
Washington, D.C. 20554

Re:    *Section 251 Unbundling Obligations for Incumbent Local Exchange Carrier,*
*CC 01-338; Implementation of Local Competition of the Telecommunications*
*Act of 1996, CC Docket No. 96-98; Deployment of Wireline Services Offering*
*Advanced Telecommunications Capability, CC Docket No. 98-147 – Ex parte*

Dear Ms. Dortch:

Based on recent press reports,[1] it appears that the Commission is under increasing pressure from CLECs to adopt tentative conclusions regarding impairment for high-capacity loop and interoffice transport facilities (including DS-1 facilities) in its up-coming notice of proposed rulemaking (NPRM) regarding permanent unbundling rules. As the attached maps and following analysis demonstrate, CLECs have widely deployed alternative fiber facilities (including fiber directly connecting to end-user premises), which they are using in combination with alternative facilities provided by other CLECs and ILEC special access services to successfully provide high capacity services to end users. In light of this evidence, and evidence submitted by Verizon,[2] any conclusion, tentative or otherwise, that CLECs are impaired on a nationwide basis without access to high-capacity transmission facilities (including DS1s) on an unbundled basis not only is at odds with the facts, but also with the D.C. Circuit's decision in *USTA II*.[3] SBC currently is

---

[1] *See*, "CLECs CALL ON ADMINISTRATION TO PUSH FCC TO RELEASE UNE RULES," TR Daily, August 17, 2004.

[2] Verizon Ex Parte, "Competing Providers are Successfully Providing High-Capacity Services to Customers without Using Unbundled Elements, CC Docket Nos. 01-338, 96-98, and 98-147 (filed June 2004).

[3] *USTA v. FCC*, 359 F.3d 554, 574 (D.C. Cir. 2004) (*USTA II*) (requiring the Commission to consider the deployment of alternative facilities and draw reasonable inferences concerning the feasibility of deploying facilities along similar routes); *id.* at 575 (requiring the Commission to consider whether CLECs are capable of competing without access to UNEs, not simply whether they already are doing so with alternative facilities); *id.* at 576, 577 (requiring the Commission to consider the availability of tariffed

Exhibit 6(d)(1)

Marlene H. Dortch
August 18, 2004
Page 2

in the process of gathering additional data concerning CLEC use of alternative high-capacity facilities to serve end-users, and identifying (based on that evidence) a reasonable test for determining whether and where CLECs are not impaired without unbundled access to ILEC high-capacity transmission facilities.   SBC will submit that evidence and the results of its analysis in the course of the Commission's proceeding on remand.   In the meantime, the Commission should reject calls for it to adopt any conclusion, tentative or otherwise, that CLECs are impaired without unbundled access to DS1 and other high-capacity loops and dedicated transport facilities until it can develop a complete record concerning the availability and use by CLECs of alternatives (including competitive fiber and ILEC special access services).

**High Capacity Dedicated Transport and Loops**

It is undisputed that CLECs have deployed myriad alternative fiber facilities in markets across SBC's territories, particularly in major metropolitan areas where demand for high capacity services is concentrated.   Using these facilities, CLECs can and do provide high capacity services (including DS-1, DS-3 and other high capacity services) to end users in direct competition with SBC's access services. These CLEC-deployed facilities typically extend into CLEC collocation arrangements, and connect end user locations directly to competitive switches and competing carrier points-of-presence (POPs).

As described in greater detail below, SBC has engaged two independent telecommunications consultants to obtain information on the deployment of competitive fiber networks, and has translated that information onto maps that depict competitive fiber networks in 22 MSA's[4] in its operating territory, using widely-available GIS mapping software.   On a population basis, these MSAs rank as low as 61st (*i.e.*, Bridgeport-Stamford-Norwalk-Danbury) among the top MSAs in the country.   These 22 MSAs[5] were selected because they are responsible for 80% of SBC's special access revenue.  Multiple maps were developed for each of the 22 MSAs, beginning at a high level and then "zooming-in" to present additional detail concerning the deployment and use of competitive transport and loop facilities.

---

special access services in determining whether would-be entrants are impaired without unbundled access to ILEC facilities).

[4] The term "MSA" is used for consistency and simplicity.  Strictly speaking, all of these are Metropolitan Areas (MAs).  If an MA stands alone (i.e., its territory does not touch another MA's), it is an MSA (Metropolitan Statistical Area).  If two (or more) MAs are contiguous, they are designated individually as PMSAs (Primary MSAs).   The grouping of multiple contiguous PMSAs is designated as a CSMA (Consolidated MSA).

[5]  The 22 MSAs are Chicago, Los Angeles – Long Beach, Detroit, Dallas, Houston, Orange County, San Jose, San Diego, Oakland, San Francisco, St. Louis, Kansas City, Cleveland-Lorain-Elyria, Indianapolis, Columbus, Milwaukee, Sacramento, Ft. Worth, Bridgeport-Stamford-Norwalk-Danbury, San Antonio, Austin-San Marcos, and Oklahoma City.  *See* Attachment A.

Exhibit 6(d)(1)

Marlene H. Dortch
August 18, 2004
Page 3

**GeoTel**

GeoTel, a telecommunications research and geographic information systems mapping firm, was engaged to identify the location of competitive fiber.[6]  The company provides a variety of reports on telecommunications infrastructure to assist service providers in penetrating new markets and expanding in existing markets, and to help fiber vendors sell or lease fiber to those service providers.  It gathers information about business opportunities, product offerings, potential customers, and telecommunications markets throughout the country, and provides that information to its clients, which include major telecommunications services providers, consultants, government agencies and universities.

GeoTel uses several sources to compile and verify fiber deployment data.  First, GeoTel acquires information from fiber owners themselves.  Some fiber owners provide the information to GeoTel on their own so that GeoTel can help them locate buyers; others provide the information at GeoTel's request.  Second, GeoTel traces fiber routes in large metropolitan areas by identifying fiber access manholes and using Global Positioning Systems to map the location of fiber facilities.  Third, GeoTel searches public records, such as construction permits and information from companies that lay trenches for fiber to identify where fiber has been deployed.  GeoTel uses each of these multiple sources not only to gather data, but also to serve as a cross-check on the other sources.  GeoTel repeats the foregoing methodology approximately every six months to ensure that its information is accurate and up-to-date.

**GeoResults**

GeoResults is a database marketing and consulting firm that has developed a national database that identifies over 80,000 fiber "lit" buildings across the United States.[7]  The database contains the identity of each service provider serving these buildings.  GeoResults's clients include American Fiber Systems, Cox Enterprises, Global Crossing, Lucent, RCN, Time Warner Telecom, SBC and other incumbent local exchange carriers, who can use the information contained in GeoResults's database to develop transport and fiber route deployment strategies, avoid stranded investment, and focus sales and marketing efforts.

GeoResults has access to two equipment databases maintained by Telcordia that are used by carriers throughout the country to track network assets, manage their networks, and facilitate interoperability with other carriers' networks.  The first is a library of Common Language Location Identifier ("CLLI") codes, which are used to identify physical locations and network equipment.  The second database is an inventory of equipment codes in the Central On-line Entry System ("CLONES"), which is the repository for CLLI codes.  When a carrier deploys equipment (such as a multiplexer) that is to be connected to the public telecommunications

---

[6] http://www.geo-tel.com/

[7] http://www.georesults.com/index.htm

Exhibit 6(d)(1)

Marlene H. Dortch
August 18, 2004
Page 4

network, it must obtain a CLLI code that denotes the type of equipment and its location, and enter that code into the CLONES database.  These databases thus contain information entered by the carriers themselves regarding their network sites, transmission facilities, network equipment, circuits and vendors.

All carriers use multiplexers to provision high-capacity services, such as DS-1 and DS3 services.  As a consequence, one can identify buildings that are being served by competitive carriers, and thus which are "lit" by alternatives to ILEC facilities, by searching the CLONES database to identify where CLECs have deployed such equipment at specific customer locations and connected that equipment to non-ILEC fiber or other means of transport, such as fixed wireless networks.  GeoResults has painstakingly reviewed and analyzed the Telcordia databases to compile its listing of competitively lit buildings.

**Map Descriptions**

The fiber maps attached hereto identify, for each MSA, where CLECs have deployed or are using alternatives to UNEs to provide competitive high-capacity services to end-users.  In particular, the first map for each MSA shows the MSA and SBC's wire center boundaries, as well as the location of competitive fiber based on data gathered by GeoTel.  The wire centers shaded by horizontal lines are those wire centers that account for 80 percent of the SBC's special access revenues for DS-1 and DS-3 services.

The second map shows central offices served by known CLEC fiber based on SBC records regarding the presence of fiber-based collocation. CLECs can make connections between these collocations either directly or indirectly – by  using either their own fiber network or another carrier's network – and are capable of providing transport between any two central offices that connect to these networks.  Therefore, the gray lines on these maps indicate available competitive transport routes between wire centers in the MSA.

The subsequent maps are effectively magnified versions of the initial map, showing ever greater detail.  They reflect the known fiber routes in the metropolitan and downtown areas and also show the CLEC lit buildings (*i.e.*, the purple squares).

These maps provide a conservative representation of the availability of alternatives to ILEC high-capacity UNEs.  No third party can be expected to identify all competitively deployed fiber.  Moreover, high capacity transport and loop services and facilities provided by alternative technologies, such as fixed wireless and cable, are not depicted.  Discovery responses from competitive providers in the now-terminated state Triennial Review proceedings confirmed that other competitive fiber and lit buildings exist, but such information was not used in the preparation of these materials.  Before drawing any conclusions about the need for DS1 loop unbundling, the Commission should require CLECs to provide information within their possession about, *inter alia,* exactly where they have deployed facilities, their policies for

Exhibit 6(d)(1)

Marlene H. Dortch
August 18, 2004
Page 5

extending facilities to new locations, and where they serve customers using incumbent LEC special access services.

For selected MSAs, SBC also has identified end-user customer locations that are served by CLECs using special access services purchased from SBC. Internal billing records were examined to identify CLEC purchases of high capacity services. These records contain the address of the customer that is being served by the non-ILEC service provider using SBC-provided special access services. The records were manually reviewed to remove entrance facilities and special access purchased by wireless providers. The remaining end-user locations were mapped as triangles. These maps demonstrate that CLECs are using special access purchased from SBC to extend the reach of their network. Analysis of additional MSAs within SBC's territory is currently underway, and will be provided in the course of the Commission's proceeding on remand from the D.C. Circuit.

If you have any questions concerning the foregoing, or the attached maps, please contact the undersigned.

Sincerely,

**/s/ Christopher M. Heimann**

Attachments

cc:    Chairman Michael K. Powell
       Commissioner Kathleen Abernathy
       Commissioner Jonathan Adelstein
       Commissioner Michael Copps
       Commissioner Kevin Martin
       Scott Bergmann
       Matthew Brill
       Christopher Libertelli
       Jessica Rosenworcel
       Bryan Tramont
       Jeffrey Carlisle
       Michelle Carey
       Thomas Navin
       John Rogovin

Exhibit 6(d)(1)

# Attachment A

Exhibit 6(d)(1)



# Austin, TX-MSA

**Alternate Fiber Routes**

Known Alternate Fiber

80 Percent of Special Access Demand
For DS1 & DS3 Services

SBC Territory

Wire Centers w/Known CLEC Lit Buildings

Non-SBC Territory

MSA Boundary

Exhibit 6(d)(1)



# Austin, TX-MSA

## Available CLEC Transport Linkages

- ⦿ COs with Known CLEC Fiber-based Collocation
- ▬ Available Transport Link
- ▨ SBC Territory
- ▨ Wire Centers w/Known CLEC Lit Buildings
- ☐ Non-SBC Territory
- ▭ MSA Boundary

Exhibit 6(d)(1)



# Austin, TX-MSA

REDACTED - FOR PUBLIC INSPECTION

I 35

**Metropolitan Austin
Known CLEC Fiber and Known
CLEC Lit Buildings**

- Known CLEC Lit Buildings
- Known Alternate Fiber Routes
- SBC Territory
- Wire Centers w/Known CLEC Lit Buildings
- Non-SBC Territory
- MSA Boundary

Exhibit 6(d)(1)



REDACTED - FOR PUBLIC INSPECTION
Austin, TX-MSA
E 15th St
San Jacinto Blvd
E 12th St
E 12th St
West Ave
Rio Grande St
Nueces St
San Antonio St
Guadalupe St
E 10th St
E 9th St
N Interregional Hwy
E 8th St
E 7th St
Lavaca St
Congress Ave
State Hwy 343
E 5th St
W Cesar Chavez St
E 3rd St
S 1st St
Downtown Austin
Known CLEC Fiber and Known
CLEC Lit Buildings
Known CLEC Lit Buildings
Known Alternate Fiber Routes
SBC Territory
Wire Centers w/Known CLEC Lit Buildings
Non-SBC Territory
MSA Boundary
Exhibit 6(d)(1)







# San Francisco, CA-MSA

REDACTED - FOR PUBLIC INSPECTION

**Metropolitan San Francisco
Customers Served Using Special Access
And CLEC Lit Buildings**

△ Customers of CLECs Served Using SBC Special Access
■ Known CLEC Lit Buildings
━ Known Alternate Fiber Routes
　 SBC Territory
　 Wire Centers w/Known CLEC Lit Buildings
　 Non-SBC Territory
▭ ZipCode Boundaries

Exhibit 6(d)(1)



REDACTED - FOR PUBLIC INSPECTION

# San Francisco, CA-MSA

Exhibit 6(d)(1)





# Oakland, CA-MSA

**Downtown Oakland
Customers Served Using Special Access
And CLEC Lit Buildings**

▲ Customers of CLECs Served
Using SBC Special Access

■ Known CLEC Lit Buildings

— Known Alternate Fiber Routes

SBC Territory

Wire Centers w/Known CLEC Lit Buildings

Non-SBC Territory

— ZipCode Boundaries

REDACTED - FOR PUBLIC INSPECTION

Exhibit 6(d)(1)

94607
94609
94610
94612
94606





REDACTED - FOR PUBLIC INSPECTION
San Jose, CA-MSA
N 17th St
N 11th St
Washington St
N 1st St
Fox Ave
N 3rd St
E Julian St
E St James St
E Saint John St
E Santa Clara St
E San Fernando St
E San Carlos St
N Market St
Guadalupe Freeway
Coleman Ave
95110
95113
95192
95112
95116
Chapman St
Park Ave
Sunol St
Park Ave
W San Carlos St
Bird Ave
Guadalupe Freeway
Park Ave
I 280 E
S Almaden Ave
S 1st St
95126
95125
Downtown San Jose
Customers Served Using Special Access
And CLEC Lit Buildings
Customers of CLECs Served
Using SBC Special Access
Known CLEC Lit Buildings
Known Alternate Fiber Routes
SBC Territory
Wire Centers w/Known CLEC Lit Buildings
Non-SBC Territory
ZipCode Boundaries
Exhibit 6(d)(1)



# San Francisco-Oakland-San Jose, CA-PMSA

REDACTED - FOR PUBLIC INSPECTION

*Oakland MSA*

*San Francisco MSA*

*Pacific Ocean*

*San Jose MSA*

**Known CLEC Lit Buildings and CLEC Customers Served Using Special Access**

△ Customers of CLECs Served Using SBC Special Access
◼ Known CLEC Lit Buildings
▨ SBC Territory
▨ Wire Centers w/Known CLEC Lit Buildings
☐ Non-SBC Territory
▭ MSA Boundary

Exhibit 6(9)1



REDACTED - FOR PUBLIC INSPECTION

# Bridgeport-Stamford-Norwalk-Danbury, CT-MSA

*Long Island Sound*

Exhibit 6(f)(1)

## Alternate Fiber Routes

— Known Alternate Fiber

▬ 80 Percent of Special Access Demand For DS1 & DS3 Services

SBC Territory

Wire Centers w/Known CLEC Lit  Buildings

Non-SBC Territory

▭ MSA Boundary



# Bridgeport-Stamford-Norwalk-Danbury, CT-MSA

REDACTED - FOR PUBLIC INSPECTION

*Long Island Sound*

**Available CLEC Transport Linkages**

- ⬤ COs with Known CLEC Fiber-based Collocation
- — Available Transport Link
- SBC Territory
- Wire Centers w/Known CLEC Lit Buildings
- Non-SBC Territory
- MSA Boundary

Exhibit 6(d)(1)