IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SBC Communications, Inc. and<br>AT&T Corp.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:05CV02102 (EGS) |
| UNITED STATES OF AMERICA,<br><br>    Plaintiffs,<br><br>    v.<br><br>Verizon Communications, Inc. and<br>MCI, Inc.,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 1:05CV02103 (EGS) |

**MOTION TO SUPPLEMENT COMPTEL'S RESPONSE TO THE DOJ'S
SUPPLEMENTAL SUBMISSION**

Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure,[1] COMPTEL hereby

moves to file this supplemental memorandum in support of its Response to the Supplemental

Submission of the Department of Justice ("DOJ").  Two days after COMPTEL filed its

Response to DOJ's Supplemental Submission, the DOJ filed a Complaint, Competitive Impact

Statement, Preservation of Assets Stipulation and Proposed Consent Decree for another

---

[1]     Fed. R . Civ. Pro 15(d) provides that upon motion, a party may serve a supplemental
pleading setting forth transactions, occurrences or events that have happened since the date of the
pleading sought to be supplemented.

telecommunications merger. That filing provides further support for the rejection of the DOJ's

Proposed Amended Final Judgments ("PAFJs") in these cases.

On September 7, 2006 DOJ announced that it had settled a merger investigation

involving the $1.075 billion acquisition of Midwest Wireless Holdings LLC ("Midwest

Wireless") by ALLTEL Corporation ("ALLTEL"). In that case, the DOJ required the merged

firm to divest substantial assets. Specifically,

> Under the terms of the proposed consent decree, the merged firm must divest
> ALLTEL's *mobile wireless telecommunications services business, including
> cellular spectrum and customers, in four Minnesota areas that are comprised of
> 28 counties.*[2]

COMPTEL brings this matter to the Court's attention to further underscore the

inadequacy of the DOJ's proposed remedies in these cases and to illustrate what happens when

the DOJ applies a rigorous Merger Guidelines analysis. The differences between the Consent

Decrees proposed here and the ALLTEL/Midwest Wireless Consent Decree confirm that the

public interest would not be served by entry of the PAFJs.

## I.    The ALLTEL/Midwest Wireless Case Filings Are an Example of the Guidelines "Done Right"

The ALLTEL/Midwest Wireless merger involves a transaction of substantially *smaller*

size and competitive impact than do the AT&T/SBC and Verizon/MCI mergers at issue here

case. Nevertheless, the DOJ's analysis of the ALLTEL/Midwest Wireless merger and the

remedy proposed to mitigate the alleged antitrust violations adhere much more closely to the

standard application of the DOJ's Merger Guidelines and Remedy Guidelines than does the

DOJ's analysis of either the SBC/AT&T or Verizon/MCI merger or the remedies proposed to

---

[2]    Press Release, "*JUSTICE DEPARTMENT REQUIRES DIVESTITURES IN ALLTEL'S ACQUISITION OF MIDWEST WIRELESS*" (emphasis added), rel. September 7, 2006, available at http://www.usdoj.gov/atr/public/press_releases/2006/218222.htm

mitigate the alleged antitrust violations in those cases. Indeed, the DOJ's handling of the ALLTEL/Midwest Wireless merger is fully consistent with its past handling of other telecommunications mergers.[3]

There are four documents that accompanied the press announcement that the DOJ had settled its investigation into the ALLTEL/Midwest Wireless merger: 1) a Complaint, 2) a Preservation of Assets Stipulation, 3) a Competitive Impact Statement, and 4) a Proposed Final Judgment.[4] What is immediately apparent upon reading the materials is that the markets are defined rationally with a clear explanation of how the market definitions correspond to commercial realities, the analysis of competitive effects incorporates Herfindahl-Hirschman Index ("HHI") concentration figures, and the analysis of the post-merger likelihood of timely and sufficient entry is straightforward and requires no faith-based assumptions on the part of the reader. Not only does the DOJ follow its Guidelines in discerning whether Section 7 of the Clayton Act, 15 U.S.C. § 18, was violated, but the DOJ also follows its own Merger Remedy Guidelines in requiring the divestiture of an *actual operating business* for the geographic markets where competition is likely to be reduced as a result of the merger. Finally, the DOJ shows some concern for the consumers likely to be injured as a result of the merger, by requiring the defendants to

> take certain steps to ensure that (a) these assets are preserved and that the Divestiture Assets are operated as competitively independent, economically viable and ongoing businesses; (b) they will remain independent and uninfluenced by defendants or the consummation of the

---

[3]     See COMPTEL's Tunney Act Comments filed with the DOJ on February 13, 2006 at 12-15 (discussing DOJ's departure in these cases from the Merger Remedy Guidelines and its past practices such as those followed in the proposed but not executed acquisition of Allegiance Telecom Inc. by Qwest where the DOJ required the complete divestiture of all of Allegiance's in-region business, assets and customers).

[4]     All four documents are available at http://www.usdoj.gov/atr/cases/alltel2.htm

transaction; and (c) competition is maintained during the pendency of the ordered divestiture.[5]

In short, the ALLTEL/Midwest Wireless merger was handled in a completely different manner than the SBC/AT&T merger and the Verizon/MCI merger. The DOJ defined product markets by *customer* purchasing preferences, even including multiple business lines that were purchased within one of the relevant geographic markets. The DOJ defined geographic markets by the FCC-defined license areas for the spectrum in question. The DOJ recognized that the two largest competitors in the relevant regions proposed to merge, and used traditional HHI concentration numbers to determine likely competitive effects. Notably, throughout the relevant markets, DOJ found that the concentration numbers started, ended, and increased at levels well in excess of the minimum Guidelines thresholds and characterized the merger as presumptively illegal. Finally, the DOJ even recognized that other parties may have had the capacity to expand their output, post-merger, but because of the inherent cost advantages of incumbency and the superior quality of spectrum held by the defendants, post-merger entry was unlikely to be profitable, much less timely or sufficient to restore competition lost by the elimination of one of the two pre-merger firms. As a result, the DOJ required divestiture of an entire operating business, including customers, and required that the ongoing business be operated independently throughout the Tunney Act review, so that consumers would not lose the benefits of competition during the review period. This "Preservation of Assets" order preserves maximum discretion for both the reviewing court and the DOJ. If the court rejects the decree, neither the DOJ nor consumers are in any way prejudiced while the DOJ litigates the Complaint. The ALLTEL/Midwest Wireless case filings, which are consistent with the DOJ's Merger

---

[5]     *United States and State of Minnesota v. ALLTEL Corporation and Midwest Wireless Holdings, L.L.C.*, Competitive Impact Statement, filed September 7, 2006, at 1. Available at http://www.usdoj.gov/atr/cases/f218200/218228.htm

Guidelines, stand in stark contrast to the filings in this case, which, as the *Amici* have demonstrated, do not comply with the Merger Guidelines or the Merger Remedy Guidelines.

As an initial matter, one of the biggest differences between the ALLTEL/Midwest Wireless merger and the SBC/AT&T and Verizon/MCI mergers is the sheer size of commerce affected: the purchase price of Midwest Wireless was a little over $1 billion; the combined purchase prices of AT&T and MCI were almost $25 billion. The combined revenues of ALLTEL and Midwest Wireless, post-merger, would be between $7 and $8 billion; the combined revenues of post-merger AT&T and Verizon are well in excess of $100 billion. Even the limited areas of network overlap described in the SBC/AT&T and Verizon/MCI mergers eclipse the entire ALLTEL/Midwest Wireless transaction, where ALLTEL, a $6.6 billion dollar firm (Complaint ¶ 6) is acquiring Midwest Wireless, a $264 million firm (Complaint ¶ 7). According to the Complaints filed in these cases, the combined in-region local private line revenues of pre-merger SBC and Verizon alone were approximately $8 billion, and they acquired the in-region local private line revenues of AT&T and MCI of approximately $300 million. (Complaints ¶ 20.)

Moreover, the DOJ included an HHI analysis for the ALLTEL/Midwest Wireless merger in the Competitive Impact Statement. An HHI analysis is conspicuously absent from the Competitive Impact Statements submitted for both the SBC/AT&T and Verizon/MCI mergers.

Finally, as opposed to ordering the divestiture of operating businesses or customer bases in the SBC/AT&T and Verizon/MCI mergers, the DOJ argued that requiring the merged firms to sell customer contracts and live circuits that service those customers "would create concerns that forcing customers to change carriers when they had not anticipated or planned for such a change

would be disruptive and costly for the customers."[6]  Apparently, such concerns were of no moment in the ALLTEL/Midwest Wireless merger where the DOJ required the merged firm to divest ALLTEL's mobile wireless telecommunications services business, *including cellular spectrum and customers*, in 28 counties in the state of Minnesota.[7]   While the investigation of and remedy adopted in the ALLTEL/Midwest Wireless may have been "business as usual," the DOJ's filings in that case demonstrate that there is nothing "usual" about the DOJ's handling of the two mega-mergers in front of this Court.

## CONCLUSION

If the Court needed any additional confirmation that the "remedy" proffered by the DOJ in the present cases is plainly inadequate to serve the public interest, the DOJ provided that confirmation in dramatic fashion just last Thursday.  The DOJ's settlement of its investigation of the ALLTEL/Midwest Wireless merger, together with the accompanying competitive analysis, preservation of assets, and forced divestiture of a viable, ongoing business stands in marked contrast to what the DOJ has placed in front of this Court.  What is clear from an even superficial comparison of the two cases is that only one was done "by the book.  In the other case, the DOJ allowed the nation's largest telecommunications monopolies to acquire their largest competitors and required the divestiture equivalent of yard sale cast-offs (*i.e.*, unused assets) as a "remedy."

For the foregoing reasons and those stated in COMPTEL's Response to DOJ's Supplemental Submission, the Court must reject the DOJ's Motion to Enter the PAFJs as contrary to the public interest.

---

[6]    Declaration of W.Robert Majure at ¶¶ 18, 24.

[7]    Press Release, *"JUSTICE DEPARTMENT REQUIRES DIVESTITURES IN ALLTEL'S ACQUISITION OF MIDWEST WIRELESS"* (emphasis added), rel. September 7, 2006, available at http://www.usdoj.gov/atr/public/press_releases/2006/218222.htm

COMPTEL has informed counsel for the DOJ, Defendants and *Amici* of its intent to file

this Motion.  Only Verizon and AT&T have indicated that they object to the filing.

Respectfully submitted,

September 14, 2006

Jonathan D. Lee
Mary C. Albert
COMPTEL
1900 M Street N.W., Suite 800
Washington, D.C. 20036
(202) 296-6650

7

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September 2006, a true and correct copy of the foregoing Motion To Supplement COMPTEL's Response To The DOJ's Supplemental Submission was served on the following parties by electronic mail:

Attorneys for the United States

David T. Blonder
David.blonder@usdoj.gov

Claude F. Scott, Jr.
Claude.scott@usdoj.gov

Attorneys for Verizon Communications

Joseph S. Hall
jhall@khhte.com

Mark C. Hansen
mhansen@khhte.com

Aaron Martin Panner
apanner@khhte.com

John Thorne
John.thorne@verizon.com

David Earl Wheeler
David.e.wheeler@verizon.com

Attorneys for Spring Nextel

Charles Thomas Kimmett, Jr.
ckimmett@harriswiltshire.com

Timothy J. Simone
tsimeone@harriswiltshire.com

Attorneys for AT&T Corp.

Michael L. Lazarus
mlazarus@crowell.com

Wilma A. Lewis
wlewis@crowell.com

William Randolph Smith
wrsmith@crowell.com

Attorneys for NASUCA

Kathleen F. O'Reilly
kforeilly@igc.org

Attorneys for ACTel

Gary Reback
greback@carrferrell.com

Thomas Cohen
tcohen@theKDWgroup.com

Attorneys for the NJRPA

Christopher J. White
cwhite@rpa.state.nj.us

Attorneys for NY Attorney General

Jay L. Himes
jay.himes@oag.state.ny.us


Mary C. Albert