IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:05CV02102 (EGS) |
| v. ) | |
| ) | |
| SBC Communications, Inc. and ) | **MICHAEL LOVERN, SR., NATIONAL** |
| AT&T Corp., ) | **TELEPROCESSING, INC., AMERICAN** |
| ) | **TELEDIAL CORP., (AMICUS CURIAE),** |
| ) | **MOTION FOR LEAVE TO INTERVENE** |
| ) | **FOR PURPOSES OF APPEAL** |
| Defendants. ) | |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:05CV02103 (EGS) |
| ) | |
| Verizon Communications Inc. and ) | |
| MCI, Inc., ) | |
| ) | |
| Defendants. ) | |

**MOTION BY AMICI CURIAE MICHAEL LOVERN, SR. ET AL,
FOR LEAVE TO INTERVENE FOR PURPOSES OF APPEAL**

Michael Lovern, Sr. ("MLS"), National TeleProcessing, Inc.("NTI") and

American TeleDial Corp. ("ATC") (collectively ("Joint Movants"), by the founder and

owner Michael Lovern, Sr., and pursuant to Rule 24 of the Federal Rules of Civil

Procedure, hereby jointly move for leave to intervene for purposes of appeal. The

grounds for this motion, as more fully set forth in the accompanying Memorandum of

Points and Authorities, are that Joint Movants have a direct and immediate interest in the

outcome of this case and that, absent their participation, appellate review of the Court's

judgment and "public interest" determination will be foreclosed.

WHEREFORE, this motion should be granted and Joint Movants MLS, ATC and

NTI should be authorized to intervene as parties in order to jointly appeal the March 30,

2007 Final Judgment of the Court. A form of proposed Order is attached pursuant to Rule

24 Federal Rules of Civil Procedure (FRCP), and Rule 60b FRCP.

Respectfully submitted,

Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037
(410)-798-7557
pratgen@myway.com
American TeleDial Corp. &
National Teleprocessing, Inc.

By: Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037
(410)-798-7557
pratgen@myway.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of April, 2007, copies of the foregoing MOTION
OF MICHAEL LOVERN, SR., ET AL, AS AMICUS CURIAE, REQUESTING TO
INTERVENE FOR PURPOSES OF APPEAL, with proposed Order, will be served by
U.S. Mail, on counsel of record as follows:

(2)

Lawrence M. Frankel (D.C. Bar No. 441532)
Matthew C. Hammond
Trial Attorneys
Telecom & Media Section
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530
(202) 514-5621
Attorneys for the United States

-------------------------------------------------------------------------------

FOR DEFENDANT
SBC COMMUNICATIONS, INC.

Wm. Randolph Smith (D.C. Bar No. 356402)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2700

FOR DEFENDANT AT&T CORP.

David L. Lawson (D.C. Bar No. 434741)
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-808

Michael Lovern, Sr., et al
3713 Parke Drive
Edgewater, Maryland 21037
(410)-798-7557
pratgen@myway.com

April 30, 2007

(3)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:05CV02102 (EGS) |
| v. | ) |
| | ) |
| SBC Communications, Inc. and | ) |
| AT&T Corp., | ) |
| | ) |
| | ) **MEMORANDUM** |
| Defendants. | ) |
| | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 1:05CV02103 (EGS) |
| | ) |
| Verizon Communications Inc. and | ) |
| MCI, Inc., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF JOINT MOTION BY AMICI CURIAE MICHAEL LOVERN, SR.,
NATIONAL TELEPROCESSING, INC. AND AMERICAN TELEDIAL CORP.,
FOR LEAVE TO INTERVENE FOR PURPOSES OF APPEAL**

Michael Lovern, Sr., National TeleProcessing, Inc.("NTI") and

American TeleDial Corp. ("ATC") (collectively ("Joint Movants"), are represented by

the founder and owner Michael Lovern, Sr., and pursuant to Rule 24 of the Federal Rules

of Civil Procedure respectfully submit this memorandum in support of their joint motion

for leave to intervene for purposes of appeal. ATC and NTI are defunct corporations and all claims now belong to Michael Lovern, Sr.

## INTRODUCTION

Joint Movants are one individual who is the founder and owner of the two previous corporations. The Joint Movants (JM) petitioned this court for Intervenor status back in May 2006, and filed subsequent motions, responses and briefs associated with their right to intervene in an attempt to protect $2.7 Billion in claims [damages] directly connected to the Defendants; and, in an attempt to protect the **Public** from the illegal, anticompetitive, fraudulent control of the Intercompany Settlement System (ISS) now controlled by AT&T in violation of Judge Green's original ruling known as the Modified Final Judgment (MFJ). The Public Interest and JM's claims will be severely compromised if this Court's ruling stands, issued March 30, 2007. JM's have been denied their right to address the court and the granting of this Motion is the only fair resolution.

Every time JM showed up in court in this proceeding they were refused the right to address the court, only to be told their motions were under advisement.

In March 2007, Michael Lovern, Sr. (Lovern) contacted the Judge's office and the Clerk's office to inquire if the JM's motions had been ruled on. He was told by both offices that there had been no ruling by the Court.

On April 16, 2007, Lovern received a phone call from a third party telling him the court had ruled on the case[s] March 30, 2007. Lovern immediately called this Court to

(2)

find out why the JM's motions had not been ruled on. It was on this day Lovern discovered that the court had issued a ruling on JM's motions ("Infamous Order") back in February 07; however, Lovern confirmed from a Deputy Clerk that this Court HAD NOT sent him a copy of the Judge's Order. Lovern asked why, yet as of this filing he has never received an answer.

On or about March 18, 2007, Lovern received a call from the Court Clerk Ms. Whittington, who told Lovern he would be receiving a copy of the Court's Order denying JM's motions. As of this filing that still has not happened.

On April 27, 2007, Chief Judge Hogan received a complaint [JM Exhibit R] from Lovern regarding the Court's intentional violation of JM's federally protected rights. As of this filing JMs still have not received a copy of the Infamous Order or the court's final judgment.

With a Final Judgment now entered in this case on March 30, 2007, JM move for leave to intervene solely for purposes of seeking appellate review by the United States Court of Appeals for the D.C. Circuit. Without this right, JM's damages and claims will be severely compromised and their federally protected rights will have been violated, plus the Public's Interest in the ISS billing issues will have been trampled.

This joint motion by the JM, who filed extensive comments, history, and evidence [inclusive of an affidavit from a former AT&T Employee with subject matter expertise, and personal knowledge, who corroborated JM's allegations of anticompetitive behavior

(3)

by the Defendants associated with the ISS], will result in an efficient procedure consistent
with Tunney Act precedent and practice. In every reported Tunney Act case that
presented serious opposition to an important government antitrust settlement, federal
district courts have authorized post-judgment intervention for purposes of appeal. We
respectfully suggest the Court of Appeals should be given the opportunity to do so
through grant of this motion.

## INTERESTS OF JOINT MOVANTS

Michael Lovern, Sr. is a businessman and a Consumer. He is also the founding
partner of American TeleDial Corp. (ATC), and National TeleProcessing, Inc. (NTI).
Both ATC and NTI were put out of business illegally by the Regional Bell Operating
Companies (RBOCs). At the CompTel Convention in Las Vegas in February 1992,
representatives from each of the respective RBOCs along with legal representation sat in
the hotel suite of ATC and NTI to meet with Michael Lovern, Sr. (Lovern). The purpose
of the meeting was to discuss the RBOCs' proposals to Lovern for the RBOCs to provide
Billing & Collection Services (B&C) to Lovern, ATC, and NTI. ATC and NTI were in
the transport and billing business.

Lovern proceeded to tell the RBOCs that he was turning down all their B&C
contract offers as he [Lovern] intended to use the same billing system AT&T was using,
the *secret billing system* located in Kansas City at Southwestern Bell Telephone. Lovern
explained that it was a superior system to what was being offered, via the contracts, and

(4)

the price was $.05 per message [inquiry included], compared to an average of about $.45 per message nationwide spanning from NYNEX to Pac Bell [with no inquiry] being offered by the RBOCs. The RBOC lawyers denied that the **InterCompany Settlement System** (ISS) even existed.

On March 29,1992, through Lovern's strategic partnership with Fidelity Telephone (A.K.A. Fidelity Communications Company, a state certified independent telephone company providing local telephone services in Missouri), ATC began legally downloading messages into the ISS for LEC Billing. The messages were formatted in Exchange Message Record format [secret system] instead of the more expensive Exchange Message Interface format [RBOC inferior B&C service offered to AT&T's competitors at a much higher price], and they flew through the system as expected, ending up at the proper billing LEC's throughout the country just like AT&T and other RBOC and Independent Telephone Companies messages did daily, except for one thing, when the LECs began calling Southwestern Bell (SWBT) [Bellcore appointed "Contract Administrator"] asking what was going on, SWBT panicked. They knew Lovern had figured out the codes and was in the "Country Club's" secret billing system, **the circle within the circle**.

In the spring of 1992, SWBT blocked the access of ATC / Lovern, by blocking Fidelity Telephone's access to the Computer system that controls the ISS. Pursuant to a litigation management contract, and assignment of legal claims from Fidelity to

Lovern/ATC, Lovern successfully obtained an injunction in state court in Missouri whereby SWBT was ordered to unblock the ISS and allow Fidelity/ATC/Lovern access. Judge Green gave all LECs the right to use the ISS. Lovern's LEC was Fidelity Telephone.

During this time period of <u>court ordered protection</u>, Lovern / ATC entered into the ISS B&C call records of non-AT&T transported long distance calls, the receivable having been purchased by Lovern / ATC. These calls were not transported by AT&T, yet charged to one of the infamous AT&T scrambled Caribbean / CIID Calling Cards. All of the these call record receivables were returned to ATC and Lovern marked Uncollectable – Caribbean Calling Card, No B&C Agreement." Approximately $154,000 was edited out as uncollectable, and the scrambled call records were sent back to ATC by SWBT.

What Lovern had at the time, that no one else had ever had, was the Bellcore codes to unscramble the call records, which once <u>unscrambled</u> they showed the calls did not originate outside the United States as represented, but in fact they were domestic calls charged to one of the infamous AT&T Caribbean Calling or CIID Cards (hereinafter referred to as "Special Calling Card"), said calls initiated by an AT&T customer, transported by ATC's customer [non AT&T carrier], receivable purchased by Lovern / ATC.

For years AT&T's competitors had been losing **Hundreds of Millions of Dollars** in revenue charged to these Special Calling Cards, and because the call records had been

(6)

intentionally scrambled by AT&T, non of their competitors could identify the originating LEC, or terminating LEC, hence making collection physically impossible. What AT&T's competitors did not know is that the Bellcore Client Companies (BCCs) [7 RBOCs, Southern New England Telephone (SNET), and Cincinnati Bell (CBT) – only parties with direct access to the ISS], were not actually editing out those calls at all. In fact, they were going back via a sophisticated scheme ["Reverse Translation"] created by Bellcore, and they were actually collecting the call revenue, taking a percentage, and remitting to AT&T who was <u>stealing the money</u>, part and parcel to a racketeering enterprise. **Consumers have also been overcharged <u>Hundreds of Billions of Dollars</u> in connection to the ISS and in violation of Judge Green's Modified Final Judgment (MFJ), all part and parcel to violations of antitrust laws. How much money does it take to qualify as "PUBLIC INTEREST.?" If the court's ruling stands SBC will be able to destroy the records [if not already done] of what is the largest fraud in U.S. History.** SBC prematurely began the same system of conduct with Bellsouth. Lovern is a party in the FCC merger proceeding involving AT&T & Bellsouth. The FCC violated the law in that proceeding in an attempt to cover-up what has been presented to this court. [See attached JM Exhibit S – "FCC Petition For Reconsideration" {still pending}, & attached JM Exhibit T – "Letter from Congressman Dingle" regarding the FCC Inspector General's investigation into what is explained in JM's Exhibit S]. When Lovern began complaining to Congress that SBC/AT&T had illegally taken physical possession of Bellsouth in violation of the FCC's own Regulations, the FCC issued an illegal final order in an attempt to protect SBC/AT&T, even though the appeal ["**Motion for**

(7)

**Reconsideration"**] is still pending – [pursuant to FCC Reg.'s they cannot issue a final

order until 45 days after all appeals are final. Lovern's appeal is still pending- See JM

Exhibit S]. The Bellsouth merger agreement approved by the Bellsouth stockholders is

predicated on full and final regulatory approval. Under the law the merger is not final, yet

once again SBC/AT&T are destroying records covering their tracks, which is exactly

what the JM told this court would happen in their filings for intervenor status.

All told the JM's lost about $900 million in contract revenue due to the illegal,

anticompetitive actions of the RBOCs, AT&T, Cincinnati Bell, and Southern New

England Telephone (SNET) [now owned by SBC/AT&T]. Today those claims are worth

in excess of $2.7 Billion, and the Department of Justice made it very clear they had no

intention of representing JM's interest in this proceeding, hence, the need for

intervention.

JM have presented substantial argument and evidence supporting the view that the

Infamous Order and Decree entered by this Court satisfies neither the Tunney Act's

"public interest" standard, or Rule 24 FRCP.

## ARGUMENT

### I. THIS COURT SHOULD PERMIT LOVERN ET AL TO INTERVENE FOR PURPOSES OF APPEAL IN ORDER TO ENSURE FAIRNESS AND APPELLATE REVIEW OF ITS TUNNEY ACT DECISION IN THIS EXTREMELY IMPORTANT GOVERNMENT ANTITRUST CASE

Tunney Act commenters who wish to appeal entry of a government antitrust

(8)

settlement must first be granted intervenor status in the district court. *United States v. LTV Corp.*, 746 F.2d 51 (D.C. Cir. 1984).

> [T]hose who object to the entry of a consent judgment must seek to intervene in the proceedings (either before or after entry of the judgment) as a condition of taking an appeal. To gain status as an intervenor, the would-be appellant must first establish that participation by the intervenor would aid the court in making its public interest determination under the APPA [i.e., the Tunney Act].

Id. at 53; see *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1290 (D.C. Cir. 1980). This Court and others have liberally applied this standard, along with the related requirements of Rule 24, to consistently permit intervention for purposes of appeal by serious petitioners in substantial antitrust settlements like this case. JM's Tunney Act comments included an extensive analysis of how the DOJ case and related information disclosure sections of the proposed decree are deficient.

### A. Sound Exercise of the Court's Discretion Compels the Grant of Rule 24 Intervention For Purposes of Appeal

Consistent with the broad grant of discretionary authority in the Tunney Act for district courts to fashion appropriate procedures, [1] Rule 24 also counsels that limited intervention solely for appeal purposes is appropriate in this case.[2]

---

[1] Many district courts have denied requests for general intervention as a Tunney Act party while later granting requests by the same parties to intervene for purposes of appeal. Indeed, even "denial of intervention as of right does not automatically mandate a denial of permissive intervention" under Rule 24(b). Hoots v. Pennsylvania, 672 F 2d 1133, 1136 (3rd Cir. 1986); McKay v. Heyison, 614 F.2d 899, 906 (3d Cir. 1980). Consideration of post-judgment intervention for purposes of appeal is a separate inquiry that is not prejudiced by a denial of intervention during the proceedings. See Meek v. Metropolitan Dade County, 985 F.2d 1471, 1476-80 (11th Cir. 1993).

[2] The Tunney Act permits a district court to authority to approve "full or limited participation in proceedings before the court by interested persons or agencies . . . in any other manner and extent which serves the public interest as the court may deem appropriate." 15 U.S.C. § 16(f).

Although the D.C. Circuit "has no holding on the standard for intervention for purposes of appeal in a Tunney Act case," *Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 783 (D.C. Cir. 1997), the consistent practice of district courts in substantial government antitrust settlements demonstrates the propriety of allowing Joint Movants to intervene for appellate purposes. In the AT&T proceedings in the early 1980s, the late Judge Harold Greene "authorized [a number of] private parties, many of whom had filed briefs in the proceeding, to intervene for purposes of appealing" the district court's final judgment. *United States v. American Tel. & Tel. Co.*, 714 F.2d 178, 180 (D.C. Cir. 1983). As a former Chief Judge of the D.C. Circuit wrote, this approach has developed in order to provide assurance that the Court of Appeals can **"review and correct a district court's 'public interest' determination . . . when a non-party well-situated to demonstrate that [the determination is invalid] seeks to subject that determination to appellate review."** *Mass. School of Law*, 118 F.3d at 785 (Wald, J., concurring). Indeed, the D.C. Circuit has made fairly plain, as a string of subsequent decisions in this district and elsewhere agrees, that a district court generally should grant intervention for purposes of appeal in order to avoid "foreclos[ing] appellate review" of these important antitrust cases.[3]

JM must show that (l) it has an interest relating to the subject of the action; (2) it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (3) its interest is not adequately represented by existing parties. Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc., 725 F.2d 871, 874 (2d Cir. 1984); United States v. International Business Machines Corp., 1995-2 Trade Cas. (CCH) ¶ 71,135, at 75,455 (S.D.N.Y. 1995); In re Ivan F. Boesky Securities Litigation, 129 F.R.D. 89, 94 (S.D.N.Y. 1990).

---

[3] The Court of Appeals emphasized that the LTV intervention procedure will not "foreclose all appellate review of antitrust consent judgments" because "[o]bjectors to a consent decree may seek to intervene for the limited purposes of appeal." LTV, 746 F.2d at 54 n. 9.

(10)

Amici, Michael Lovern, Sr., is not only a businessman, but also a Consumer, one

who does not want anticompetitive facets in the telecommunication industry any longer.

JM principal purpose is to not only protect their individual claims, but to protect the

claims of all Consumers, and AT&T's Competitors, who all were defrauded post

divestiture starting around 1985, part and parcel to the InterCompany Settlement System

(ISS). "Interest" under Rule 24(a)(2) "must be significant, must be direct rather than

contingent, and must be based on a right which belongs to the proposed Intervenor rather

than to an existing party to the suit", aff'd mem., 515 F.2d 505 (2d Cir. 1975); Wright,

Miller & Kane, Federal Practice and Procedure (Civil 2d) § 1908, at 270-72 (1986); 3B

Moore's Federal Practice ¶ 24.07[2], at 24-54, 24-57 (2d ed. 1993). The Intervenor in this

case clearly has a protected interest in this merger, and Lovern is the best qualified party

to protect the interest of consumers regarding the ISS.

JM's claim that the entry of the final order in this case will affect their ability to

prevail in their claims against SBC, AT&T, CBT, BS, Verizon, Missouri PSC Officials,

and DOJ Officials is very true. If not, then why did SBC illegally take physical

possession over AT&T before this court approved the merger [Judge Sullivan chastised

DOJ lawyers for this in open court]; and, why did SBC/AT&T once again illegally take

physical possession of Bellsouth before it was official? Simple, so they can destroy

evidence. Congressman Dingle, in his capacity as Chairman of the House Commerce

Committee isn't drinking the Cool Aid. [See JM's Exhibit T]. Thus, the Court's final

Judgment, March 30, 2007, will infringe on any interest the Intervenors have. Fed. R.

(11)

Civ. P. 24(a). It will also directly impact the claims available to all Consumers who made a long distance call between 1985 and present date, as well as AT&T's competitors during those same times.

The control and governance of the ISS should be turned over to an independent third party so it can be made available to all IXC Carriers, CLECS, Independent Telephone Companies, etc, whereby all parties have the same access and advantages as SBC/AT&T/Bellsouth, Verizon, and CBT. An equal playing field is a requirement under existing law, and in the PUBLIC's INTEREST.

.    It is well settled that intervention of right may be granted in a Government antitrust case after a showing of Government bad faith or malfeasance. *Associated Milk Producers*, 534 F.2d at 117; *G. Heileman Brewing,* 563 F. Supp. at 649; *see Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 689 (1961). The party seeking intervention bears the burden of proving "that the Government has not acted properly in the public interest." *United States v. Blue Chip Stamp Co.*, 272 F. Supp 432, 438 (C.D.Cal. 1967), *aff'd per curiam sub nom. Thrifty Shoppers Scrip Co. v. United States*, 389 U.S. 580 (1968). JM in this case did not fail to allege bad faith and malfeasance by the Government. Just look at how DOJ has allowed SBC to take physical possession of two public stock companies before the mergers were even approved or in compliance with the vote of shareholders of each respective company. Based on the arrogant conduct of DOJ we should not even have been in court because they knew the outcome before it

(12)

happened. Why have Tunney Act proceedings if the outcome is predetermined? Why have the FCC investigate telecom mergers if the outcome is predetermined? So far the merger proceeding[s] in SBC's acquisition of AT&T and Bellsouth have been nothing more than a JOKE.

The JM have a right to Intervene. **Jones v. Princes George's County, Maryland, C.A.D.C. 2003,** 348 F. 3d 1014, 358 U.S. App. D.C. 276. There is an obvious adverse position in these cases between JM, the Public, AT&T's Competitors, and the Government / Taxpayers' lawyers. DOJ's narrow view of anti-competitive issues in these cases allow for JM to intervene on it's own. **See Forest Conservation Council v. U.S. Forest Service,** 66 F. 3d 1489. **Civil Procedure "Key" 338.** DOJ has made it perfectly clear they will not represent JM's interest in these cases. This Court's role in protecting the public's interest, as required by the Tunney Act when approving antitrust consent decree, is one of ensuring that the government has not breached its duty to the public in consenting to a consent decree. **Clayton Act, § 5(e), 15 U.S.C.A. § 16(e). U.S. v. Microsoft,** 231 F. Supp. 2d 144, affirmed *Massachusetts v. Microsoft Corp.*, 373 F. 3d 1199, 362 U.S. App. D.C. 152. The Government in this case ignored it's duty due to a conflict of interest explained to the court in previous motions filed by JM.

Intervention can also be based on an Intervenor's expertise. Lovern's expertise with the ISS goes far beyond the capabilities of the Government's lawyers, therefore, Lovern has a guaranteed right to intervene in his capacity as an Expert. **Sagebrush Rebellion, Inc. v. Watt**, 713 F.2d 525. [Also see *Prete v. Bradbury*, 438 F.3d 949

(13)

(2006). In addition, Lovern was prepared to bring the Creator and Custodian of the ISS

[Alex Abjornson] for 30 + years to testify before this court to corroborate JM's

allegations; plus, the former AT&T Employee who signed an affidavit filed with this

Court who witnessed the illegal conduct alleged, but, the Court would not hear from JM

or any of their witnesses. WHY?

A non-party seeking to challenge a consent judgment via appeal must first seek to

intervene in the proceedings. *United States v. LTV Corp.*, 746 F.2d 51, 54 (D.C. Cir.

1984). For examining intervention motions in the Tunney Act context, the appropriate

standard to apply is that of Rule 24 of the Federal Rules of Civil Procedure.

*Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 780 n.2

(D.C. Cir. 1997).

Rule 24 allows intervention under two standards: intervention of right and

permissive intervention. Fed. R. Civ. P. 24(a)-(b). The Rules permit intervention of right:

> (1) when a statute of the United States confers an unconditional right to intervene;
> or (2) when the applicant claims an interest relating to the property or transaction
> which is the subject of the action and the applicant is so situated that the
> disposition of the action may as a practical matter impair or impede the
> applicant's ability to protect that interest, unless the applicant's interest is
> adequately represented by existing parties.

F.R. Civ. P. 24(a). A Court may grant an applicant permission to intervene:

> (1) when a statute of the United States confers a conditional right to intervene; or
> (2) when an applicant's claim or defense and the main action have a question of
> law or fact in common. When a party to an action relies for ground of claim or
> defense upon any statute or executive order administered by a federal or state
> governmental officer or agency or upon any regulation, order, requirement, or
> agreement issued or made pursuant to the statute or executive order, the officer or
> agency upon timely application may be permitted to intervene in the action. In

(14)

exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b). JM moves for both intervention as of right and permissive intervention.

In applying the Rule 24 standard in this case, the Court is guided by this Circuit's *MSL* Opinion, which sets out the appropriate analysis for Rule 24 motions brought to intervene in a Tunney Act case for the purpose of appeal.

## II. DISCUSSION

### A. Intervention as of Right

JM seeks to intervene in this case as a matter of right. Since the Tunney Act does not provide an unconditional right for Movant to appeal, Movant is required to **"claim[] an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."** Fed. R. Civ. P. 24(a)(2). This interest must be a "legally protectable" one. *S. Christian Leadership Conference v. Kelly*, 747 F.2d 777, 779 (D.C. Cir. 1984) ("The rule impliedly refers not to any interest the applicant can put forward, but only to a legally protectable one.") (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).

To have Article III standing, JM must allege they have an "injury in fact." An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504

(15)

U.S. at 560 (quotations and citations omitted). A "particularized" interest is one that "affect[s] the plaintiff in a personal and individual way." *Id.* at 561 n.1. JM has adequately alleged a legally protected interest, therefore they assert standing.

Furthermore, JM has demonstrated repeatedly that their interests were not adequately represented by the parties. It was proven that other parties with similar interests would not intervene in this matter to protect JM's interests. Without an opportunity to intervene, JM will not be able to adequately represent these interests.

## B. Permissive Intervention

JM contends that they also meet the requirements for permissive intervention under Rule 24(b). To be granted permissive intervention, JM must meet Rule 24(b)'s requirements. The rule requires that (1) the "applicant's claim or defense and the main action have a question of law or fact in common," and (2) that the intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). JM maintains that "[t]he 'specific defects' and issues raised by [JM] constitute 'questions of law in [sic] fact in common' with the 'main action' in this crucial Tunney Act determination and Final Judgment, that being anticompetitive behavior resulting in violations of antitrust laws." The Government did not raise the issue of the ISS, and they told this Court they took all issues into consideration, yet they have yet to turn over their files pursuant to JM's FOIA request regarding the ISS, even though JM won the FOIA Appeal. [See JM Exhibit U]. DOJ continues to refuse to turn over their

(16)

files on the ISS because they will contradict what has been told to this Court by DOJ lawyers. This court should schedule a hearing on its own motion and order DOJ to turn over the documents pertaining to the ISS, to allow the court to review what they know because this court knew about this FOIA situation, via JM's filings.

Bad faith or malfeasance on the part of the Government' in negotiating and

accepting a consent decree must be shown before intervention will be allowed. 366 U.S. at 689, 81 S. Ct. at 1313, 6 L.Ed.2d at 609." *United States v. Associated Milk Producers, Inc.*, 534 F.2d 113, 117 (8 th Cir. 1976). How much "BAD FAITH" does this Court need to see before it accepts that DOJ did not play fair? JM allege that the Government failed to "vigorously and faithfully represent[] the public interest," *Hartford Empire*, 573 F.2d at 2, in proceeding with these joined cases, and, that the settlement reached was the result of "malfeasance" or a "sell-out" by the Government to protect their conflict of interest, *MSL*, 118 F.3d at 784. As such, based on the guidance provided by *MSL*, this Court should grant JM's Motion to Intervene for Purposes of Appeal.

## CONCLUSION

Beyond the literal parameters of Rule 24, the Court should grant intervention for purposes of appeal in accordance with its broad authority to ensure the fair administration of justice. The Government, whether it be DOJ or the FCC, have not played fair with these mergers, and these transactions will not only affect the JM, but every consumer in this country, and every AT&T competitor.

(17)

We greatly respect the difficult nature of this case and the degree of effort expended by the Court in reaching its decision. The enormity of the task of setting the rules of the road for what some believe to be the most important, and fastest growing, sector of the economy cannot be overstated. Joint Movants certainly mean no disrespect at all to this Court when we suggest that this is precisely the type of case that warrants appellate review. The jurisprudential considerations in favor of allowing the D.C. Circuit to decide whether the decree entered meets the relief standards it articulated in its en banc Microsoft opinion are overwhelming.

For all these reasons, the Court should grant this joint motion and permit Michael Lovern, Sr. et al [JM] to intervene in this case for purposes of appealing the Court's Tunney Act decision.

Respectfully submitted,

Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037
(410)-798-7557
pratgen@myway.com


American TeleDial Corp. &
National Teleprocessing, Inc.

By: Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037
(410)-798-7557
pratgen@myway.com

(18)

## CERTIFICATE OF SERVICE

I hereby certify that, on this 30th day of April, 2007, copies of the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION BY AMICI CURIAE MICHAEL LOVERN, SR., NATIONAL TELEPROCESSING, INC. AND AMERICAN TELEDIAL CORP., FOR LEAVE TO INTERVENE FOR PURPOSES OF APPEAL** with supporting brief and exhibits, were sent by U.S. Mail, or e-mail, on counsel of record as follows:

Lawrence M. Frankel (D.C. Bar No. 441532)
Matthew C. Hammond
Trial Attorneys
Telecom & Media Section
Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 8000
Washington, D.C. 20530
(202) 514-5621
Attorneys for the United States

FOR DEFENDANT
SBC COMMUNICATIONS, INC.
Wm. Randolph Smith (D.C. Bar No. 356402)
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 624-2700

FOR DEFENDANT AT&T CORP.

David L. Lawson (D.C. Bar No. 434741)
Sidley Austin Brown & Wood LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-808

(19)

FOR DEFENDANT VERIZON COMMUNICATIONS, INC. / MCI

John Thorne
Verizon Communications Inc.
1515 North Courthouse Road
Arlington, Virginia 22201

Michael Lovern, Sr., et al
3713 Parke Drive
Edgewater, Maryland 21037
(410)-798-7557
 pratgen@myway.com

April 30, 2007

(20)