**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> ) <br> **Plaintiff,** ) <br> v. ) <br> ) <br> **SBC Communications, Inc. and** ) <br> **AT&T Corp.,** ) <br> ) <br> **Defendants.** ) <br> ) | Civil Action No. 1:05CV02102 (EGS) |
| **UNITED STATES OF AMERICA,** ) <br> ) <br> **Plaintiffs,** ) <br> v. ) <br> ) <br> **Verizon Communications, Inc. and** ) <br> **MCI, Inc.,** ) <br> ) <br> **Defendants.** ) <br> ) | Civil Action No. 1:05CV02103 (EGS) |

**COMPTEL'S MOTION FOR LEAVE TO INTERVENE
FOR PURPOSES OF APPEAL**

Pursuant to Rule 24(b) of the Federal Rules of Civil Procedure and 15 U.S.C. § 16(f)(3), amicus and proposed intervenor COMPTEL respectfully submits this Motion for Leave to Intervene for Purposes of Appeal.

**INTRODUCTION**

In a typical civil action, the party harmed by an unfavorable result has the opportunity to appeal. In this Tunney Act case, the only entities harmed by entry of the Final Judgments are non-parties – those customers and competitors of the merging parties such as COMPTEL that challenged the parties' proposed merger remedy as *amici* before this Court. If COMPTEL is not

afforded the opportunity to intervene and appeal the Final Judgments, the important issues that the Court considered for almost a year and a half will not be subject to appellate review, and anticompetitive harm will result.

COMPTEL satisfies the requirements of Rule 24(b), which the D.C. Circuit has held should be applied flexibly in cases presenting unusual circumstances. The Tunney Act presents such unusual circumstances. Indeed, it expressly contemplates intervention by third parties as permitted by the Federal Rules of Civil Procedure, and recognizes that intervention may be appropriate. 15 U.S.C. § 16(f)(3). As required by Rule 24(b), COMPTEL's claim shares common questions of law or fact with the underlying action: whether the mergers at issue will cause anticompetitive harm in the Local Private Line services market, and whether the remedies ordered by the Court will resolve the anticompetitive harm alleged by the government in the Local Private Line services market. Furthermore, a "peek at the merits" indicates that any delay caused by the appeal or possible subsequent remand will not be undue or prejudicial.

Thus, COMPTEL seeks to intervene in order to appeal the Court's entry of the Final Judgments. A proposed order is attached. Counsel for COMPTEL has conferred with counsel for the parties and has been advised that the parties intend to oppose this Motion.

## PROCEDURAL HISTORY

The United States filed its Complaints in these two Tunney Act cases relating to a pair of large telecommunications mergers, Verizon/MCI and SBC/AT&T, on October 27, 2005. Soon after, proposed final judgments consented to by the government and the respective merging parties were filed. On December 21, 2005, the two cases were consolidated. On February 8, 2006, COMPTEL moved to intervene in the consolidated cases, or in the alternative to

participate as an *amicus curiae*. Motion and Memorandum in Support of COMPTEL's Motion for Leave to Intervene or in the Alternative to Participate as Amicus Curiae ("Initial Motion").

On May 10, 2006, the Court, recognizing that COMPTEL's status as representative of numerous customers and smaller competitors of the merged companies, and accompanying perspective and expertise, would be helpful to the Court in its Tunney Act determination, permitted COMPTEL to act as an *amicus curiae* to the Court, but denied COMPTEL's motion to intervene. In the ensuing months, COMPTEL and other *amici* participated extensively in the Tunney Act proceedings by filing briefs and participating in hearings. On March 29, 2007 almost a year and a half after the initial complaints were filed, the Court issued an opinion ordering entry of the Final Judgments proposed by the parties.

Final Judgments were entered on March 30, 2007. Because the United States is a party to the case, the time to file a notice of appeal runs 60 days from the entry of final judgment or on May 29, 2007. Federal Rule of Appellate Procedure 4(a)(1)(B). In order to afford the Court ample time to decide this important Motion and avoid potential procedural inefficiencies, COMPTEL is contemporaneously filing an Ex Parte Motion for Extension of Time to File a Notice of Appeal.[1]

## ARGUMENT

I. **The Court Should Grant COMPTEL Leave to Intervene Because Without Intervention by Third Parties There Will Be No Appeal of the Important Issues Presented in this Action**

In granting COMPTEL *amicus* status, the Court recognized that an organization representing customers and small competitors would offer significant industry insight and

---

[1] COMPTEL's Motion to Intervene is timely. *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 (1977). "[S]o long as the motion to intervene is filed within the time within which the named plaintiffs could have taken an appeal, the motion is timely as a matter of law." *State of Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1320 (9th Cir. 1997) (citing *United Airlines*, 432 U.S. 385). Because COMPTEL's "motion was timely filed under the *United Airlines* rule, it [is] unnecessary for [it] to offer any excuse for not having filed [the] motion sooner than [it] did." *State of Alaska*, 123 F.3d at 1320.

3

knowledge as well as the perspective of a market competitor not otherwise represented in the action. Accordingly, the Court granted COMPTEL broad rights in the action, allowing it to participate in lengthy hearings involving the government, the merging parties and other *amici* regarding the proposed final judgments. The Court also permitted COMPTEL to file an opposition to the motion for entry of final judgment.

COMPTEL respectfully disagrees with the Court's denial of its earlier motion to intervene, and urges the Court to consider this Motion in light of changed circumstances. After the Court denied COMPTEL's initial motion to intervene, it was still able to hear from COMPTEL as an *amicus* and draw upon COMPTEL's knowledge and experience without the need to grant COMPTEL intervenor status. Now, because the Court entered the Final Judgments crafted by and satisfactory to the government and merging parties in the case, none of the parties are likely to appeal the Final Judgments. Thus, a denial of COMPTEL's Motion will foreclose any appellate consideration of the significant issues raised by this action and will deny COMPTEL its opportunity to be heard on this Court's actions and the Final Judgments as entered. *See United States v. LTV Corp.*, 746 F.2d 51, 53 (D.C. Cir. 1984) (holding that intervenor or party status is required to file an appeal, and *amicus curiae* status is insufficient).

The D.C. Circuit has recognized that certain procedural or factual circumstances may justify intervention by a non-party. *See Mass. Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 785 (D.C. Cir. 1997) ("*MSL*") (Wald, J., concurring) (intervention justified by a non-party that was "well-situated to demonstrate" that the district court's "'public interest' determination'" was "contrary to the dictates of the Tunney Act.")[2]; *Equal Employment Opportunity Commission v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998);

---

[2] This Court's March 29, 2007 Opinion characterized *MSL* as being "overruled" by the 2004 Amendments to the Tunney Act. The Tunney Act does not control the question of when permissive intervention is appropriate. Thus, this portion of *MSL* remains good law and is relevant here.

4

*Textile Workers Union of Am. v. Allendale Co.*, 226 F.2d 765, 768 (D.C. Cir. 1955) (en banc). More specifically, in Tunney Act proceedings permission to intervene is appropriate when such intervention provides the sole means of appeal. *United States v. Thomson Corp.*, Civ. No. 96-1415, 1997 WL 90992 *4 (D.D.C. Feb. 27, 1997).

As this Court explained in *Thomson*, "[The proposed intervenor] therefore remains the only potential appellant prepared to test the validity of the Final Judgment…The issues raised by this case are important, and their presentation to the Court of Appeals should not be foreclosed by this Court…Without the intervention of HyperLaw no party will be in a position to present these issues to the Court of Appeals." *Id.* A similar situation exists here, and COMPTEL's Motion to Intervene should also be granted.

The *Thomson* court also noted that there was "special concern" for "small legal publishers" when the "giant[s]" of the legal publishing industry had "worked so closely with the Department of Justice" in drafting the consent decree. *Id.* at *5. Accordingly, the Court determined that, "[a]s a small publisher, HyperLaw is in a good position to represent these concerns on appeal," and that HyperLaw was thus "an appropriate intervenor for purposes of the appeal." *Id.* Again, the situation here is analogous. COMPTEL represents the perspective of customers and smaller competitors in the telecommunications market -- those most likely to be harmed by the mergers and the defects in the Final Judgments. Therefore, COMPTEL seeks to appeal the Final Judgments, which fail to remedy the anticompetitive harms caused by these mergers, which involve four of the country's largest telecommunications companies.

**II.     COMPTEL Meets the Requirements of Rule 24(b) and Thus Should Be Permitted to Intervene**

    **A.     COMPTEL's Claim Shares a Common Question of Fact or Law With the Main Action**

The D.C. Circuit has recognized the flexible nature of the Rule 24(b) requirements, stating that a "failure to come within the precise bounds of Rule 24's provisions does not necessarily bar intervention if there is a sound reason to allow it," *Textile Workers*, 226 F.2d at 768, and "we have expressed a willingness to adopt flexible interpretations of Rule 24 in special circumstances," *Nat'l Children's Ctr.*, 146 F.3d at 1045. *See also, MSL*, 118 F.3d at 785 (Wald, J., concurring).

Here, COMPTEL claims -- as it has throughout these proceedings -- that the mergers of these large telecommunications companies will harm competition in the Local Private Line services market, and that its members, small, local service providers, will be harmed as a result, and that the remedies ordered by the Final Judgments will not cure the harms identified by the Government in its Complaints. *See* Initial Motion at 13-19. Such a claim overlaps almost entirely with the issues presented in the underlying action. COMPTEL thus satisfies the first prong of Rule 24(b).

    **B.     Serious Concerns Remain Regarding the Anticompetitive Effects of These Mergers that Warrant Appellate Consideration**

The D.C. Circuit has held that the second prong of Rule 24(b) (whether intervention will "unduly delay or prejudice the adjudication of the rights of the original parties") requires a "peek at the merits." *MSL*, 118 F.3d at 782-83. Here, a "peek at the merits" indicates that any delay attributable to further proceedings would not be undue because the arguments presented by COMPTEL are meritorious. Furthermore, as the D.C. Circuit has held, presentation of the same arguments and issues to the Court of Appeals that were presented to this Court obviates any

6

concern regarding "issue proliferation," "confusion," "extra cost," or "an increased risk of error," which often underlie the delay and prejudice in situations of intervention. *Commonwealth of Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1236 (D.C. Cir. 2004) ("[b]ecause the district court already confronted CCIA's and SIIA's arguments in rendering its decision, there is no reason to fear 'issue proliferation,' 'confusion,' 'extra cost,' or 'an increased risk of error' if the associations are allowed to appeal the district court's public-interest determination") (internal citation omitted).

Under the Tunney Act, the Court must consider the "competitive impact" of the proposed final judgments, the "impact of the entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint," and "any other competitive considerations bearing upon the adequacy of such judgment." 15 U.S.C. § 16(e). As discussed in more detail in COMPTEL's initial motion to intervene, the divestitures mandated by the Final Judgments are insufficient to address the lack of access to and transport to the telecommunication services buyer's network, as well as virtually insurmountable start-up costs. Initial Mot. at 13-18. The Final Judgments do not provide for complete divestiture of an ongoing Local Private Line service business, and thus fail to address the anticompetitive concerns raised in the Government's Complaints and highlighted in COMPTEL's initial motion. Additionally, the Final Judgments do nothing to eliminate the concerns discussed in greater detail in COMPTEL's Initial Motion about an increased risk of coordination among post-merger firms. Initial Motion at 18-19.

The Court must also consider the "duration of relief sought" in making its "public interest" determination. In this case, ten years is an insufficient time for a local competitor to

establish wholesale arrangements given the unpredictability of the period following the ten-year period and the resulting uncertainty surrounding contract renewal provisions.  Initial Mot. at 17.  Thus, the ten-year divestiture period mandated by the Final Judgments is inadequate, harms competition, and is not in the public interest.  *Id.*

Furthermore, any delay that results from COMPTEL's intervention and the subsequent appeal will not prejudice the parties.  As this Court recognized, the mergers at issue were completed over a year ago, well before this Court even entered its final decision.  Thus, the pendency of this appeal will not prejudice the parties or impede their business operations.

Because COMPTEL presents a claim that shares a common question of law or fact with the underlying action, and because any delay caused by the appeal or possible remand would not be undue and would not prejudice the parties, COMPTEL satisfies the permissive intervention requirements set forth in Rule 24(b).

## CONCLUSION

For the reasons stated above, COMPTEL's Motion to Intervene for Purposes of Appeal should be granted.

Dated: May 18, 2007                                   Respectfully submitted,

                                                      _____/s/_____
                                                      Kevin R. Sullivan (D.C. Bar No. 411718)
                                                      Peter M. Todaro (D.C. Bar. No. 455430)
                                                      King & Spalding LLP
                                                      1700 Pennsylvania Avenue N.W.,
                                                      Washington, D.C. 20006
                                                      (202) 737-0500
                                                      (202) 626-3737 (fax)

                                                      Jonathan D. Lee (D.C. Bar No. 435586)
                                                      Mary Albert (D.C. Bar No. 347617)
                                                      COMPTEL
                                                      900 17th Street N.W., Suite 400
                                                      Washington, D.C. 20006
                                                      (202) 296-6650
                                                      (202) 296-7585 (fax)

                                                      *Attorneys for Amicus and Proposed Intervenor COMPTEL*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2007, a true and correct copy of COMPTEL'S Motion for Leave to Intervene was filed via the Court's ECF system and the following were served by U.S. mail:

Lawrence M. Frankel
Matthew C. Hammond
U.S. DEPARTMENT OF JUSTICE
City Center Building
1401 H Street, NW
Antitrust Division
Washington, DC 20530

*Attorneys for the United States*

Michael Lovern, Sr.
3713 Parke Drive
Edgewater, MD 21037

Wendy Carrillo
Senior Paralegal